IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

─────────────────────────────

DAVID A. JENKINS,

                Petitioner,          Civil Action No.
                                      9:11-CV-1482 (BKS/DEP)

   v.

E. STALLONE,

                Respondent.

─────────────────────────────

APPEARANCES:                    OF COUNSEL:

FOR PETITIONER:

David A. Jenkins, *Pro Se*
348 Memorial Drive
Buffalo, NY 14212

FOR RESPONDENT:

HON. ERIC T. SCHNEIDERMAN       THOMAS B. LITSKY, ESQ.
New York State Attorney General    Assistant Attorney General
120 Broadway
New York, NY 10271

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

     Petitioner David A. Jenkins, a former New York State inmate, has

commenced this proceeding pursuant to 28 U.S.C. § 2254, requesting this

court's habeas intervention in connection with a state court criminal

conviction. This is the second such proceeding brought by the petitioner. In his first petition, which was denied, Jenkins challenged his underlying conviction, which was entered following a non-jury trial.[1] In this petition, he contends that the court's inclusion of a period of post-release supervision, after one of his two concurrent sentences was served and shortly before the expiration of his second, violated his right to due process and subjected him to double jeopardy. In response to the petition, respondent argues that the two habeas claims both are unexhausted but not yet procedurally forfeited and lack merit.

For the reasons set forth below, I conclude that the petition is now moot and the two claims raised lack palpable merit. Accordingly, I recommend that the instant petition be denied.

I.     BACKGROUND

On or about August 31, 2000, petitioner was found guilty of first degree sexual abuse and attempted sodomy in the first degree following a non-jury trial held in St. Lawrence County before the Hon. Eugene L.

---

[1]     *See Jenkins v. Unger,* No. 03-CV-1172, 2007 WL 911889 (N.D.N.Y. March 22, 2007) (Kahn, J., *adopting report and recommendation by* Homer, M.J.). Although that petition was denied in its entirety, the instant proceeding, also brought pursuant to section 2254, is not barred as a successive petition in light of the fact that it challenges a new judgment entered subsequent to the denial of the first petition. *Magwood v. Patterson*, 561 U.S. 320, 323-34 (2010); *accord, Mills v. Lempke*, No. 11-CV-0440, 2012 WL 1574749, at *8 (W.D.N.Y. May 3, 2012).

Nicandri. Dkt. No. 7 at 1; *People v. Jenkins*, 300 A.D.2d 751, 751 (3d Dep't 2002). As a result of the conviction, Jenkins was sentenced on September 25, 2000, as a second felony offender, to concurrent determinate prison sentences on the attempted sodomy and sexual abuse counts of nine years and seven years, respectively. Dkt. No. 12-1 at p. 7. The sentence originally imposed by the trial court did not include a period of post-release supervision. *Id.*

Petitioner's conviction was upheld on appeal by the New York State Supreme Court Appellate Division, Third Department, on December 12, 2002. *Jenkins*, 300 A.D.2d at 752-53. The Appellate Division, however, vacated petitioner's sentence and remitted the matter to the trial court in light of a discrepancy appearing between the sentencing minutes, which evidenced the court's intention to impose determinate sentences for the convictions, and the commitment form used by the trial court, which reflected the imposition of indeterminate sentences.[2] *Id.* at 753-54.

At some point while Jenkins was serving his prison sentence, the New York State Department of Corrections and Community Supervision

---

[2]     There is no reference in the record now before the court to any resentencing proceeding following the Appellate Division's decision in 2012. It appears that there may not have been an actual resentencing and that instead, in 2002, the trial court clerk merely prepared an amended commitment form clearly setting forth the trial court's intent to sentence Jenkins to concurrent determinate periods of incarceration of seven years on the sexual abuse count and nine years for attempted sodomy. Dkt. No. 12-10 at 3.

("DOCCS") or its predecessor agency, the Department of Correctional Services ("DOCS"), administratively amended petitioner's commitment by adding a five-year period of post-release supervision.[3] Dkt. No. 12-5 at 5. Jenkins challenged the DOCCS administrative imposition of a post-release supervision term by petition filed in Livingston County Supreme Court in or about March 2008, pursuant to New York Civil Procedure Law and Rules ("CPLR") Article 78. *See generally* Dkt. No. 12-3. Acting Supreme Court Justice Dennis S. Cohen granted petitioner's Article 78 petition on May 5, 2008, based upon a decision by the New York Court of Appeals issued on April 29, 2008, holding that only a judge, and not the DOCCS, may lawfully impose a period of supervised release as part of a sentence. Dkt. No. 12-5 at 4-5; *see Matter of Garner v. N.Y. State Dep't of Corr. Servs.*, 10 N.Y.3d 358 (2008). While granting the petition, Justice Cohen noted that his decision did not preclude the sentencing court from correcting its failure to impose the statutorily mandated period of post-release supervision. Dkt. No. 12-5 at 5.

On September 8, 2008, after completion of petitioner's seven-year period of incarceration for the sexual abuse conviction, but prior to completion of his sentence for the attempted sodomy conviction, petitioner

---

[3]     The five-year period of post-release supervision was required by law and should have been imposed by the sentencing court. *See* N.Y. Penal Law § 70.45.

was resentenced by the trial court. Dkt. No. 12-10. Although the transcript of the sentencing does not explicitly reflect whether the post-release supervision attached to one or both of petitioner's convictions, *id.*, Acting County Court Judge Kathleen Rogers based her decision to resentence petitioner, in part, on the fact that he had not yet completed his sentence for the attempted sodomy conviction. *Id.* at 6. In addition, in her decision denying petitioner's motion, filed in 2010, to set aside his sentence pursuant to New York Criminal Procedure Law ("CPL") § 440.20, Judge Rogers stated that the five-year post-release supervision applied only to the attempted sodomy conviction, which petitioner was still serving at the time of his resentencing in 2008.[4] Dkt. No. 12-16 at 5.

Petitioner appealed his 2008 resentencing to the Appellate Division, arguing that he was subjected to double jeopardy as a result of the court's addition of the five-year period of supervised release.[5] Dkt. No. 12-11. On November 4, 2010, the Appellate Division issued a decision unanimously affirming the amended judgment entered by the trial court following

---

[4]     The trial court's amended commitment form dated September 2, 2010, also reflects that the post-release supervision applies to the attempted sodomy sentence. Dkt. No. 7-1 at 23-24.

[5]     In his appeal, Jenkins also argued that his original appellate counsel was ineffective for failing to raise the illegality of his sentence and the trial court erred in denying his motion, raised for the first time at the resentencing in 2008, to set aside the verdict pursuant to CPL § 330.30. *See* Dkt. No. 12-11 at 7-8, 12-14.

resentencing in September 2008. *People v. Jenkins*, 78 A.D.3d 1212 (3d Dep't 2010). In its decision, the Appellate Division rejected petitioner's double jeopardy claim, noting that, because he had not yet completed serving his prison sentence for the attempted sodomy conviction, his sentence remained subject to correction without subjecting him to double jeopardy. *Jenkins*, 78 A.D.3d at 1213.

On June 24, 2010, while his direct appeal from the 2008 resentencing remained pending before the Appellate Division, Jenkins filed a motion to vacate the sentence pursuant to CPL § 440.20. Dkt. No. 12-14. Judge Rogers denied petitioner's motion on August 13, 2010, concluding that, because petitioner had not completed serving the sentence to which the post-release supervision applied, the prohibition against double jeopardy was not violated by the resentencing. Dkt. No. 12-16 at 4 (citing *People v. Williams*, 14 N.Y.3d 198 (2010) and *People v. Becker*, 72 A.D.3d 1290 (3d Dep't 2010)). Petitioner's application for leave to appeal Judge Rogers' decision to the Appellate Division was denied on November 30, 2010. Dkt. Nos. 12-17, 12-18.

Petitioner was initially released to supervision on March 27, 2009. Dkt. No. 7-1 at 9. Although the record does not clearly so reflect, it appears that he was thereafter resentenced to an additional period of incarceration

6

for violating the conditions of his post-release supervision. Based on change-of-address forms received by the court on February 22, 2013, and April 25, 2013, it appears that petitioner has since been released from custody once again. Dkt. Nos. 16, 17. Publicly available information reflects that petitioner's term of post-release supervision expired no later than April 7, 2014. *See* NYS DOCCS Inmate Information, http://nysdoccslookup.doccs.ny.gov/GCA00P00/WIQ2/WINQ120 (last visited March 5, 2015).

## II.    PROCEDURAL HISTORY

Petitioner commenced this proceeding in the Western District of New York on November 10, 2011. Dkt. No. 1. The matter was subsequently transferred to this district by order issued by Senior District Judge Michael A. Telesca on November 29, 2011. Dkt. No. 4.

Following the issuance of an initial review order from this court, Jenkins submitted an amended petition. Dkt. Nos. 6, 7. In the amended petition, he raises two grounds for habeas relief, arguing that his resentencing in 2008 violated the constitutional protections against double jeopardy and guarantying due process. Dkt. No. 7 at 3. Respondent, represented by the Office of the New York State Attorney General, submitted an answer in opposition to the petition on July 31, 2012,

additionally providing a memorandum of law and a compilation of the relevant state court records which, the court appreciates, were indexed by respondent's counsel for ease of reference. Dkt. Nos. 10-12. Petitioner has since submitted a reply and affidavits in further support of his petition. Dkt. Nos. 13-15. Jenkins' petition, which is now ripe for determination, has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

    A.   Mootness

This court's subject matter jurisdiction is limited by Article III, Section 2 of the United States Constitution to matters that present a "case or controversy." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998); *Baur v. Veneman*, 352 F.3d 625, 631-32 (2d Cir. 2003). A case becomes moot if, at any stage of the proceedings, it fails to satisfy the case-or-controversy requirement. *Kamagate v. Ashcroft*, 385 F.3d 144, 150 (2d Cir. 2004) (*citing Spencer*, 523 U.S. at 7).

As was noted above, petitioner is no longer incarcerated, and his post-release supervision was set to expire, at the latest, on April 7, 2014. *See* Dkt. Nos. 16, 17; NYS DOCCS Inmate Information,

*http://nysdoccslookup.doccs.ny.gov/GCA00P00/WIQ2/WINQ120* (last visited Mar. 5, 2015). Habeas petitioners no longer in custody must demonstrate the existence of a "concrete and continuing injury" or some "'collateral consequence' of the conviction" in order for a petition to be granted. *Spencer*, 523 U.S. at 7; *Jackson v. Schult*, No. 07-CV-1146, 2008 WL 5056851, at *1 (N.D.N.Y. Nov. 21, 2008) (Hurd, J., *adopting report and recommendation by* Bianchini, M.J.).[6] A challenge to an underlying conviction itself carries the presumption that collateral, adverse consequences exists. *See Spencer*, 523 U.S. at 12 ("[I]t is an 'obvious fact of life that most criminal convictions do in fact entail adverse collateral legal consequences.'") (quoting *Sibron v. N.Y.*, 392 U.S. 40, 55 (1968)). In this case, however, petitioner challenges the imposition of the five-year post-release supervision during his resentencing in 2008. Accordingly, because petitioner does not challenge his underlying conviction, no presumption of collateral consequences exists in this case, and he must prove the existence of a concrete and continuing injury resulting from the post-release supervision. *Spencer*, 523 U.S. at 7-8; *Jackson*, 2008 WL 5056851, at *1. Based on the record now before the court, there is no basis

---

[6] Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

to conclude that petitioner suffers any continuing injury arising from the imposition of the post-release supervision because he is no longer on supervision and has completed his sentence. For this reason, I recommend the petition be dismissed as moot. *See, e.g., Razzoli v. United States Parole Comm'n*, 116 F. App'x 292, 293 (2d Cir. 2004) ("Where, as here, a petitioner's habeas petition challenges parole revocation proceedings, his petition becomes moot when he is released from custody unless he is able to demonstrate collateral consequences stemming from the parole revocation proceedings."); *Lewis v. N.Y.*, No. 08-CV-4978, 2012 WL 5419899, at *4 (E.D.N.Y. Nov. 6, 2012) ("In this case, the petition is moot because petitioner was released from post-release supervision . . ., and does not allege that he suffers from any ongoing restraints on his liberty.").

B.      Review of Petitioner's Claims

Notwithstanding my recommendation concerning mootness, out of an abundance of caution, I will proceed to address the merits of the petition.[7]

1.      Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas corpus relief with respect to a

---

[7]      Although respondent argues that the court need not reach the merits of the petition because the petitioner's two grounds for relief are not fully exhausted, Dkt. No. 11 at 15-16, even assuming respondent is correct, the court is not precluded from addressing the merits of unexhausted claims when it is clear they lack palpable merit. 28 U.S.C. § 2254(b)(2); *see also Pratt v. Greiner*, 306 F.3d 1190, 1197 (2d Cir. 2002).

claim adjudicated on the merits in state court only if, based upon the record before the state court, the adjudication of the claim (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Cullen v. Pinholster*, --- U.S. ----, 131 S. Ct. 1388, 1398, 1400 (2011) (citing 28 U.S.C. § 2254(d)); *Premo v. Moore*, --- U.S. ----, 131 S. Ct. 733, 739 (2011); *Thibodeau v. Portuondo*, 486 F.3d 61 (2d Cir. 2007) (Sotomayor, J.). The AEDPA "'imposes a highly deferential standard for evaluating state-court rulings' and 'demands that state-court decisions be given the benefit of the doubt.'" *Felkner v. Jackson*, --- U.S. ----, 131 S. Ct. 1305, 1307 (2011) (*per curiam*) (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010)); *accord, Cullen*, 131 S. Ct. at 1398. Federal habeas courts must presume that the state court's factual findings are correct "unless applicants rebut this presumption with 'clear and convincing evidence.'" *Schriro v. Landrigan*, 550 U.S. 465, 473-74 (2007) (quoting § 2254(e)(1)); *see also Boyette v. Lefevre*, 246 F.3d 76, 88 (2d Cir. 2001). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Schriro*, 550 U.S. at

473 (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

As required by section 2254, on federal habeas review, a court may only consider claims that have been adjudicated on the merits by the state courts. 28 U.S.C. § 2254(d); *Cullen*, 131 S. Ct. at 1398; *Wash. v. Schriver*, 255 F.3d 45, 52-55 (2d Cir. 2001). The Second Circuit has held that, when a state court adjudicates a claim on the merits, "a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim – even if the state court does not explicitly refer to either the federal claim or to relevant federal case law." *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001).

### 2.    Double Jeopardy

The double jeopardy clause of the Fifth Amendment to the Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. Amend. V; *Boyd v. Meachum*, 77 F.3d 60, 63 (2d Cir. 1996). The Fifth Amendment applies in this instance through the Fourteenth Amendment. *See Boyd*, 77 F.3d at 63 ("The Due Process Clause of the Fourteenth Amendment extends this guarantee to state proceedings."). In its decision, the Appellate Division rejected petitioner's double jeopardy argument, concluding that, because he had not yet fully served his prison sentence, the defective sentence was

subject to correction without running afoul of the protection against double jeopardy. *Jenkins*, 78 A.D.3d at 1213. This conclusion was neither contrary to nor an unreasonable application of clearly established Supreme Court precedent.

The double jeopardy clause "protects against: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense." *Boyd*, 77 F.3d at 63 (citing *N.C. v. Pearce*, 395 U.S. 711, 717 (1969)). It does not, however, prohibit the resentencing of a convicted defendant unless the defendant has "developed a legitimate 'expectation of finality in his original sentence.'" *United States v. Triestman*, 178 F.3d 624, 630 (2d Cir. 1999) (quoting *United States v. DiFrancesco*, 449 U.S. 117, 139 (1980)). Although petitioner argues that the five-year period of post-release supervision required by New York State law was imposed by the sentencing court in connection with both convictions, including the sexual abuse conviction for which he had served his complete sentence at the time of resentencing in September 2008, the transcript from that proceeding reflects the court's intention to impose post-release supervision only with regard to the nine-year sentence still being served by the petitioner for the attempted sodomy conviction. Dkt. No. 12-10 at 6. During the

13

resentencing, in response to the double-jeopardy objection raised by counsel for the petitioner, Judge Rogers stated that she was authorized to resentence petitioner "[b]ased on the fact that Mr. Jenkins has not served the nine years for the Attempted Sodomy, and has not been released, and the fact that the Court was required, by law, to impose a term of post-release supervision[.]" *Id.* at 6-7. The court then imposed the original determinate sentences of seven years and nine years, to be served concurrently, with an additional post-release five year supervision period. *Id.* at 7. Under the circumstances, because petitioner was still serving the nine-year sentence at the time of resentencing, he could not have developed a legitimate expectation of finality in his sentence, and thus no violation of double jeopardy occurred. *See Bozza v. United States*, 330 U.S. 160, 166-67 (1947) (resentencing to include statutorily required fines inadvertently omitted was not double jeopardy because "[t]he Constitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner"); *Warren v. Rock*, No. 12-CV-3101, 2012 WL 2421916, at *2 (E.D.N.Y. June 27, 2012) (finding that the petitioner had no expectation of finality in his sentence where he was still incarcerated and serving time on his sentence when the trial court resentenced him imposing periods of post-release supervision); *Thomas v.*

*Heath*, No. 10-CV-5861, 2011 WL 1849097, at *11 (S.D.N.Y. May 16, 2011) ("Here, [the petitioner]'s original sentence was inadequate under New York law, and [the petitioner] was therefore resentenced to the additional five years of [post-release supervision] to correct the error in his original sentencing. Since such a resentencing does not constitute double jeopardy or a violation of due process, [the petitioner]'[s] claim should be dismissed[.]"). Because the Appellate Division's rejection of petitioner's double jeopardy argument was neither contrary to nor an unreasonable application of Supreme Court precedent, I recommend this claim be dismissed.

> 3. Due Process Claim

Petitioner's due process claim also lacks palpable merit. The basis for petitioner's due process argument is unclear. According to the transcript from the resentencing hearing in September 2008, Jenkins was afforded the right to be heard with regard to his double-jeopardy argument, Dkt. No. 12-10 at 6, and he availed himself of the opportunity to challenge that resentencing both on direct appeal and collaterally through the filing of a CPL § 440.20 motion. Dkt. Nos. 12-11, 12-14. The resentencing only rectified the illegality of petitioner's original sentence, which omitted the period of post-release supervision required by State law. Dkt. No. 12-10 at

6-7; *Jenkins*, 78 A.D.3d at 1212-13. Resentencing for the purpose of correcting a sentence, including to impose a period of post-release supervision, does not offend notions of due process.[8] *Warren*, 2012 WL2421916, at *2; *Thomas*, 2011 WL1849097, at *11. I therefore conclude that the petitioner's due process claim also lacks merit and recommend that it be dismissed.

    C.    <u>Certificate of Appealability</u>

    To appeal a final order denying a request for habeas relief by a state prisoner, a petitioner must obtain from the court a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A); *see also* Fed. R. App. P. 22(b)(1) ("[T]he applicant cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)."). In the absence of a COA, a federal court of appeals lacks jurisdiction to entertain an appeal from the denial of a habeas petition. *Hoffler v. Bezio*, 726 F.3d 144, 152 (2d Cir. 2013). A COA may issue only "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Hoffler*, 726 F.3d at 154. A petitioner may demonstrate a "substantial showing" if "the issues are

---

[8]    Petitioner appears to ground his due process, at least in part, on that alleged failure to meet the requirements of CPL § 380.20. Dkt. No. 7-1 at 10. It is well established, however, that federal habeas relief does not lie to correct errors of state law. *Estelle v. McGuire,* 502 U.S. 62, 67 (1991).

debatable among jurists of reason; . . . a court could resolve the issues in a different manner; or . . . the questions are adequate to deserve encouragement to proceed further." *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) (quotation marks and alterations omitted); *accord, Lucidore v. N.Y. State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000). In this instance, I conclude that the petitioner has not made a substantial showing of the denial of a constitutional right and therefore recommend against the issuance of a COA.

IV.   SUMMARY AND RECOMMENDATION

Jenkins' petition, which presents two claims, appears to be moot and, in any event, lacks merit. The petitioner's resentencing by the trial court to remedy a sentencing error and to include a mandated period of post-release supervision neither offends notions of due process nor subjects Jenkins to double jeopardy. Accordingly, it is hereby respectfully

RECOMMENDED that the petition in this matter be DENIED and DISMISSED in all respects; and it is further hereby

RECOMMENDED based upon my finding that Jenkins did not make a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2), that a certificate of appealability not issue with respect to either of the claims set forth in his petition.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:      March 11, 2015
            Syracuse, New York


Not Reported in F.Supp.2d, 2008 WL 5056851 (N.D.N.Y.)
**(Cite as: 2008 WL 5056851 (N.D.N.Y.))**

**C**

Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Louis JACKSON, Petitioner,
v.
Deborah SCHULT, Respondent.

No. 9:07-CV-1146.
Nov. 21, 2008.

Louis Jackson, Washington, DC, pro se.

Hon. Andrew T. Baxter, Acting United States Attorney, Charles E. Roberts, Esq., Assistant U.S. Attorney, of Counsel, Syracuse, NY, for the Northern District of New York.

### ORDER

DAVID N. HURD, District Judge.

**\*1** Petitioner, Louis Jackson, brought this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. By Report-Recommendation dated October 27, 2008, the Honorable Victor E. Bianchini, United States Magistrate Judge, recommended that the petition in this matter be denied and dismissed; and further, that a certificate of appealability not issue. No objections to the Report-Recommendation have been filed.

Based upon a careful review of the entire file and the recommendations of Magistrate Judge Bianchini, the Report-Recommendation is accepted and adopted in whole. *See* 28 U.S.C. 636(b)(1).

Accordingly, it is

ORDERED that the petition is DENIED and DISMISSED in all respects.

A Certificate of Appealability will not be issued.

The Clerk is directed to enter judgment accordingly and close the file.

IT IS SO ORDERED.

### REPORT AND RECOMMENDATION

VICTOR E. BIANCHINI, United States Magistrate Judge.

### I. INTRODUCTION

On October 29, 2007, Louis Jackson, filed this petition *pro se* for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner challenges the Bureau of Prison's (BOP calculation of his release date.
FN1 (Docket No. 1). The relief sought in the Petition is a recalculation of Petitioner's release date from prison. (Docket No. 1).

FN1. Petitioner does not contest the lawfulness of his conviction or sentence.

This matter was referred to the undersigned by the Honorable Norman A. Mordue, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), for a report and recommendation. (Docket No. 9).

### II. REPORT AND RECOMMENDATION

According to the Federal Bureau of Prisons' website,FN2 Petitioner was released from custody on October 22, 2008. Petitioner's release raises the question of whether this petition is moot because it no longer satisfies the case or controversy requirement of Article III, § 2 of the U.S. Constitution.
FN3

FN2. www.bop.gov (Inmate Register Number 11067-007)

FN3. A summary of the facts and background of the criminal case and the filing of the petition is unnecessary because Petitioner does not challenge his underlying conviction or sentence.

As with all litigants in federal court, Petitioner must satisfy the case or controversy requirement of

Article III, § 2, of the Constitution in order to be eligible for relief. A case becomes moot if, *at any stage* of the proceedings, it fails to satisfy the case-or-controversy requirement. *Kamagate v. Ashcroft,* 385 F .3d 144, 150 (2d Cir.2004) (emphasis added), citing *Spencer v. Kemna,* 523 U.S. 1, 7 (1998); *accord Marrero Pichardo v. Ashcroft,* 374 F.3d 46, 51 (2d Cir.2004) and *Swaby v. Ashcroft,* 357 F.3d 156, 159-60 (2d Cir.2004).

In order for a habeas petitioner who is no longer in custody to demonstrate a case or controversy, a concrete and continuing injury that is a collateral consequence of the detention and can be remedied by granting the writ, must exist. *So v. Reno,* 251 F.Supp.2d 1112, 1120 (E.D.N.Y.2003) (internal quotation marks omitted) (citing, *Spencer,* 523 U.S. at 7 and *Gonzalez v. INS,* 2002 WL 31444972, at *3 (S.D.N.Y.2002)); *see also, Perez v.. Greiner,* 296 F.3d 123, 125 (2d Cir.2002).

The Supreme Court has stated that a challenge to the conviction itself carries the presumption that a collateral consequence exists. *Spencer v. Kemna,* 523 U.S. 1, 8 (1998). In this case, Petitioner challenges the calculation by the BOP of his release date, but does not assert any claim with respect to the constitutionality of his underlying conviction. (Docket No. 1). Accordingly, because no presumption of collateral consequences applies, Petitioner must prove the existence of a concrete and *continuing* injury as a consequence of the alleged miscalculation, now that he has been released. *Spencer,* at 7. However, because Petitioner has been released from custody, he cannot establish any continuing injury arising from the alleged miscalculation of his sentence by the BOP.

**\*2** Federal courts have dismissed habeas petitions on mootness grounds in similar circumstances, where the petitioner had challenged only his or her continued imprisonment, but not the underlying conviction or sentence, and was released during the pendency of the petition. *See, e.g., Vandenberg v. Rodgers,* 801 F.2d 377, 378 (10th Cir.1986) ("We hold that [petitioner']s appeal is

moot. His petition for habeas corpus merely challenges determinations that delayed his parole date; and because he is already released from custody on parole, we find no purpose in reaching the merits of his arguments."); *Brady v. United States Parole Comm'n,* 600 F.2d 234, 236 (9th Cir.1979) ("Appellant's § 2241 habeas corpus petition attacks the Parole Commission's decision to keep him in custody. He is now on parole and does not challenge the validity of his original conviction. On this record the case is moot."); *Burnett v. Lampert,* 432 F.3d at 1001 (holding that habeas petition challenging the state board's decision to defer his scheduled parole release date was rendered moot by prisoner's release from custody on parole and subsequent incarceration for violating his parole); *Granville v. United States,* 613 F.2d 125, 126 (5th Cir.1980) (finding that prisoner's release on parole during pendency of his § 2255 habeas petition mooted contentions relating to failure of the parole commission to grant him parole).

Thus, as a result of Petitioner's release from custody, the Court finds that the Petition is moot because it no longer satisfies the case or controversy requirement of Article III, § 2 of the U.S. Constitution. Accordingly, this Court recommends that Petitioner's claim for habeas relief based upon the BOP's alleged miscalculation of his release date be DISMISSED as moot.

### IV. CONCLUSION

For the reasons stated above, the Court recommends Louis Jackson's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 be denied and that the Petition be dismissed. Because Petitioner has failed to make a substantial showing of a denial of a constitutional right, I recommend that a certificate of appealability not issue. See 28 U.S.C. § 2253(c)(2) (1996).

### V. ORDERS

Pursuant to 28 USC § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 5056851 (N.D.N.Y.)
**(Cite as: 2008 WL 5056851 (N.D.N.Y.))**

to all parties.

**ANY OBJECTIONS** to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** *Thomas v. Arn,* 474 U.S. 140 (1985); *F.D.I.C. v. Hillcrest Associates,* 66 F.3d 566 (2d. Cir.1995); *Wesolak v. Canadair Ltd .,* 838 F.2d 55 (2d Cir.1988); *see also* 28 U.S.C. § 636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

**\*3** Please also note that the District Court, on de novo review, will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. *See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co.,* 840 F.2d 985 (1st Cir.1988).

SO ORDERED.

N.D.N.Y.,2008.
Jackson v. Schult
Not Reported in F.Supp.2d, 2008 WL 5056851 (N.D.N.Y.)

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.


Not Reported in F.Supp.2d, 2012 WL 5419899 (E.D.N.Y.)
**(Cite as: 2012 WL 5419899 (E.D.N.Y.))**



Only the Westlaw citation is currently available.

United States District Court,
E.D. New York.
Andre L. LEWIS, Petitioner,
v.
People of the State of NEW YORK, Respondent.

No. 08–CV–4978 (JFB).
Nov. 6, 2012.

Andre L. Lewis, pro se.

Anne E. Oh, Suffolk County District Attorney's Office, Riverhead, N.Y., for respondent.

**MEMORANDUM AND ORDER**

JOSEPH F. BIANCO, District Judge.

**\*1** Andre L. Lewis (hereinafter "Lewis" or "petitioner") petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging the length of his postrelease supervision. On March 8, 2006, Lewis pled guilty before County Court, Suffolk County, to one count of Attempted Criminal Sale of a Controlled Substance in the Third Degree. On April 5, 2006, petitioner was sentenced, as a second felony offender, to four years' imprisonment and three years of supervised release. Petitioner challenges his sentence on the grounds that the Department of Corrections improperly increased the length of his post-release supervision in violation of his bargained-for sentence. For the reasons stated below, petitioner's request for a writ of habeas corpus is denied. Specifically, the petition is denied as moot because Lewis has completed his post-release supervision and alleges no collateral consequences from the allegedly lengthened sentence.

**I. BACKGROUND**

Petitioner was charged under Suffolk County Indictment Number 2396–05 with Criminal Sale of a Controlled Substance in the Third Degree and Criminal Possession of a Controlled Substance in the Third Degree. Petitioner pled guilty on March 8, 2006 to one count of Attempted Criminal Sale of a Controlled Substance in the Third Degree. On April 5, 2006, petitioner was sentenced, as a second felony offender, to a determinate term of four years' imprisonment, followed by three years of supervised release.

On October 30, 2008, petitioner filed in this Court his petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241. On March 30, 2009, respondent filed a response seeking dismissal of the petition on the grounds that petitioner had not exhausted his state court remedies. On May 5, 2011, the Court ordered respondent to advise the Court as to whether petitioner remained in custody. On June 27, 2011, respondent filed a letter with the Court indicating that petitioner's post-release supervision maximum expiration date was December 29, 2011. On January 27, 2012, the Court ordered petitioner and respondent to submit separate letters confirming whether petitioner had completed his post-release supervision and, if so, explaining why the petition should not be dismissed as moot. The January 27, 2012 Order mailed to plaintiff was returned as undeliverable on February 9, 2012. The respondent submitted a letter on April 5, 2012, confirming that petitioner was released from the supervision of the New York State Department of Parole on December 29, 2011 and requesting, as a result of this fact, that the petition be dismissed as moot.

**II. DISCUSSION**

**A. "In Custody" Requirement**

Petitioner brings the instant petition pursuant to 28 U.S.C. § 2241. The Second Circuit has explained that

Section 2241 ... is the proper means to challenge the *execution* of a sentence. In a § 2241 petition a prisoner may seek relief from such things as, for example, the administration of his parole, computation of his sentence by parole officials, discip-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 5419899 (E.D.N.Y.)
**(Cite as: 2012 WL 5419899 (E.D.N.Y.))**

linary actions taken against him, the type of detention, and prison conditions in the facility where he is incarcerated.

**\*2** *Adams v. United States,* 372 F.3d 132, 135 (2d Cir.2004) (emphasis in original); *see also Carmona v. United States Bureau of Prisons,* 243 F.3d 629, 632 (2d Cir.2001).

A federal court has jurisdiction to consider a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 from prisoners "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).[FN1] Thus, the petitioner must be "in custody" within the meaning of 28 U.S.C. § 2241. *See Scanio v. United States,* 37 F.3d 858, 860–61 (2d Cir.1994) (denying a petition for writ of habeas corpus pursuant to 22 U .S.C. § 2255 because the petitioner failed to satisfy "in custody" requirement). *See also Lackawanna Cnty. Dist. Att'y v. Coss,* 532 U.S. 394, 401, 121 S.Ct. 1567, 149 L.Ed.2d 608 (2001) (explaining that relief is generally unavailable through a writ of habeas corpus when a petitioner seeks to challenge a prior conviction for which the person is no longer "in custody"). As the Third Circuit has noted, "custody is the passport to federal habeas corpus jurisdiction." *United States ex rel. Dessus v. Pennsylvania,* 452 F.2d 557, 560 (3d Cir.1971).

> FN1. Additionally, federal courts have jurisdiction over a writ pursuant to 28 U.S.C. § 2241 from a prisoner who is "in custody under or by color of the authority of the United States"; is "in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States"; "being a citizen of a foreign state and domiciled therein is in custody for an act done or omitted under any alleged right, title, authority, privilege, protection, or exemption claimed under the commission, order or sanction of any foreign state, or under color thereof, the validity and effect of which depend upon the law of na-

tions"; or who must be brought "into court to testify or for trial." 28 U.S.C. § 2241(c).

Physical confinement is not necessary to satisfy the "in custody" requirement; for example, a petitioner who is on parole or serving a term of supervised release is considered to be "in custody" for purposes of federal habeas corpus statutes. *See Earley v. Murray* 451 F.3d 71, 75 (2d Cir.2006). The custody requirement is also met where a prisoner attacks any one of a number of sentences, *see, e.g., Peyton v. Rowe,* 391 U.S. 54, 67, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968), and when a prisoner attacks an earlier conviction, the effect of which was to delay the start of his current unrelated sentence, *see, e.g, Harrison v. Indiana,* 597 F.2d 115, 117 (7th Cir.1979). Moreover, the Supreme Court has "interpreted the statutory language as requiring that the habeas petitioner be 'in custody' under the conviction or sentence under attack *at the time his petition is filed." Maleng v. Cook,* 490 U.S. 488, 490–91, 109 S.Ct. 1923, 104 L.Ed.2d 540 (1989) (emphasis added). Specifically, the Supreme Court has held that even a liberal construction of the "in custody" requirement for purposes of federal habeas relief does not extend to the situation where, at the time the petition is filed, a "habeas petitioner suffers no present restraint from a conviction." *Maleng,* 490 U.S. at 492. "The custody requirement of the habeas corpus statute is designed to preserve the writ of habeas corpus as a remedy for severe restraints on individual liberty." *Hensley v. Mun. Court,* 411 U.S. 345, 351, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973). As a result, "its use has been limited to cases of special urgency, leaving more conventional remedies for cases in which the restraints on liberty are neither severe nor immediate." *Id.*

In the instant case, petitioner satisfies the "in custody" requirement because he was detained at Lakeview Shock Incarceration Correctional Facility at the time he filed his Section 2241 petition on October 30, 2008. However, that does not end the inquiry. The Court must still examine whether the pe-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

tition is moot.

### B. Mootness

**\*3** Federal courts are permitted to exercise jurisdiction only over cases "that present a live case or controversy." *Arias v. Donilli,* No. CV–03–4098(DGT), 2007 U.S. Dist. LEXIS 8452, 2007 WL 433402, at \*12 (E.D.N.Y. Feb.6, 2007) (citing *Spencer v. Kemna,* 523 U.S. 1, 7, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998)). The Supreme Court has explained that "a criminal case is moot only if it is shown that there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction." *Sibron v. New York,* 392 U.S. 40, 57, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). "The Supreme Court has held that a habeas petition challenging a criminal conviction is not moot if the petitioner, although released from custody, may continue to suffer collateral consequences as a result of that conviction." *Garcia v. Woughter,* 1:09–cv–7722 (GBD)(JCF), 2011 U.S. Dist. LEXIS 131504, 2011 WL 5519899, at \*3 (S.D.N.Y. Nov. 14, 2011) (citing *Pollard v. United States,* 352 U.S. 354, 358, 77 S.Ct. 481, 1 L.Ed.2d 393 (1957)); *see also Agoro v. Herron,* No. 10–CV–1055(MAT), 2012 U.S. Dist. LEXIS 73312, at \*5, 2012 WL 1909214 (W.D.N.Y. May 25, 2012) ("Where a habeas petition is based upon a criminal conviction, the cause is not rendered moot by the petitioner's release from custody, provided that petitioner continues to suffer 'collateral consequences' of the conviction upon which the now-ended incarceration was based." (citation omitted)); *Garcia v. McCoy,* 97 Civ. 1131(JGK), 1998 U.S. Dist. LEXIS 8053, at \*2, 1998 WL 288625 (S.D.N.Y. June 2, 1998) ("Since the petitioner in this case has been released from prison, the Court can retain jurisdiction over his application only if [petitioner] also faces adverse collateral consequences from the conviction for which he was imprisoned.").

The Supreme Court has been willing to presume the existence of collateral consequences following a conviction. *See Spencer,* 523 U.S. at 8.

However, " 'when a defendant challenges only an expired sentence, no ... presumption [of collateral consequences] applies, and the defendant must bear the burden of identifying some ongoing collateral consequence that is traceable to the challenged portion of the sentence and likely to be redressed by a favorable judicial decision.' " *Alshalabi v. United States,* 08 CV 2734(RJD), 2012 U.S. Dist. LEXIS 29807, at \*8, 2012 WL 727911 (E.D.N.Y. Mar. 6, 2012) (quoting *United States v. Juvenile Male,* ––– U.S. ––––, ––––, 131 S.Ct. 2860, 2864, 180 L.Ed.2d 811 (2011)). Furthermore, "where a habeas petitioner only challenges a sentencing enhancement, and not the underlying conviction itself, the court does not presume the existence of collateral consequences because comparable civil disabilities generally do not arise from the length of a sentence." *Al–Sadawi v. United States,* 08–CV–549 (NGG), 2011 U.S. Dist. LEXIS 25506, at \*11, 2011 WL 888118 (E.D.N.Y. Mar. 14, 2011); *see Garcia v. Schultz,* No. 05–CV–2428 (BSJ)(MHD), 2009 U.S. Dist. LEXIS 126453, at \*12–13, 2010 WL 1328349 (S.D .N.Y. Jan. 13, 2010) (finding that a petitioner challenging only his sentence, who has already been discharged from parole, has "no injury that this court could remedy at this point, and any possible future adverse consequences that might flow from an arguably over long prison term necessarily would be purely speculative if not nonexistent"), *adopted by* 2010 U.S. Dist. LEXIS 32895, 2010 WL 1328333 (S.D.N.Y. Apr. 2, 2010). Thus, where a petitioner has been released from custody, the burden is on the petitioner to establish that he continues to suffer collateral consequences from his conviction and sentence. *See Al–Sadawi,* 2011 U.S. Dist. LEXIS 25506, at \*12, 2011 WL 888118 (quoting *United States v. Hamdi,* 432 F.3d 115, 118 (2d Cir.2005) ("[A] petitioner's challenge solely to the length of his completed sentence will only satisfy the constitutional case or controversy requirement if the petitioner can actually show 'some concrete and identifiable collateral effect of that sentence.' ")); *see also Razzoli v. United States Parole Comm'n,* 116 F. App'x 292, 293 (2d Cir.2004) ("Where, as here, a petitioner's habeas petition

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 4

Not Reported in F.Supp.2d, 2012 WL 5419899 (E.D.N.Y.)
**(Cite as: 2012 WL 5419899 (E.D.N.Y.))**

challenges parole revocation proceedings, his petition becomes moot when he is released from custody unless he is able to demonstrate collateral consequences stemming from the parole revocation proceedings."). Similarly, where "an alien challenging his detention under 28 U.S.C. § 2241 is released during the pendency of his petition under an order of supervision, the petition is rendered moot." *Agoro,* 2012 U.S. Dist. LEXIS 73312, at *6, 2012 WL 1909214; *see Denis v. DHS/ICE of Buffalo N.Y.,* 634 F.Supp.2d 338, 341 (W.D.N.Y.2009) (Report and Recommendation) ("Because the only relief sought by [petitioner], and obtainable from this Court, was release from DHS custody, [petitioner's] habeas petition became moot upon his release under an order of supervision, which terminated his custodial detention."); *Baptiste v. INS,* 06–CV–0615 (NG), 2006 U.S. Dist. LEXIS 77084, at *5, 2006 WL 3050884 (E.D.N.Y. Oct. 23, 2006) (holding that where petitioner was released pursuant to an order of supervision pending her removal, it was "clear that petitioner in the case at hand was challenging only the lawfulness of her detention" and "as a result of her release, [her] application for relief [was] moot").

**\*4** In this case, the petition is moot because petitioner was released from post-release supervision on December 29, 2011, and does not allege that he suffers from any ongoing restraints on his liberty. The Court's January 27, 2012 Order seeking additional information regarding whether petitioner, having been released from prison on the conviction he was challenging and having completed his post-release supervision, could provide any reason why his petition should not be dismissed as moot, was returned as undeliverable on February 9, 2012. Respondent has not updated his address since he resided at Attica Correctional Facility and has not communicated with the Court since June 4, 2009.

Thus, petitioner has not alleged that he suffers from any adverse collateral consequences following his release from physical custody and the expiration of his post-release supervision. Accordingly, although the "in custody" requirement was met at the time petitioner filed the petition for habeas relief, the petition is moot and must be dismissed because petitioner is no longer subject to any "continuing restraints on his liberty, such as parole or some form of supervised release" and does not allege any adverse collateral consequences following his release from custody. *Whaley v. Graham,* 06–CV–3843 (JFB), 2008 U.S. Dist. LEXIS 82987, at *16, 2008 WL 4693318 (E.D.N.Y. Oct. 15, 2008) ; *see Banks v. Gonzalez,* 496 F.Supp.2d 146, 150 (D.D.C.2007) (dismissing habeas petition as moot where "petition does not allege that he is currently subject to any restraints on liberty and does not allege government actions that are redressable under habeas"); *see also Spencer,* 523 U.S. at 3, 18 (dismissing habeas petition challenging the revocation of parole as moot because petitioner was released from custody and parole).

### III. CONCLUSION

For the foregoing reasons, Lewis's petition for a writ of habeas corpus is denied as moot. The Second Circuit has never ruled on whether a certificate of appealability is required for a state detainee to challenge denial of habeas relief under 28 U.S.C. § 2241. *See Johnson v. New York,* 12–CV–03213 (RRM), 2012 U.S. Dist. LEXIS 96153, at *5–6, 2012 WL 2861004 (E.D.N.Y. July 11, 2012); *Marte v. Berkman,* 11 Civ. 6082(JFK), 2011 U.S. Dist. LEXIS 120132, at *28–29, 2011 WL 4946708 (S.D.N.Y. Oct. 18, 2011), *aff'd Marte v. Vance,* 11–4486–cv, 2012 U.S.App. LEXIS 9480, 2012 WL 1632606 (2d Cir. May 10, 2012). Assuming a certificate of appealability is required, it is denied to petitioner, because the petition is clearly moot and the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith. *See Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962). The Clerk of Court is directed to enter judgment accordingly and close this case.

SO ORDERED.

E.D.N.Y.,2012.

Not Reported in F.Supp.2d, 2012 WL 5419899 (E.D.N.Y.)
**(Cite as: 2012 WL 5419899 (E.D.N.Y.))**

Lewis v. New York
Not Reported in F.Supp.2d, 2012 WL 5419899
(E.D.N.Y.)

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.


Not Reported in F.Supp.2d, 2012 WL 2421916 (E.D.N.Y.)

**(Cite as: 2012 WL 2421916 (E.D.N.Y.))**

**H**

Only the Westlaw citation is currently available.

United States District Court,
E.D. New York.
Damon WARREN, Petitioner,
v.
David ROCK, Respondent.

No. 12–CV–3101 (JG)(JO).
June 27, 2012.

Damon Warren, Malone, NY, pro se.

Charles J. Hynes, Kings County District Attorney, Brooklyn, NY, for Respondent.

*ORDER TO SHOW CAUSE*

JOHN GLEESON, District Judge.

**\*1** Damon Warren, who is currently incarcerated at Upstate Correctional Facility, brings this petition, *pro se,* for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Warren is hereby ordered to show cause on or before July 20, 2012, why his petition should not be dismissed for the reasons explained in this order. The court's previous order to show cause entered on June 25, 2012, directing the respondent to respond to the petition and file the state-court record on or before September 24, 2012, is hereby stayed.

BACKGROUND

Warren asserts in his petition a single ground for relief, which he labels "[c]onviction obtained by violation of the protection against Double jeopardy." Pet. ¶ 12(A). He explains the basis of his challenge as follows: "The court added four concurrent terms of post release supervision nunc pro tunc to the petitioner['s] original sentence. Whereas, the double jeopardy and due process guarantees of the federal constitution established that the petitioner may not be re-sentenced if he has acquired a reasonable expectation of finality in his sentence even if the sentence was illegal." *Id.*

Warren attached to his petition a copy of a "Post Release Supervision Re–Sentencing Order" dated February 19, 2010, issued by Justice Michael J. Brennan of the Supreme Court of the State of New York, Kings County. *See* Re–Sentencing Order, Pet. at 7. The order states:

The Court, having examined the Court file, the sentencing Judge's notes, the original commitment order,

Finds, that the Defendant was convicted after trial.

And, having heard from the Defense Attorney and the Assistant District Attorney, and the Defendant,

Finds, the sentencing Judge failed to impose a legally mandated period of post release supervision; over the defendant's objection

HEREBY re-sentences the Defendant herein ... to a period of post release supervision [as described in the order].

....

NUNC PRO TUNC TO December 4, 2002.

Any pending violation or prior revocation of a DOCS assessed period of PRS is deemed a nullity and is vacated. All other conditions of the original sentence remain in effect ....

*Id.*

This re-sentencing order was affirmed by the Appellate Division without opinion on January 17, 2012. *See* Pet. at 8. The New York Court of Appeals denied leave to appeal on May 4, 2012. *See* Pet. at 10.

DISCUSSION

In *Earley v. Murray,* 451 F.3d 71 (2d Cir.2006), the Second Circuit held that clearly established

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

federal constitutional law prohibited New York's Department of Correctional Services ("DOCS") from imposing post-release supervision ("PRS") on any inmate if the court had not imposed such a term at sentencing, even where such post-release supervision was required by statute. *Id.* at 76; *see also Garner v. N.Y. State Dept. of Correctional Svcs.,* 10 N.Y.3d 358, 859 N.Y.S.2d 590, 889 N.E.2d 467 (2008) (holding that post-release supervision imposed by anyone other than a judge violates New York state law). FN1 The court reasoned that due process requires that "[o]nly the judgment of a court, as expressed through the sentence imposed by a judge, has the power to constrain a person's liberty." *Earley,* 451 F.3d at 75 (citing *Hill v. United States ex rel. Wampler,* 298 U.S. 460, 464, 56 S.Ct. 760, 80 L.Ed. 1283 (1936)). If the executive discovers an "oversight made by [a defendant's] sentencing judge," the proper course is for the state to "move [ ] to correct the sentence through a judicial proceeding"—"not to modify the sentence unilaterally." *Id.* at 76; *see also Scott v. Fischer,* 616 F.3d 100, 109 (2d Cir.2010) (explaining that federal and New York law "prohibit [ ] DOC[S] from unilaterally correcting sentences—even illegal ones" (internal quotation marks and alterations omitted)).

> FN1. The New York legislature subsequently passed N.Y. Corr. Law § 601–d in 2008 "to provide a mechanism for courts to consider resentencing defendants serving determinate sentences without court-ordered postrelease supervision terms." *People v. Williams,* 14 N.Y.3d 198, 206, 899 N.Y.S.2d 76, 925 N.E.2d 878 (2010). The legislature also amended Penal Law § 70.45(1) in 2008 to require that a sentencing court "shall in each case state not only the term of imprisonment, but also an additional period of post-release supervision determined pursuant to this article." N.Y. Penal Law § 70.45(1) (2008).

**\*2** According to the Re–Sentencing Order, Warren's original sentence failed to include a stat-

utorily mandated period of post-release supervision. However, once it discovered this oversight, the state appropriately followed the exact course prescribed by the Second Circuit in *Earley:* It returned to the sentencing court and sought to correct the sentence through a judicial proceeding. FN2 *See Earley,* 451 F.3d at 76; *see also Hill,* 298 U.S. at 464 ("The only sentence known to the law is the sentence or judgment entered upon the records of the court. If the entry is inaccurate, there is a remedy by motion to correct it to the end that it may speak the truth."). Thus, the addition of a PRS term to Warren's sentence did not violate due process.

> FN2. The Re–Sentencing Order suggests that prior to Warren's re-sentencing, DOCS may have initially attempted to inappropriately impose a period of PRS without court order. However, the DOCS-imposed PRS is not at issue in this habeas petition, as the state court declared it a "nullity" and vacated it at the 2010 re-sentencing. *See* Re–Sentencing Order. Accordingly, Warren, appropriately, is challenging only his court-imposed PRS sentence in the instant petition, not his since-vacated DOCS-imposed PRS sentence.

Moreover, Warren's re-sentencing did not violate double jeopardy, even though it occurred more than seven years after his original sentencing. The Double Jeopardy Clause prohibits altering a previously imposed sentence if the defendant had a legitimate expectation of finality in his original sentence. *United States v. Kyles,* 601 F.3d 78, 84 (2d Cir.2010), *cert. denied,* ––– U.S. ––––, 131 S.Ct. 258, 178 L.Ed.2d 251 (2010) (citing *United States v. DiFrancesco,* 449 U.S. 117, 136–38, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980)). "But where no such expectation exists, double jeopardy does not bar a court from modifying a sentence." *Id.*

In circumstances similar to this case, the New York Court of Appeals squarely rejected a double jeopardy challenge to a re-sentencing that added a PRS term pursuant to New York Corrections Law §

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

601–d. *See People v. Williams,* 14 N.Y.3d 198, 899 N.Y.S.2d 76, 925 N.E.2d 878 (2010), *cert. denied,* —— U.S. ——, 131 S.Ct. 125, 178 L.Ed.2d 242 (2010). The *Williams* court held that defendants who have not yet completed their imposed sentences "cannot acquire a legitimate expectation of finality in a sentence which is illegal, because such a sentence remains subject to modification[.]" *Id.* at 215, 899 N.Y.S.2d 76, 925 N.E.2d 878 (quoting *United States v. Rourke,* 984 F.2d 1063, 1066 (10th Cir.1992)); *see also People v. Scott,* 81 A.D.3d 988, 988, 917 N.Y.S.2d 293 (N.Y.App.Div.2011), *leave to appeal denied,* 16 N.Y.3d 863, 923 N.Y.S.2d 425, 947 N.E.2d 1204 (2011) ("Since the defendant had not yet been released from incarceration on the original sentence when he was resentenced, the re-sentencing to include the statutorily required period of PRS did not subject him to double jeopardy or violate his right to due process of law."). [FN3] By contrast, the New York Court of Appeals held that where a defendant has *already completed* his imposed sentence and been released from incarceration, at that time he has acquired "a legitimate expectation that the sentence, although illegal under the Penal Law, is final and the Double Jeopardy Clause prevents a court from modifying the sentence to include a period of postrelease supervision." *Williams,* 14 N.Y.3d at 219–20, 899 N.Y.S.2d 76, 925 N.E.2d 878.

> FN3. *See also United States v. Rico,* 902 F.2d 1065, 1068 (2d Cir.1990) ("Where a new sentence is legally imposed, such a sentence may be greater than the original sentence being served without any violation of a defendant's rights under the double jeopardy clause."); *cf. Bozza v. United States,* 330 U.S. 160, 166–67, 67 S.Ct. 645, 91 L.Ed. 818 (1947) ( "The Constitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner. In this case the court only set aside what it had no authority to do, and substituted directions required by the law

to be done upon the conviction of the offender. It did not twice put petitioner in jeopardy for the same offense. The sentence as corrected, imposes a valid punishment for an offense instead of an invalid punishment for that offense." (internal citations, footnotes, quotation marks, and alterations omitted)); *Thompson v. United States,* 495 F.2d 1304, 1306 (1 st Cir.1974) ("The full import of *Bozza* is that a trial court not only can alter a statutorily-invalid sentence in a way which might increase its severity, but must do so when the statute so provides."); *United States v. Warner,* 690 F.2d 545, 555 (6th Cir.1982) ("[E]very circuit that has considered this issue has held that the Double Jeopardy Clause does not prohibit amending a sentence to add a mandatory special parole term.") (citing cases).

It appears that Warren was still incarcerated at the time he was re-sentenced to add a mandatory PRS term to his sentence. Accordingly, he did not have a legitimate expectation of finality in his original (illegal) sentence, and thus the re-sentencing to correct the sentencing judge's original oversight did not violate Warren's double jeopardy rights. *See id.* at 215, 899 N.Y.S.2d 76, 925 N.E.2d 878.

## CONCLUSION

**\*3** In sum, the state appears to have done precisely what the Second Circuit has advised it to do to remedy the initial defect in Warren's sentence. Given the limited availability of habeas relief under 28 U.S.C § 2254 (*i.e.,* as relevant here, it is available only where the state court's judgment was contrary to, or involved an unreasonable application of, clearly established Supreme Court law), it seems clear to me from the face of Warren's petition that relief is unavailable to him. However, before I reach such a conclusion, Warren has a right to be heard. Accordingly, he is respectfully directed to show cause in writing on or before July 20, 2012, why his petition for habeas corpus should not be

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 2421916 (E.D.N.Y.)
**(Cite as: 2012 WL 2421916 (E.D.N.Y.))**

dismissed for the reasons set forth above. If Warren fails to do so, his petition will be denied as without merit, and the Clerk of the Court will be instructed to close the case.

So ordered.

E.D.N.Y.,2012.
Warren v. Rock
Not Reported in F.Supp.2d, 2012 WL 2421916 (E.D.N.Y.)

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 1849097 (S.D.N.Y.)
**(Cite as: 2011 WL 1849097 (S.D.N.Y.))**



Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
Robert THOMAS, Petitioner,
v.
Philip HEATH, Superintendent of Sing Sing Correctional Facility, Respondent.

No. 10 Civ. 5861(BSJ)(JLC).
May 16, 2011.

*REPORT AND RECOMMENDATION*
JAMES L. COTT, United States Magistrate Judge.

**\*1 To the Honorable Barbara S. Jones, United States District Judge:**

*Pro se* Petitioner Robert Thomas ("Thomas" or "Petitioner") seeks a writ of habeas corpus under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, alleging that he is in state custody in violation of his federal constitutional rights. Thomas challenges his June 11, 2008 resentencing in Supreme Court, New York County, which, in addition to confirming his original sentence of 15 years in prison, imposed an additional five-year term of post-release supervision, as violating his constitutional rights to due process and to be free from double jeopardy. Thomas' state custody arises from his April 20, 2005 conviction, after a guilty plea, of attempted aggravated assault upon a police officer, criminal sexual act in the second degree, use of a child in a sexual performance, and promoting an obscene sexual performance by a child. Thomas is currently incarcerated at Sing Sing Correctional Facility. For the reasons set forth below, I recommend that the Petition be denied.

## I. BACKGROUND
### A. Thomas' Crime and Arrest

On March 22, 2005, Thomas pleaded guilty before Justice Carol Berkman in New York Supreme Court, New York County (the "trial court"), to attempted aggravated assault upon a police officer ( N.Y. Penal Law §§ 110.00; 120.11 (McKinney 2011)), criminal sexual act in the second degree ( N.Y. Penal Law § 130.45(1) (McKinney 2011)), use of a child in a sexual performance (N.Y. Penal Law § 263.05 (McKinney 2011)), and promoting an obscene sexual performance by a child (N.Y. Penal Law § 263.10 (McKinney 2011)). Declaration of Lea L. La Ferlita in Opposition to the Petition for Writ of Habeas Corpus, dated January 14, 2011 ("La Ferlita Decl.") Ex. A (Plea Transcript) at 20 (Dkt. No. 11). The following facts are derived from Thomas' plea allocution.

On September 15, 2004, Thomas, who was 60 years old, was having sex in a parked van with a 16–year–old girl with whom he had previously engaged in sexual acts. *Id.* at 6–7. Police officers saw the van and knocked on the window. *Id.* at 8. Frightened, Thomas jumped into the driver's seat and tried to escape. *Id.* at 10. He sped away, nearly hitting an officer who was in his path, and later reversed his van in the direction of police officers during his attempted escape. *Id.* at 10–11. After Thomas was arrested, police officers discovered a camera in his car containing 14 sexually explicit photographs of the girl. *Id.* at 13–16.

### B. Thomas' Sentencing

During the March 22, 2005 plea proceedings, the trial court informed Thomas that he would be sentenced to a term of 15 years imprisonment and that upon release, he would be subject to post-release supervision ("PRS") for a period of five years. *Id* . at 17. On April 20, 2005, the trial court sentenced Thomas, as a second violent felony offender, to the promised prison term. La Ferlita Decl. Ex B. The trial court neglected to mention that Thomas' sentence was to be followed by the five year period of PRS; however, the five year PRS term was recorded on Thomas' Sentence and Commitment Order. La Ferlita Decl. Ex. L, at 3.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 1849097 (S.D.N.Y.)
**(Cite as: 2011 WL 1849097 (S.D.N.Y.))**

### C. Thomas' Direct Appeal

**\*2** Thomas appealed his April 20, 2005 sentence to the New York State Supreme Court, Appellate Division, First Department (the "Appellate Division"), seeking to have the five year period of PRS stricken from his sentence on the grounds that "it was not part of the sentence that the court pronounced orally, in his presence in open court, and was not added by way of a judicial proceeding, such as a [New York] CPL 440.40 motion by the People to set aside the sentence ." *People v. Thomas,* 826 N.Y.S.2d 36, 37 (1st Dept.2006). The Appellate Division affirmed the sentence, concluding that Thomas had waived his right to appeal, and that, moreover, his claim was unpreserved. *Id.* at 37. The Appellate Division went on to find that even if it were to examine Thomas' claims, it would dismiss them as meritless because the five year PRS was required under New York law, even if the trial court did not explicitly mention the PRS during sentencing. *Id.* at 38. On August 7, 2007, the New York Court of Appeals granted Thomas leave to appeal, and the case was consolidated with four other appeals. *See* La Ferlita Decl. Ex. I.

On April 29, 2008, the Court of Appeals issued a decision in all five appeals, concluding that "the procedure through which PRS was imposed upon these defendants [including Thomas] was flawed as it did not comply with the statutory mandate," *People v. Sparber,* 859 N.Y.S.2d 582, 584 (2008), because the PRS terms were not pronounced by the judge orally at sentencing. *Id.* at 587. However, the Court of Appeals went on to explain that the flaws could be remedied simply by resentencing the individuals and that "[n]othing more is required." *Id.*

### D. Resentencing Proceedings

In accordance with the Court of Appeals' decision, Thomas and his attorney appeared before the trial court on June 11, 2008, for the resentencing. La Ferlita Decl. Ex. K (Resentencing Transcript). There, the trial court resentenced Thomas to a determinate term of 15 years imprisonment, followed by five years of PRS. *Id.* at 6. During the

proceedings, Thomas accused the trial court of coercing him to plead guilty on March 22, 2005. *Id.* at 4–5. The trial court interpreted Thomas' comments as an application to withdraw his plea and denied the application. *Id.* at 4–6. Thomas made no further statements during the proceedings, and neither he nor his counsel objected to the resentencing.

However, Thomas subsequently appealed the June 11, 2008 resentencing, arguing that it violated his federal constitutional rights to due process and to be free from double jeopardy by imposing the PRS term more than three years after his original sentence. La Ferlita Decl. Ex L, at 5–12. Additionally, Thomas contended that the trial court lost jurisdiction to resentence him because of the delay of over three years from his original sentencing. *Id.* at 12. On July 2, 2009, the Appellate Division affirmed the resentencing, declining to review Thomas' claims because they were unpreserved and, in the alternative, finding his challenges without merit. *People v. Thomas,* 881 N.Y.S.2d 291, 292 (1st Dept.2009). Thomas sought leave to appeal to the Court of Appeals, but the Court of Appeals rejected his application on November 4, 2009. *People v. Thomas,* 891 N.Y.S.2d 697 (2009).

### E. The Instant Petition

**\*3** Thomas timely filed this petition on August 3, 2010, again claiming that the imposition of the PRS violated his constitutional rights to due process and to be free from double jeopardy, and that the delay in resentencing deprived the trial court of jurisdiction to resentence him.[FN1] Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus, dated April 6, 2010 ("Pet.") at 5, 12 (Dkt. No. 1).

> FN1. In his Petition, in lieu of any arguments Thomas attaches the brief he submitted to the Appellate Division appealing his resentencing. Accordingly, this Court will incorporate the arguments raised in the Appellate Division brief into the Petition. *See McRae v. Senkowski,* No. 01 Civ. 2916(GWG), 2002 WL 1880730, at \*6 (S.D.N.Y. Aug. 15, 2002).

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

On January 14, 2011, Respondent filed his opposition to Thomas' Petition. *See* La Ferlita Decl; Memorandum of Law in Opposition to the Petition for a Writ of Habeas Corpus, dated January 14, 2011 ("Resp't's Mem.") (Dkt. No. 10). Thomas filed his reply papers on March 7, 2011. Reply, dated February 27, 2011 ("Pet'r's Reply") (Dkt. No. 14).

## II. DISCUSSION
### A. Applicable Legal Principles

#### 1. AEDPA Standard of Review

When a state court has adjudicated a federal constitutional claim on the merits, under AEDPA, a federal court may not grant habeas relief unless the state-court decision " 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.' " *Cullen v. Pinholster,* 131 S.Ct. 1388, 1414 (2011) (quoting 28 U.S.C. § 2254(d)(1)). Accordingly, the only source of clearly established federal law that a federal court may consider in reviewing a state prisoner's habeas application are the decisions of the Supreme Court. *Williams v. Taylor,* 529 U.S. 362, 412 (2000). Moreover, a federal court reviewing a habeas application need consider only "the holdings, as opposed to the dicta, of th[e] Supreme Court's decisions as of the time of the relevant state-court decision." *Id.*

A state court decision is "contrary to" clearly established law under the first clause of § 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Id.* at 412–13.

A state court decision involves an "unreasonable application" of clearly established law under the second clause of § 2254(d)(1) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of

the prisoner's case." *Id.* 529 U.S. at 413. Additionally, a state court may unreasonably apply Supreme Court precedent "if the state court unreasonably extends a legal rule established by the Supreme Court or if it unreasonably fails to extend a legal rule to a context in which the rule reasonably should apply," *Serrano v. Fischer,* 412 F.3d 292, 296–97 (2d Cir.2005).

The Supreme Court "ha[s] explained that 'an unreasonable application of federal law is different from an *incorrect* application of federal law.' " *Renrico v. Lett,* 130 S.Ct. 1855, 1862 (2010) (quoting *Williams,* 529 U.S. at 410). " '[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* (quoting *Williams,* 529 U.S. at 411). Instead, "that application must be 'objectively unreasonable.' " *Id.* (quoting *Williams,* 529 U.S at 409). "[T]he objectively unreasonable standard of § 2254(d)(1) means that [a] petitioner must identify some increment of incorrectness beyond error in order to obtain habeas relief." *Ortiz v. N.Y.S. Parole in Bronx, N.Y.,* 586 F.3d 149, 156 (2d Cir.2009) (quoting *Lynn v. Bliden,* 443 F.3d 238, 246 (2d Cir.2006)).

**\*4** However, as a threshold matter, a court does not need to apply this standard unless a petitioner first fully exhausts his claims in the state courts; nor does a court need to apply the standard if a petitioner's claims are procedurally barred from review.

#### 2. Exhaustion

AEDPA requires state prisoners seeking federal habeas relief to exhaust available state court remedies first. *See* § 2254(b)(1) (A); *Carvajal v. Artus,* 633 F.3d 95, 104 (2d Cir.2011). "Exhaustion of state remedies requires that a petitioner fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Carvajal,* 633 F.3d at 104 (quoting *Duncan v. Henry,* 513 U.S. 364, 365 (1995) (per curiam)

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 1849097 (S.D.N.Y.)
**(Cite as: 2011 WL 1849097 (S.D.N.Y.))**

(internal alterations and quotations omitted)). A petitioner must "alert the state court to the constitutional nature of a claim." *St. Helen v. Senkowski,* 374 F.3d 181, 182 (2d Cir.2004). However, a petitioner need not "cite 'chapter and verse of the Constitution' in order to satisfy this requirement." *Carvajal,* 633 F.3d at 104 (quoting *Dave v. Attorney Gen. of N.Y.,* 696 F.2d 186, 192 (2d Cir.1982) (en banc)).

Therefore, to exhaust a claim, a prisoner must " 'fairly present' the federal claim 'in each appropriate state court.' " *Richardson v. Superintendent of Mid–Orange Corr. Facility,* 621 F.3d 196, 201 (2d Cir.2010) (citing *Baldwin v. Reese,* 541 U.S. 27, 29 (2004)). "State remedies are deemed exhausted when a petitioner has: (i) presented the federal constitutional claim asserted in the petition to the highest state court ... and (ii) informed that court (and lower courts) about both the factual and legal bases for the federal claim." *Ramirez v. Attorney Gen. of State of N.Y.,* 280 F.3d 87, 94 (2d Cir.2001) .

While courts can dismiss an unexhausted claim without prejudice to allow a petitioner to exhaust the claim in state court, if a petitioner can no longer present his unexhausted claim in state court, district courts must deem the claim procedurally barred. *See Richardson,* 621 F.3d at 201 (citing *Acosta v. Artuz,* 575 F.3d 177, 188 (2d Cir.2009) and *Coleman v. Thompson,* 501 U.S. 722, 732 (1991)); *Aparicio v. Artuz,* 269 F.3d 78, 90 (2d Cir.2001) ("[W]hen 'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' federal habeas courts also must deem the claims procedurally defaulted.") (quoting *Coleman,* 501 U.S. at 735 n.1).

### 3. Procedural Bar—Independent and Adequate State Ground

"A federal habeas court will not review a claim rejected by a state court 'if the decision of [the state] court rests on a state law ground that is inde-

pendent of the federal question and adequate to support the judgment.' " *Walker v. Martin,* 131 S.Ct. 1120, 1127 (2011) (quoting *Beard v. Kindler,* 130 S.Ct. 612, 614 (2009) (internal citations omitted)). This rule is designed to " 'ensur[e] that the States' interest in correcting their own mistakes is respected in all federal habeas cases.' " *Cone v. Bell,* 129 S.Ct. 1769, 1780 (2009) (quoting *Coleman,* 501 U.S. at 729). The Supreme Court thus "ha[s] held that when a petitioner fails to raise his federal claims in compliance with relevant state procedural rules, the state court's refusal to adjudicate the claim ordinarily qualifies as an independent and adequate state ground for denying federal review.' " *Id.* (quoting *Coleman,* 501 U.S. at 732).

#### a. Independence

**\*5** Generally, in order to determine whether the state law ground upon which a petitioner relies is independent from federal law, reliance on the state procedural rule must be "clear from the face of the opinion." *Coleman,* 501 U.S. at 735: *see also Carrion v.. Smith,* 549 F.3d 583, 587 (2d Cir.2008); *Messiah v. Duncan,* 435 F.3d 186, 195 (2d Cir.2006).

"Even where the state court has ruled on the merits of a federal claim 'in the alternative,' federal habeas review is foreclosed where the state court has also expressly relied on the petitioner's procedural default." *Murden v. Artuz,* 497 F.3d 178, 191 (2d Cir.2007) (citing *Green v. Travis,* 414 F.3d 288, 294 (2d Cir.2005)); *see also Harris v. Reed,* 489 U.S. 255, 264 n.10 (1989). However, if the state court decision contains ambiguous language such as "the claims are either unpreserved *or* without merit," the claims are subject to federal court habeas review. *Jimenez v. Walker,* 458 F.3d 130, 139–40 (2d Cir.2006); *Gregg v. Phillips,* 401 Fed. App'x 590, 592 (2d Cir.2010) (summary order); *Deberry v. Portundo,* 403 F.3d 57, 64 (2d Cir.2005).

#### b. Adequacy

To be deemed adequate, the state procedural rule on which the court's decision was based must be a rule that is "firmly established and regularly

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 1849097 (S.D.N.Y.)
**(Cite as: 2011 WL 1849097 (S.D.N.Y.))**

followed" by the state in question, *Ford v. Georgia,* 498 U.S. 411, 423–24 (1991), and that has not been "misapplied in [the] case in particular." *Cotto v. Herbert,* 331 F.3d 217, 240 (2d Cir.2003) (internal quotation marks and citations omitted); *see also Garraway v. Phillips,* 591 F.3d 72, 75 (2d Cir.2010); *Garvey v. Duncan,* 485 F.3d 709, 714 (2d Cir.2007).

In certain limited circumstances, however, even state rules that are firmly established and regularly followed will not foreclose review of a federal claim. This occurs where the particular application of the rule is "exorbitant." *Lee v. Kemna,* 534 U.S. 362, 376 (2002). The Supreme Court in *Lee* determined that the application of a firmly established and regularly followed state procedural rule would be exorbitant based on three considerations. *Id.* at 381. The Second Circuit adopted and summarized these considerations as a three-part test in *Cotto v. Herbert,* 331 F.3d at 240. These three considerations are not a dispositive test for determining adequacy, but serve as guidelines in evaluating "the state interest in a procedural rule against the circumstances of a particular case." *Garvey,* 485 F.3d at 714 (citing *Lee,* 534 U.S. at 381–85). The three factors are as follows:

(1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state case law indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule given "the realities of trial," and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

**\*6** *Cotto,* 331 F.3d at 240.

**c. Cause, Prejudice, and Miscarriage of Justice**

A petitioner who has procedurally defaulted is not entitled to habeas review of his claim unless he can demonstrate either (1) cause for the default and

actual prejudice, or (2) that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman,* 501 U.S. at 749–50. To show cause, a petitioner must demonstrate that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). A petitioner suffers actual prejudice when the outcome of the case would likely have been different but for the alleged constitutional violation. *See Reed v. Ross,* 468 U.S. 1, 12 (1984); *Collins v. Artus,* No. 08 Civ.1936(PKC)(JCF), 2009 WL 2633636, at \*8 (S.D.N.Y. Aug. 26, 2009); *Garbutt v. Conway,* No. 05 Civ. 9898(SHS), 2008 WL 3842967, at \*9 (S.D.N.Y. Aug. 18, 2008). Even absent a showing of cause and prejudice, a petitioner's claim may be entitled to habeas review if he can show that denying review would result in a "fundamental miscarriage of justice;" in such instances, a court may grant relief only in the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 495–96. To be credible, a claim of actual innocence must be supported by "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo,* 513 U.S. 298, 324 (1995); *see also Jones v. Armstrong,* 367 F. App'x 256, 259 (2d Cir.2010) (summary order).

**4. Interpretation of *Pro Se* Submissions**

Finally, Thomas is proceeding *pro se,* and therefore his submissions " 'must be held to less stringent standards than formal pleadings drafted by lawyers.' " *Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185, 191 (2d Cir.2008) (quoting *Erickson v. Pardus,* 551 U.S. 89, 94 (2007)); *see also Seidemann v. Bowen,* 584 F.3d 104, 118 (2d. Cir.2009). Additionally, the Court must liberally construe the pleadings and interpret them " 'to raise the strongest arguments that they suggest.' " *Diaz v. United States,* 517 F.3d 608, 613 (2d Cir.2008) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Cir.1994)). *Pro se* status, however, "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983) (citation and internal quotation marks omitted).

**B. Discussion**

**1. Thomas' Jurisdictional Claim**

Thomas claims that the trial court lost jurisdiction to resentence him because he was resentenced more than three years after his original sentencing. Pet. Ex. A, at 12. Respondent contends that Thomas' jurisdictional claim should be denied as unexhausted but deemed exhausted and procedurally barred from habeas review. Resp't's Mem. at 9–11. I agree.

**\*7** Thomas did not "fairly present" the federal nature of his jurisdictional claim to the state courts. Rather, Thomas argued that the trial court lost jurisdiction to resentence him because "[u]nder CPL § 380.30(1), sentences must be pronounced without unreasonable delay" and "[w]hen such a delay occurs, the court may lose jurisdiction to sentence a defendant." Pet. Ex. A, at 12 (citations omitted). "A prisoner has not fairly presented a federal claim before a state court if the federal claim is not mentioned in the prisoner's state court brief." *Richardson,* 621 F.3d at 201 (citing *Baldwin,* 541 U.S. at 29). That is exactly the circumstance here. Accordingly, Thomas' jurisdictional claim is unexhausted.

However, if Thomas were to return to state court to attempt to exhaust his jurisdictional claim, he would find his claim procedurally barred under New York procedural rules. New York permits only one application for direct review, N.Y. Court Rules § 500.20(a)(2) —which Thomas has already made—and having failed to raise the claim on direct appeal, Thomas may not seek collateral relief in state court.[FN2] N.Y. Crim Proc. L. ("C.P.L.") § 440.10(2)(c). Accordingly, in these circumstances the claim is deemed to be exhausted but procedurally defaulted. *See, e.g., Richardson,* 621 F.3d at

201: *Aparicio,* 269 F.3d at 90 (citing *Reyes v. Keane,* 118 F.3d 136, 139 (2d Cir.1997)); *see also Calderon v. Perez,* No. 10 Civ. 2562(GBD)(AJP), 2011 WL 293709, at \* 19 (S.D.N.Y. Jan. 28, 2011) ("[I]f it is clear that the state court would hold the claim procedurally barred ..., such procedurally barred claims are 'deemed exhausted' by the federal courts.") (internal citations omitted). Additionally, for the reasons set forth in Part II.B.2(b), *infra.* Thomas is unable to overcome this procedural default through a showing of cause and prejudice, or a fundamental miscarriage of justice.

>    FN2. N.Y. Court Rules § 500.20(a)(2) provides in relevant part that "only one application is available [for leave to appeal to the Court of Appeals in a criminal case]."

Respondent further contends that Thomas' jurisdictional claim must be barred as not cognizable on habeas review because in making the claim Thomas does not allege a violation of his federal constitutional rights. Resp't's Mem. at 22. In fact, Respondent argues, Thomas does not even allege a violation of New York state law. *Id.* I agree.

The Supreme Court has "stated many times that 'federal habeas corpus relief does not lie for errors of state law.' " *Swarthout v. Cooke,* 131 S.Ct. 859, 861 (2011) (quoting *Estelle v. McGuire,* 502 U.S. 62, 67 (1991)). "[I]t is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts." *Wilson v. Corcoran,* 131 S.Ct. 13, 16 (2010). Thomas fails to allege how the trial court's purported loss of jurisdiction violated federal law. Accordingly, his claim should not be reviewed by this Court for this reason as well.

Furthermore, Thomas has failed to establish that the delay in resentencing violated state law. Under C.P.L. § 380.30(1), a defendant must be sentenced " 'without unreasonable delay,' and 'unless excused [the delay] result[s] in a loss of jurisdiction requiring dismissal of the indictment.' " *People v. Hatzman,* 637 N.Y.S.2d 866, 868 (4th Dept.1996)

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 1849097 (S.D.N.Y.)
**(Cite as: 2011 WL 1849097 (S.D.N.Y.))**

(quoting *People v. Drake,* 61 N.Y.2d. 359, 367 (1984)). "However, unlike delays between conviction and initial sentencing, there is no presumption of prejudice, so 'a defendant must demonstrate prejudice resulting from the delay between sentencing and resentencing.' " *People v. Thompson,* 880 N.Y.S.2d 875, *8 (quoting *Hatzman,* 637 N.Y.S.2d at 869). The Appellate Division has concluded that a petitioner's "right to be sentenced without unreasonable delay [is] not violated by the elapse of three years between the original sentence and resentencing." *People v. Smith,* 717 N.Y.S.2d 66, 66 (1st Dept.2000) (citations omitted). Additionally, Thomas does not demonstrate any prejudice resulting from the delay, nor could he as the resentencing involved his *post-release* supervision. Therefore, Thomas fails to allege that the delay in his resentencing violated New York state law—let alone federal law.

**\*8** Accordingly, for all these reasons, Thomas' jurisdictional claim should be denied.

## 2. Thomas' Due Process and Double Jeopardy Claims

Thomas contends that the imposition of a period of PRS after his sentencing violated his constitutional rights to due process and to be free from double jeopardy.[FN3] Pet. Ex. A, at 5. The Appellate Division concluded that Thomas' challenges to his resentencing were unpreserved. *Thomas,* 881 N.Y.S.2d at 291. The court declined to review these contentions in the interest of justice, adding that even if it were to review the claims, it would find them meritless. *Id.* Accordingly, Respondent argues that Thomas' constitutional claims are barred from habeas review by an independent and adequate state law ground. Resp't's Mem. at 14–18. I agree.

> FN3. Respondent concedes that Thomas has exhausted his due process and double jeopardy claims. Resp't's Mem. at 9.

### a. Independent and Adequate State Law Grounds

New York Criminal Procedure Law § 470,05 preserves for review " 'only those questions of law

as to which 'a protest ... was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same.' " *Garcia v. Lewis,* 188 F.3d 71, 78 (2d Cir.1999) (quoting C.P.L. § 470.05). The Second Circuit has consistently recognized § 470.05 as an independent and adequate state procedural bar to habeas review. *See, e.g., Richardson v. Greene,* 497 F.3d 212, 220 (2d Cir.2007) ("New York's preservation rule in criminal proceedings ... is firmly established, regularly followed, and hence adequate for purposes of the independent and adequate state ground doctrine."); *Garvey,* 485 F.3d at 720; *Garcia,* 188 F.3d at 79 ("[W]e have observed and deferred to New York's consistent application of its contemporaneous objection rules.") (citing *Bossett v. Walker* 41 F.3d 825, 829 n.2 (2d Cir.1994)).

At his June 11, 2008 resentencing proceeding, Thomas failed to raise any of the challenges to the resentencing judgment that he raised in his Appellate Division brief. Accordingly, Thomas' unpreserved constitutional claims are procedurally barred. The remaining question is whether the Appellate Division's application of the rule to the Thomas' case was reasonable, and not "exorbitant ." *See Garvey,* 485 F.3d at 718. This requires an analysis of the *Cotto* factors.

Regarding the first *Cotto* factor, the question of whether the trial judge "actually relied on" the procedural default "is less applicable in this case because the lack of a contemporaneous objection would not, almost by definition, be mentioned by the trial court." *Cotto,* 331 F.3d at 242; *see also Clark v. Perez,* 510 F.3d 382, 391 n.4 (2d Cir.2008) ("The first guidepost has no bearing here because the failure altogether to raise an issue cannot be 'actually relied on' because no court has been notified that the issue even exists."). Moreover, "consideration of 'whether perfect compliance would have changed the outcome, is less relevant in evaluating the failure to preserve a claim.' " *Matos v. Ercole,* No. 08 Civ. 8814(LBS), 2010 WL

Not Reported in F.Supp.2d, 2011 WL 1849097 (S.D.N.Y.)
**(Cite as: 2011 WL 1849097 (S.D.N.Y.))**

2720001, at *6 (S.D.N.Y. June 28, 2010) (quoting *Stewart v. Greene,* No. 05 Civ. 0566(WHP) (THK), 2009 WL 4030833, at *15 (S.D.N.Y. Nov. 19, 2009)). As noted by the Second Circuit in *Cotto,* "the likely impact of a timely objection involves a certain degree of speculation." *Cotto,* 331 F.3d at 243; *see also Donaldson v. Ercole,* No. 06–5781–pr, 2009 WL 82716, at *2 (2d Cir. Jan. 14, 2009) (summary order). The first *Cotto* factor therefore does not suggest that application of the rule was exorbitant.

**\*9** Regarding the second *Cotto* factor—whether New York State case law indicated that compliance with the contemporaneous objection rule was demanded in the specific circumstances presented—New York courts consistently require compliance with the contemporaneous objection rule in situations such as this one. *See, e.g., People v. Ebert,* 916 N.Y.S.2d 303, 304 (3d Dept.2011) (failure to object at resentencing proceeding or move to vacate resentence rendered unpreserved claim that defendant was intoxicated at sentencing and unable to comprehend the proceedings); *People v. Rodriguez,* 901 N.Y.S.2d 839, 840 (1st Dept.2010) (failure to object at resentencing rendered unpreserved claim that court erred in resentencing defendant without first offering him option of withdrawing plea); *People v. Afrika,* 879 N.Y.S.2d 758, 758 (4th Dept.2009) (defendant's claim that prosecutors failed to refile second violent felony offender statement unpreserved for failure to raise issue at resentencing). This factor therefore does not suggest that the application of the rule was exorbitant.

Regarding the final *Cotto* factor—whether Thomas substantially complied with the contemporaneous objection rule and whether demanding perfect compliance with the rule would serve a legitimate governmental interest—Thomas did not substantially comply with the rule (indeed, he did not comply at all). The Second Circuit has also recognized that demanding compliance with C.P.L. § 470.05 serves a legitimate governmental in-

terest—"the interest in allowing the trial court to have the first opportunity to rule on and possibly rectify any alleged legal error." *Garvey,* 485 F.3d at 720.

The transcript from Thomas' resentencing proceeding contains no objection to the resentencing on the grounds of a double jeopardy or due process violation. Although Thomas did contend during the proceeding that his conviction was based on "false accusation[s]" and that the trial court coerced him into entering the plea with threats of lengthy prison time, the trial court construed his comment as a motion to withdraw his plea and denied it. La Ferlita Decl. Ex. K, at 4–6. The trial court, therefore, did not have an opportunity to rule on the constitutional claims now raised and did not have the "first opportunity to rule on and possibly rectify any alleged legal error." *Garvey,* 485 F.3d at 720. Accordingly, the third *Cotto* factor does not suggest that the Appellate Division's application of the rule was exorbitant.

Taken together, the *Cotto* factors do not suggest that the application of the contemporaneous objection rule was exorbitant here. Because the Appellate Division's decision was based on a ground independent of any federal question and adequate under firmly established and regularly followed state law, Thomas' claims that the trial court's resentencing violated his constitutional rights are procedurally barred.

**b. Cause and Prejudice, or Fundamental Miscarriage of Justice**

**\*10** Thomas cannot overcome the procedural bar because he has not established cause for his default. "[T]he cause standard requires the petitioner to show that 'some objective factor external to the defense impeded counsel's efforts' to raise the claim in state court ." *McClesky v. Zant,* 499 U.S. 467, 493 (1991) (quoting *Murray,* 477 U.S. at 488); *accord Bloomer v. United States,* 162 F.3d 187, 191 (2d Cir.1998). Thomas has identified no such objective factor external to the defense. Because Thomas has not demonstrated cause for his proced-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

ural default, the Court need not address the issue of prejudice. See *McCleskey,* 499 U.S. at 502.

Finally, Thomas makes no showing that failure to consider the claims would result in a fundamental miscarriage of justice. Though Thomas claims that he is actually innocent of the crimes to which he pleaded guilty, Thomas offers no new reliable evidence of his innocence. Pet'r's Reply at 2. Instead, he merely attaches a letter written by him to the Center for Appellate Litigation, which provides an alternate rendition of the events leading to his arrest along with documents submitted in connection with a prior excessive force claim brought by him against police officers.[FN4] *Id.* at Exs. B, C. Accordingly, Thomas is unable to overcome the procedural bar to his claims that the trial court's resentencing violated his constitutional rights. *See Schlup,* 513 U.S. at 324.

> FN4. Thomas filed an excessive force action under the Civil Rights Act, 42 U.S.C. § 1983, against his arresting officer and others in the Southern District of New York on July 21, 2006, which was resolved in a Stipulation and Order of Settlement and Discontinuance. *Thomas v. Kelly,* No. 06 Civ. 5546(RJH)(RLE) (S.D.N.Y. filed July 11, 2007).

**c. Thomas' Claims Are Moot**

Even if Thomas' claims are not procedurally barred, they should be dismissed as moot. The Second Circuit, in *Earley v. Murray,* concluded that a five year PRS term could only be imposed on a prisoner by the trial judge at a sentencing proceeding. 451 F.3d 71, 75–77 (2d Cir.2006). However, the Circuit went on to note expressly that though the prisoner was entitled to have the five year PRS term vacated, the Circuit was "granting this relief without prejudice to the state's right to move 'in the New York courts to modify [petitioner's] sentence to include the mandatory [post-release supervision term].' " *Sullivan v. New York State Dept. of Corr. Servs.,* No. 07 Civ. 7177(SHS)(FM), 2008 WL 4493602, at *7 (S.D.N.Y. Aug. 14, 2008) (quoting

*Earley,* 451 F.3d at 77). Indeed, Thomas' Court of Appeals decision concluded that the "sole remedy" for a procedural error such as the one here is to "vacate the sentence and remit for a resentencing hearing so that the trial judge can make the required pronouncement." *Sparber,* 859 N.Y.S.2d at 588.

Therefore, the only habeas relief available to incarcerated petitioners challenging the administrative imposition of a PRS term is to be resentenced by the trial judge—an action that has already taken place here. *See, e.g., Edwards v. People of State of N.Y.,* No. 08 Civ. 0112(RJS)(JCF), 2009 WL 4016412, at *2 (S.D.N.Y Nov. 18, 2009) (adopting Report & Recommendation dismissing petition as moot because petitioner already resentenced by trial judge); *Escalante v. Brown,* No. 08 Civ.2040(JS), 2009 WL 3075311, at *1 (E.D.N.Y. Sept. 21, 2009) (explaining that court had previously dismissed PRS claims as moot "because the procedurally infirm term of [PRS] had been lifted, the matter was remitted to the trial court, and the trial court properly resentenced Petitioner to a PRS term"); *see also Jenkins v. Farrell,* No. 07 Civ. 6937(BSJ)(FM), 2009 WL 1616008, at *3 (S.D.N.Y. June 9, 2009) (granting petition "would not preclude correction of [Petitioner's] sentence and ... would have no practical effect"); *Sullivan,* 2008 WL 4493602, at *8 (same).

**\*11** Accordingly, even if Thomas' claims were not procedurally barred, they should be dismissed as moot because Thomas has already received the only relief available to him on habeas review.

**d. Thomas' Claims Fail On The Merits**

Finally, even if the Court chooses to reach the merits of Thomas' claims, it should dismiss them. Thomas complains that his resentencing amounts to double jeopardy and therefore violates his due process rights because he had served almost four years of his sentence at the time of the resentencing and thus had a legitimate expectation of finality in the pronounced 15–year sentence. Pet. Ex. A, at 5, 12. Respondent argues that the resentencing merely corrected the originally pronounced sentence,

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

which was illegal because it did not contain the five year PRS term, and thus does not amount to double jeopardy. Resp't's Mem. at 19–20. I agree.

There is no clearly established federal law that would have barred Thomas' resentencing. In fact, the Supreme Court has made clear that the double jeopardy clause of the Fifth Amendment does not bar the resentencing of an individual in circumstances such as those presented here. *See United States v. DiFrancesco,* 449 U.S. 117, 136 (1980) ("The double jeopardy considerations that bar reprosecution after an acquittal do not prohibit review of a sentence."); *see also Bozza v. United States,* 330 U.S. 160, 166–67 (1947) (resentencing to include statutorily required fines accidentally omitted was not double jeopardy because "[t]he Constitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner"). Here, Thomas' original sentence was inadequate under New York law, and Thomas was therefore resentenced to the additional five years of PSR to correct the error in his original sentencing. Since such a resentencing does not constitute double jeopardy or a violation of due process, Thomas' claim should be dismissed on the merits as well. *See, e.g., Jenkins v. Farrell,* No. 07 Civ. 6937(BSJ)(FM), 2009 WL 1616008, at *3 (S.D.N.Y. June 9, 2009) (citing *United States v. Rosario,* 286 F.3d 166, 170 (2d Cir.2004)); *Shanks v. Greiner.* No. 01 Civ. 1362(DC), 2001 WL 1568815, at *5 (S.D.N.Y. Dec. 10, 2001).

### 3. Thomas' Discovery Request

Finally, to the extent that Thomas seeks discovery of Officer Rosario's medical records "because [he] would like to vindicate [his] name from the police attempted assault charge[s]," the request for discovery should be denied. Pet'r's Reply at 3.

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley,* 520 U.S. 899, 904 (1997). Instead, Rule 6(a) of the Rules Governing Section 2254 Cases provides that "[a] judge may, for good cause, authorize a party to

conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery." 28 U.S.C. § 2254 Rule 6(a). A petitioner satisfies this "good cause" standard when " 'specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is ... entitled to relief.' " *Bracy,* 520 U.S. at 908–09 (quoting *Harris v. Nelson,* 394 U.S. 286, 300 (1969)). Moreover, "[a] court may deny a petitioner's request for discovery 'where the petitioner provides no specific evidence that the requested discovery would support his habeas corpus petition.' " *Ruine v. Walsh,* No. 00 Civ. 3798(RWS), 2005 WL 1668855, at *6 (S.D.N.Y. July 14, 2005) (quoting *Hirschfeld v. Comm'r of the Div. of Parole,* 215 F.R.D. 464, 465 (S.D.N.Y.2003)).

**\*12** Thomas provides no evidence—let alone specific evidence—that these medical records would support his Petition. Thomas therefore has failed to establish the requisite good cause warranting the discovery of such information here. Accordingly, Thomas' request for discovery should be denied.

### III. CONCLUSION

For the foregoing reasons, I recommend that Thomas' petition for a writ of habeas corpus and request for discovery be DENIED. Further, I recommend that the Court decline to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(1)(A) , because Thomas has failed to make "a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2); *see generally United States v. Perez,* 129 F.3d 255, 259–60 (2d Cir.1997).

### PROCEDURES FOR FILING OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections, and any responses to such objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Barbara S. Jones and to the

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 1849097 (S.D.N.Y.)
**(Cite as: 2011 WL 1849097 (S.D.N.Y.))**

chambers of the undersigned, United States Court-house, 500 Pearl Street, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Jones. **FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRE-CLUDE APPELLATE REVIEW.** *See Thomas v. Arn,* 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.,* 596 F.3d 84, 92 (2d Cir.2010) (citing *Cephas v. Nash,* 328 F.3d 98, 107 (2d Cir.2003) and *Mario v. P & C Food Mkts., Inc.,* 313 F.3d 758, 766 (2d Cir.2002)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72. If Petitioner does not have access to cases cited herein that are reported on LexisNex-is or Westlaw, he should request copies from Re-spondent's counsel. *See Lebron v. Sanders,* 557 F.3d 76, 79 (2d Cir.2009).

S.D.N.Y.,2011.
Thomas v. Heath
Not Reported in F.Supp.2d, 2011 WL 1849097 (S.D.N.Y.)

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 911889 (N.D.N.Y.)
**(Cite as: 2007 WL 911889 (N.D.N.Y.))**



Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
David JENKINS, Petitioner,
v.
David M. UNGER, Superintendent, Respondent.

No. 9:03-CV-1172 (LEK/DRH).
March 22, 2007.

David Jenkins, Sonyea, NY, Petitioner Pro Se.

Hon. Andrew M. Cuomo, Attorney General for the State of New York, Maria Moran, Esq., Assistant Attorney General, of counsel, Syracuse, NY.

### *DECISION AND ORDER*
LAWRENCE E. KAHN, U.S. District Judge.

**\*1** This matter comes before the Court following a Report-Recommendation filed on February 15, 2007 by the Honorable David R. Homer, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b) and L.R. 72.4 of the Northern District of New York. Report-Rec. (Dkt. No. 50). After ten days from the service thereof, the Clerk has sent the entire file to the undersigned, including the objections by Petitioner David Jenkins ("Petitioner"), which were filed on March 1, 2007. Objections (Dkt. No. 51).

It is the duty of this Court to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b). "A [district] judge ... may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* This Court has considered the objections and has undertaken a de novo review of the record and has determined that the Report-Recommendation should be approved for the reasons stated therein.

Accordingly, it is hereby

**ORDERED,** that the Report-Recommendation (Dkt. No. 50) is **APPROVED** and **ADOPTED** in its **ENTIRETY;** and it is further

**ORDERED,** that Petitioner's Petition for a writ of habeas corpus (Dkt. No. 1) is **DENIED;** and it is further

**ORDERED,** that the Clerk serve a copy of this Order on all parties.

**IT IS SO ORDERED.**

**REPORT-RECOMMENDATION AND ORDER**FN1

> **FN1.** This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.4.

DAVID R. HOMER, U.S. Magistrate Judge.

Petitioner pro se David Jenkins ("Jenkins") is currently an inmate in the custody of the New York State Department of Correctional Services ("DOCS") at Groveland Correctional Facility. Jenkins was found guilty on August 30, 2000 of one count each of sexual abuse in the first degree and attempted sodomy in the first degree after a non-jury trial in St. Lawrence County. Jenkins was adjudicated a second felony offender and was sentenced to concurrent determinate terms of imprisonment, the maximum of which is nine years. Jenkins now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the grounds that (1) there was insufficient evidence to support his conviction, (2) the prosecutor engaged in misconduct, (3) the verdict was repugnant, and (4) he was denied the effective assistance of trial counsel. For the reasons which follow, it is recommended that the second amended petition be denied.FN2

> **FN2.** Jenkins' original petition was dis-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 911889 (N.D.N.Y.)
**(Cite as: 2007 WL 911889 (N.D.N.Y.))**

missed with leave to file an amended peti-
tion for failure to provide a coherent set of
facts to support his claims. Docket No. 5.
Jenkins thereafter filed his first amended
petition, and memorandum of law in sup-
port thereof, alleging (1) the evidence was
insufficient to support the verdict, (2) cer-
tain prosecutorial misconduct denied him a
fair trial, (3) the verdict was repugnant and
(4) he was denied effective assistance of
counsel. Docket Nos. 6, 10. After a re-
sponse was filed, the action was stayed so
that Jenkins could exhaust additional inef-
fective assistance of counsel claims in state
court. Docket No. 19. Upon removal of the
stay, Jenkins filed a motion to amend his
first amended petition to allege, in addition
to his original four claims, additional inef-
fective assistance of counsel claims as well
as allegations of (1) harsh and excessive
sentence, (2) improper and prejudicial con-
duct not appearing on the record, (3) newly
discovered evidence, and (4) mental dis-
ease or defect. Docket Nos. 32, 37. This
Court denied Jenkins' motion to amend as
to the latter four claims but permitted Jen-
kins to enlarge his original ineffective as-
sistance allegations. Docket No. 41 at
9-10, 12. Accordingly, the claims in Jen-
kins' second amended petition subject to
federal habeas review are as listed above.

## I. Background

Beginning on May 30, 1999, investigators from
the New York State Police and the St. Lawrence
Department of Social Services investigated the re-
port of ten-year-old K.G.[FN3] that Jenkins had re-
cently subjected her to sexual contact on at least
one occasion. T. 77-78, 118-19.[FN4] Jenkins resided
with K.G. and her family, which included her moth-
er, Lisa Wells, her siblings, Aaron and Amanda,
and Lisa's boyfriend, Edward "Shaggy" Seror. T.
14-15. Specifically, K.G. informed Seror that while
she watched cartoons in Jenkins' bedroom one night
when the family was asleep, Jenkins touched her

"where he shouldn't have touched me where I go to
the bathroom." T. 60, 105. At trial, K.G. described
the details of the sexual abuse. T. 50-59.

> FN3. Under New York law, "[t]he identity
> of any victim of a sex offense ... shall be
> confidential. No ... court file or other docu-
> ments, in the custody or possession of any
> public officer or employee, which identi-
> fies such a victim shall be made available
> for public inspection." N.Y. Civ. Rights
> Law § 50-b. In light of this provision, the
> victim will be referred to herein as "K.G."
> so as to ensure her privacy. *See Lucidore v.
> New York State Div. of Parole,* 209 F.3d
> 107, 109 n. 4 (2d Cir.2000) (demonstrating
> that substantial compliance with this stat-
> ute is obtained where the court refers to the
> victim by use of initials).

> FN4. "T." followed by a number refers to
> the pages of the trial transcript included
> with respondent's answer. Docket No. 47,
> Ex. 1.

**\*2** Based on the child's allegations, investigat-
ors located Jenkins and requested that he accom-
pany them for questioning. T. 82-84. Jenkins was
questioned by a New York State trooper and
provided a written statement wherein he admitted to
"cuddling" and "laying" with the children on his
bed. RA. 88a-90a.[FN5] However, Jenkins denied
molesting K.G. *See id.; see also* T. 141-42.

> FN5. "RA." followed by a number refers to
> the pages of the record on appeal included
> with respondent's answer. Docket No. 47,
> Ex. 3.

On December 16, 1999, Jenkins was indicted
and subsequently arrested. RA. 21 a-24a. Upon
consulting with his defense counsel, Jenkins waived
his right to a jury trial. T. 2-4. After a bench trial,
Jenkins was found not guilty of sodomy in the first
degree and guilty of the charges referenced *supra.*
T. 162-63. He was sentenced as indicated above.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

ST. 6.[FN6] On December 12, 2002, the Appellate Division unanimously affirmed the convictions and sentence. *People v. Jenkins,* 751 N.Y.S.2d 648, 650-51 (3d Dep't 2002).[FN7] Application for leave to appeal to the New York Court of Appeals was denied on February 26, 2003. *People v. Jenkins,* 787 N.E.2d 1172 (N.Y.2003). Jenkins also filed a motion to vacate his sentence, which was denied on September 29, 2005. *See* Docket No. 47, Exs. 10-17. Application for leave to appeal that decision was denied on November 29, 2005. *See id.* This action followed.

> FN6. "ST." followed by a number refers to the pages of the transcript of Jenkins' sentencing included with respondent's answer. Docket No. 47, Ex. 2.

> FN7. Although the Appellate Division affirmed the terms of Jenkins' commitment, that court vacated the sentence and remitted the matter to County Court for resentencing due to a discrepancy between the sentencing minutes and the Sentence and Commitment Statement of Conviction form filed in County Court. *Jenkins,* 751 N.Y.S.2d at 651. On remand, the County Court reiterated that Jenkins was properly sentenced to determinate terms of seven and nine years but ordered a corrected commitment order filed with the Department of Corrections in accordance with the Appellate Division's decision. Docket No. 47, Ex. 9.

## II. Discussion
### A. Standard of Review under the AEDPA

To succeed on habeas review under the deferential standards of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a petitioner must demonstrate that a state court adjudicated the claim on the merits, as opposed to on a procedural or other ground, and that adjudication was (1) contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court, or (2) resulted in a decision based on

an unreasonable determination of the facts in light of the evidence presented to the state court. *See* 28 U.S.C. § 2254(d)(1)-(2); *see also Hines v. Miller,* 318 F.3d 157, 160 (2d Cir.2003) (citing *Sellan v. Kuhlman,* 261 F.3d 303, 312 (2d Cir.2001)).

### B. Insufficiency of Evidence

Jenkins contends that the evidence supporting his convictions for sexual abuse in the first degree and attempted sodomy in the first degree was legally insufficient. *See* Docket No. 42.

A petitioner who claims that the evidence was not sufficient to sustain a conviction bears a very heavy burden. *United States v. Pierce,* 224 F.3d 158, 164 (2d Cir.2000). The Second Circuit has maintained that the weight of the evidence and the credibility of the witnesses are determinations for the factfinder and are not grounds for reversal. *See United States v. Vasquez,* 267 F.3d 79, 91 (2d Cir.2001). "[T]he critical inquiry on review of the sufficiency of the evidence ... [is] to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 318 (1979). This inquiry asks a court to determine if, "after viewing the evidence in the light most favorable to the prosecution, ... *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis in original); *see also Fama v. Comm'r of Corr. Servs.,* 235 F.3d 804, 811 (2d Cir.2000). When considering the sufficiency of the evidence of a state conviction, the habeas court must examine the substantive state law elements of the criminal offense. *Fama,* 235 F.3d at 811; *see also Jackson,* 443 U.S. at 324 n. 16.

**\*3** New York Penal Law § 130.65(3) provides that a person is guilty of sexual abuse in the first degree when he subjects another person who is less than eleven years old to sexual contact. "Sexual contact" is defined as

> any touching of the sexual or other intimate parts of a person not married to the actor for the pur-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

pose of gratifying sexual desire of either party. It includes the touching of the actor by the victim, as well as the touching of the victim by the actor, whether directly or through clothing.

N.Y. Penal Law § 130.00(3). In addition, the former sodomy statute provides that a person is guilty of sodomy in the first degree when he engages in deviate sexual intercourse with another person who is less than eleven years old. N.Y. Penal Law § 130.50(3) (2000).[FN8] "Deviate sexual intercourse" was defined as "sexual conduct between persons not married to each other consisting of contact between the penis and the anus, the mouth and penis, or the mouth and the vulva." N.Y. Penal Law § 130.00(2)(2000).[FN9] A person is guilty of attempt to commit a crime "when, with intent to commit a crime, he engages in conduct which tends to effect the commission of the crime." N.Y. Penal Law § 110.00.

> FN8. Effective November 1, 2003, section 130.50 of New York's Penal Law was amended to define the crime of "criminal sexual act in the first degree," which provides, in relevant part, that "[a] person is guilty of criminal sexual act in the first degree when he or she engages in oral sexual conduct or anal sexual conduct with another person ... [w]ho is less than eleven years old...." N.Y. Penal Law § 130.50(3).

> FN9. Effective November 1, 2003, section 130.00 of New York's Penal Law was amended, in pertinent part, to define "oral sexual conduct" and "anal sexual conduct." N.Y. Penal Law § 130.00(2).

The trial testimony reveals that Jenkins lived in the victim's house from April 10, 1999 until May 30, 1999. T. 15. K.G. testified that her date of birth is March 16, 1989, and that she therefore was ten years old during the time Jenkins resided with her family. See T. 28. Both the victim and Jenkins testified that K.G. and her siblings often watched television in Jenkins' bedroom, where they sat on the bed

with him. T. 40-43, 142-43. K.G. testified that one night while her family was asleep, she was laying on Jenkins' bed facing the television and Jenkins was behind her. T. 51-52. She heard Jenkins sit up in bed, and then she heard a box open and paper rattling. T. 52-53. Subsequently, K.G. heard what appeared to be the pop of an elastic waistband on shorts. T. 53. Jenkins then moved closer to her, pulled her pants and underwear down to her ankles, and placed his arms around her stomach. T. 53-54. Jenkins rubbed her breasts as well as her "private." T. 54-55. Thereafter, Jenkins pulled his shorts off and put his "private" next to her "crack." T. 55-56. K.G. testified that she tried to move away from Jenkins, but he "stiffed his arm tighter". T. 56. Jenkins remained behind K.G. and started to move his private up and down between the crack of her buttocks. T. 56-57. K.G. testified that Jenkins then said "ouch" and moved away from her. T. 57. K.G. sat up on the bed and saw a "clear thing, clear paper" around Jenkins' private, and observed "milky stuff on the inside of ... that paper." T. 57-58. At some point after this incident, K.G. told Edward Seror that Jenkins "touched me where he shouldn't have touched me where I go to the bathroom." T. 105.

The record thus establishes that K.G. was less than eleven years old and that Jenkins caused sexual contact between his penis and K.G .'s buttocks. This evidence sufficed to demonstrate the sexual contact and attempted deviate sexual intercourse requirements of the statutes. Presented with this record, the Appellate Division considered and rejected the arguments Jenkins raises here regarding insufficiency of the evidence. *See* Jenkins, 751 N.Y.S.2d at 650.

**\*4** The record clearly demonstrates that the evidence supporting Jenkins' convictions for sexual abuse in the first degree and attempted sodomy in the first degree was sufficient and that the state court's rejection of Jenkins' contention was not unreasonable. Therefore, the second amended petition on this ground should be denied.

### C. Ineffective Assistance of Counsel

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

### 1. Exhaustion

Jenkins contends that his trial counsel failed to elicit various testimony from social worker Melvin Barnes on direct examination. Docket No. 10 at 12. Jenkins further alleges that defense counsel failed reasonably to investigate the existence of telephone records substantiating his claim that K.G. placed a telephone call to him on May 30, 1999. Docket No. 48.FN10 A review of the record reveals that Jenkins has not presented these allegations of ineffective assistance of counsel in the state courts, either in his direct appeal or in his motion to vacate.

> FN10. These claims were raised in Jenkins' memorandum of law in support of his first amended petition and in his traverse in support of his second amended petition, respectively. Docket Nos. 10, 48. The Second Circuit has commanded federal district courts to construe *pro se* submissions liberally and to interpret them "to raise the strongest arguments that they suggest." *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994); *see also Phillips v. Girdich,* 408 F.3d 124, 130 (2d Cir.2005); *Green v. United States,* 260 F.3d 78, 83 (2d Cir.2001); *Williams v. Kullman,* 722 F.2d 1048, 1050-51 (2d Cir.1983); *Bido v. Miller,* No. 00 CV 8462, 2005 WL 1241898, at *1 (S.D.N.Y. May 24, 2005) (citations omitted). Mindful of this directive, the Court will consider these ineffective assistance claims as independent grounds for federal habeas relief.

An application for a writ of habeas corpus may not be considered until a petitioner has exhausted all remedies available in state court. 28 U.S.C. § 2254(b). To satisfy the exhaustion requirement, a petitioner must "fairly present" any constitutional claims to the state courts. *Dorsey v. Kelly,* 112 F.3d 50, 52 (2d Cir.1997) (quoting *Picard v. Connor,* 404 U.S. 270, 275 (1971)). A claim is "fairly presented" if the state courts are apprised of "both the factual and the legal premises of the claim [the

petitioner] asserts in federal court" and are alerted to the constitutional nature of the claim. *Daye v. Attorney Gen. of N.Y.,* 696 F.2d 186, 191-92 (2d Cir.1982). Regarding an ineffective assistance of counsel claim, "[e]ach factual claim made in support ... must be fairly presented to a state court before a federal habeas court may rule upon it." *Panezo v. Portuondo,* No. 02-CV-1522, 2003 WL 23198781, at *10 (E.D.N.Y. Nov. 6, 2003) (citing *Rodriguez v. Hoke,* 928 F.2d 534, 538 (2d Cir.1991)).

Jenkins has failed to present fairly these theories of ineffective assistance to the state courts and, accordingly, these allegations remain unexhausted.FN11 However, under the AEDPA, a federal district court has the authority to deny an unexhausted claim on the merits rather than require exhaustion. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). Where the unexhausted claim is "patently frivolous" or it is "perfectly clear that the petitioner does not raise even a colorable federal claim," the claim is subject to denial. *Russell,* 2006 WL 1555468, at *16 (quotations omitted). In the present petition, the above ineffective assistance of counsel claims fail either standard as they are both patently frivolous and entirely meritless.

> FN11. Although respondent does not argue that the Court cannot consider these claims due to Jenkins' failure to exhaust, the Court notes that the habeas corpus statute provides that a state's failure to raise exhaustion as a defense to a charge does not operate as a waiver of such defense. *See* 28 U.S.C. § 2254(b)(3) ("A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement."). As such, federal district courts may *sua sponte* address a petition-

er's failure to exhaust a claim in the absence of the respondent's express waiver. *See Lurie v. Wittner,* 228 F.3d 113, 123 (2d Cir .2000); *Russell v. Ricks,* No. 02 CV 0940, 2006 WL 1555468, at *15 (N.D.N.Y. May 31, 2006) (Kahn, J. & Peebles, M.J.).

To establish ineffective assistance of counsel as guaranteed by the Sixth Amendment, a petitioner must demonstrate that counsel's performance was deficient and that this deficiency prejudiced the petitioner's defense. *United States v. DeJesus,* 219 F.3d 117, 121 (2d Cir.2000) (citing *Strickland v. Washington,* 466 U.S. 668, 687 (1984)). A petitioner must establish that counsel's errors were so serious that the petitioner was deprived of a fair trial and there was a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different. *Strickland,* 466 U.S. at 686.

**\*5** The proper measure of attorney performance is an objective standard of reasonableness in the totality of the circumstances under prevailing professional norms. *Id.* at 688; *Purdy v. United States,* 208 F.3d 41, 44 (2d Cir.2000). Strategic choices made after investigation of the relevant law and facts are normally not subject to challenge and the reviewing court must be "highly deferential" to counsel's performance. *Strickland,* 466 U.S. at 689.

Here, Jenkins contends that his counsel failed to elicit testimony from Barnes regarding his conversations with Amanda, K.G.'s seven-year-old sister, about other incidents of alleged abuse by Jenkins against K.G. Specifically, while K.G. indicated that Amanda informed her that she witnessed Jenkins touch K.G. while K.G. slept in her bed, Amanda denied witnessing such incidents when speaking with Barnes. *See* RA. 80a-87a; *see also* T.61-62. A review of the record indicates that such testimony was, at best, of minimal relevance to the incident of sexual abuse at issue at trial. T. 61-62, 122-26. Amanda's statements to Barnes were collateral to the incident of abuse that formed the basis of Jen-

kins' indictment and testified to by K.G. at trial. Moreover, the social worker's discussions with Amanda likely constituted inadmissible hearsay. Counsel's decision not to explore such testimony was sound trial strategy, which may not be second-guessed on habeas review. *See United States v. Helgesen,* 669 F.2d 69, 72 (2d Cir.1982).

Jenkins further cites to his attorney's failure to seek telephone records which would have supported his contention that K.G. had been threatened by Edward Seror and her mother after telephoning Jenkins to pick her up. *See* Docket No. 47, Ex. 12 at 4. However, Jenkins admitted that he was unable to assist his trial lawyer in providing the necessary information for use at trial because he could not remember the details of the telephone call due to his alleged memory loss. Docket No. 47, Ex. 11 at 4, 6. As such, the records would have been useless to Jenkins' defense, and he cannot now fault his attorney for his alleged failure to procure them.

These unexhausted claims of ineffective assistance of counsel, therefore, are patently frivolous, entirely meritless, and should be denied.

### 2. Merits
#### a. Claims Raised on Direct Appeal
Jenkins also contends, as he did on direct appeal, that his defense counsel improperly called Seror as a defense witness because Seror's testimony served only to corroborate K.G.'s allegations. *See* Docket No. 10 at 11; *see also* Docket No. 47, Ex. 4 at 38-42. Respondent argues that this contention is meritless. Docket No. 47, Mem. of Law at 13-14. The Appellate Division rejected Jenkins' claim that his trial counsel improperly called Seror as a defense witness, holding that:

[I]t appears that the witness was called to show that he had a motive to fabricate the allegations, a tactic which was part of the overall defense strategy, namely, to portray the People's evidence as unreliable. Losing trial tactics or strategy ... do not rise to the level of ineffectiveness. Viewing the evidence, the law and the circumstances of

this case in their totality, we find that defendant received "meaningful representation."

**\*6** *Jenkins,* 751 N.Y.S.2d at 651 (internal quotations and citations omitted).

Significantly, state court findings on matters related to counsel's strategic choices are conclusive on the court reviewing the habeas petition if supported in the record. *See* 28 U.S.C. § 2254(d); *see also Sumner v. Mata,* 455 U.S. 591, 592 (1982). At trial, Seror testified that he had a prior disagreement with Jenkins regarding Jenkins spending time with the victim's mother, who was Seror's girlfriend. T. 101. Counsel evidently weighed the benefit of this testimony, which established a motive for Seror to fabricate the abuse allegations, with the possibility of eliciting additional testimony tending to favor the prosecution. As mentioned above, such strategic decisions may not be disturbed on habeas review. *Helgesen,* 669 F.2d at 72 (discussing the Second Circuit's "reluctance to second-guess matters of trial strategy simply because the chosen strategy has failed"). Counsel's decision to call Seror clearly was not unreasonable under *Strickland.* [FN12] The Appellate Division's findings are plainly supported by the record and, as such, this allegation of ineffective assistance of counsel lacks merit.

> FN12. The Supreme Court has declared that "the rule set forth in *Strickland* qualifies as 'clearly established Federal law [.]' " *Williams v. Taylor,* 529 U.S. 362, 391 (2000).

Therefore, the second amended petition as to this ineffective assistance of counsel claim should be denied.

### b. Claims Raised in Motion to Vacate

Jenkins further alleges, as he did in his motion to vacate pursuant to New York Criminal Procedure Law ("CPL") § 440.10, that his trial counsel failed to: (1) raise alleged threats made by Lisa Wells and Seror against potential witnesses; (2) to call neighbor Dale Gilbo as a witness; (3) have Seror de-

clared hostile and to question him regarding K.G.'s alleged May 30, 1999 telephone call to Jenkins; (4) raise a conspiracy defense; (5) impeach Wells regarding the layout of the apartment; (6) hire an expert to testify about misattribution; (7) elicited that Jenkins suffered from carpal tunnel syndrome and therefore could not perpetrate the alleged sexual acts on the victim; (8) assert that Wells and Seror were drug dealers; (9) preserve the claim of repugnant verdict for appellate review; and (10) preserve the claim of prosecutorial misconduct for appellate review. [FN13] Respondent submits that these allegations are time-barred because they do not sufficiently relate back to Jenkins' first amended petition and, in any event, are meritless. Docket No. 47, Mem. of Law at 14-16. [FN14]

> FN13. These ten claims were raised for the first time in Jenkins' motion to amend his first amended petition. Docket No. 32. This Court granted Jenkins' motion to amend with respect to his supplemental ineffective assistance of counsel claim, and ordered the filing of Jenkins' proposed amended petition as the second amended petition in this action. Docket No. 41 at 9-10, 12. While the Court's order specified that Jenkins could enlarge his original ineffective assistance of counsel claim to include contentions nine and ten listed above, *see id.* at 9-10, the Court will examine all ten allegations herein in the interest of construing *pro se* submissions liberally. *See Burgos,* 14 F.3d at 790; *see also Phillips,* 408 F.3d at 230; *Green,* 260 F.3d at 83.

> FN14. The Court permitted respondent to address both the merits and the timeliness of Jenkins' ineffective assistance of counsel claim in his response to the newly amended petition. Docket No. 41 at 10. However, respondent curiously addresses only claims one through eight, and does not assert any argument as to allegations

Not Reported in F.Supp.2d, 2007 WL 911889 (N.D.N.Y.)
**(Cite as: 2007 WL 911889 (N.D.N.Y.))**

nine and ten.

As a threshold matter, respondent submits that the ineffective assistance of counsel claims raised in Jenkins' 440.10 motion are time-barred because they are untimely and do not sufficiently relate back to the theories of ineffective assistance alleged in Jenkins' first amended petition. Docket No. 47, Mem. of Law at 14-16.[FN15] In his first amended petition, Jenkins alleged ineffective assistance of counsel only as to counsel's error in calling Seror as a defense witness, *see* Docket No. 10 at 11-12, and counsel's failure to elicit certain testimony from Barnes, *see* Docket No. 10 at 12. An amendment relates back to the date of the original pleading when the claim or defense asserted in the amended pleading "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." *Fama*, 235 F.3d at 815 (quoting Fed.R.Civ.P. 15(c)) (internal quotations omitted). In making this determination, the court must find that the original petition "gave the defendant fair notice of the newly alleged claims." *Id.* (citing *Wilson v. Fairchild Republic Co .*, 143 F.3d 733, 738 (2d Cir.1998)). As asserted by the Supreme Court, a habeas claim relates back to a claim filed within the limitations period under Fed.R.Civ.P. 15(c) "[s]o long as the original and amended petitions are tied to a common core of operative facts." *Mayle v. Felix*, 125 S.Ct. 2562, 2574-75 (2005).

FN15. This Court previously determined that the statute of limitations expired with respect to any new claims on May 27, 2004. *See* Docket No. 41 at 3-4.

**\*7** Jenkins' allegations regarding his counsel's failure to preserve prosecutorial misconduct and repugnant verdict claims arising from the same common core of operative facts as his original habeas petition. Although these ineffective assistance claims are based on new theories of relief, they arise from the substantive allegations of prosecutorial misconduct and repugnant verdict raised in his first amended petition. *See Serrano v. Burge,*

No. 03CIV8639, 2005 WL 2063675, at \*4 (S.D.N.Y. Aug. 22, 2005) (Ellis, M.J.) (stating that petitioner's ineffective assistance claim in amended petition related to counsel's failure to raise substantive issues already alleged in original petition), *adopted,* 2005 WL 2170362 (S.D.N.Y. Sept. 8, 2005) (Berman, D.J.). However, since the majority of Jenkins' remaining ineffective assistance claims are wholly unrelated to the original allegations of his first amended petition, it is doubtful that respondent had fair notice of these theories. Nevertheless, the simplest course is to address Jenkins' proposed new claims of ineffective assistance of counsel on the merits. *See, e.g., Fama*, 235 F.3d at 816 ("To simplify this case, we will assume *arguendo* that, pursuant to Rule 15(c), this evidence does relate back to Fama's original petition, and hence the amendment is permissible."); *Williams v. Donnelly*, No. 00-CV-4445, 2005 WL 2290592, at \*29 (E.D.N.Y. Apr. 12, 2005) (Mann, M.J.) ("[T]he simplest and wisest course is to slice through the tangles in a different direction.") (citation omitted), *adopted,* No. 00-4445, Docket No. 26 (E.D.N.Y. Sept. 16, 2005) (Trager, J.).

The County Court rejected the above ineffective assistance of counsel claims on the merits, finding that:

While it is true that some of the assertions made here are beyond those that appear directly in the record, and therefore may not have been reachable on direct appeal, they are also highly speculative. Primarily they take the form of criticizing unsuccessful trial tactics after an adverse result. As the appellate courts have repeatedly held, losing tactics are not per se indicative of the ineffective assistance of counsel.

Defense counsel has asked for a hearing in order to develop the record and facilitate decision on the issues raised. Yet there are already substantial assertions of fact which are not contested. The questions presented here are questions of law. The court is not in need of taking proof in order to determine what happened or was said or done;

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

rather, the parties disagree about what those events or facts mean. On each of the grounds raised, the court finds that defendant has failed to come forward with any proof of more than his own assertions, and these are not sufficient to undermine the validity of his conviction.

Docket No. 47, Ex. 17.

This Court agrees that contentions one through eight are simply critiques of trial strategy motivated by hindsight. *See Mayo v. Henderson,* 13 F.3d 528, 533 (2d Cir.1994) (asserting that petitioner offered little more than "hindsight to second-guess [counsel's] strategy choices"). The alleged errors are insufficient to meet the demanding two-pronged standard of *Strickland.* Rather, counsel's decisions regarding whether to call or impeach witnesses, to elicit certain testimony or to have a witness declared hostile, and to hire an expert were reasonable strategic judgments. *See, e.g., United States v. Best,* 219 F.3d 192, 201-02 (2d Cir.2000) ("[C]ounsel's decision as to 'whether to call specific witnesses-even ones that might offer exculpatory evidence-is ordinarily not viewed as a lapse in professional representation.' ") (citations omitted); *Mills v. Scully,* 826 F .2d 1192, 1197 (2d Cir.1987) (finding that failure to elicit a witness' prior conflicting grand jury testimony on cross-examination was sound trial strategy); *United States v. Nersesian,* 824 F.2d 1294, 1320-22 (2d Cir.1987) (holding that decisions whether to call any witnesses on behalf of defendant, whom to call as witnesses, whether to engage in cross-examination, and to what extent to cross-examine are all strategic in nature); *Murden v. Artuz,* 253 F.Supp.2d 376, 389 (E.D.N.Y.2001) ("In general, whether or not to hire an expert is the type of strategic choice by counsel that may not be second-guessed on habeas corpus review."). Moreover, counsel's decision to reject the various defense theories advocated by Jenkins, in favor of attempting to establish an underlying motive to fabricate the abuse allegations, constituted a sound tactical effort. *See Wells v. Miller,* No. 02-CV-5778, 2003 WL 23185759, at *14 (E.D.N.Y. Oct. 23, 2003) (stating that counsel's decision not to pursue a defense "more vigorously was based on what was arguably his reasonable professional judgment"). Indeed, the defense theories cited by Jenkins may have compromised his credibility before the trier of fact. Further, an overall review of the record indicates that Jenkins' counsel properly represented him in all respects. Counsel was knowledgeable of the facts and circumstances of the case, made the proper objections, filed the proper motions, and effectively cross-examined the prosecution's witnesses.

**\*8** Beyond mere speculative allegations, Jenkins has failed to show that these purported errors of trial counsel either fell below an objectively reasonable standard of representation or prejudiced his defense. The Court cannot grant habeas relief based upon unsubstantiated conclusions, opinions or speculation. *See Wood v. Bartholomew,* 516 U.S. 1, 8 (1995) (asserting that federal courts should not grant "habeas relief on the basis of little more than speculation with slight support"); *Williams v. Burge,* No. 02-CV-0695, 2005 WL 2179423, at *16 (N.D.N.Y. Aug. 15, 2005) (Peebles, M.J.), *adopted,* No. 02-CV-0695, Docket No. 35 (N.D.N.Y. Dec. 7, 2005) (Hurd, J.); *see also Matura v. United States,* 875 F.Supp. 235, 237-38 (S.D.N.Y.1995). Accordingly, the County Court's decision rejecting these claims was not an unreasonable application of *Strickland.*

As to allegations nine and ten, Jenkins claims his trial counsel was ineffective by failing to preserve for appeal claims of a repugnant verdict and prosecutorial misconduct. Regarding the repugnant verdict claim, in *People v. Tucker,* the New York Court of Appeals articulated New York's rule regarding repugnant verdicts:

When there is a claim that repugnant ... verdicts have been rendered in response to a multiple-count indictment, a verdict as to a particular count shall be set aside only when it is inherently inconsistent when viewed in light of the elements of each crime as charged.... The critical concern is that an individual not be convicted for a crime

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

on which the jury has actually found that the defendant did not commit an essential element, whether it be one element or not at all. Allowing such a verdict to stand is not merely inconsistent with justice, but is repugnant to it.... [A] conviction will be reversed only in those instances where acquittal on one crime as charged to the jury is conclusive as to a necessary element of the other crime, as charged, for which the guilty verdict was rendered.

*People v. Tucker,* 431 N.E.2d 617, 617-19 (N.Y.1981) (citations omitted); *see also* N.Y. CPL § 300.30(5) ("Two counts are 'inconsistent' when guilt of the offense charged in one necessarily negates guilt of the offense charged in the other."). To determine whether the verdict is "inherently self-contradictory," a court must examine the essential elements of each count as charged. *People v. Trappier,* 660 N.E.2d 1131, 1133 (N.Y.1995) (quoting *Tucker); accord People v. Loughlin,* 559 N.E.2d 656, 657-58 (N.Y.1990); *see also Sweet v. Bennett,* 353 F.3d 135, 143 (2d Cir .2003) (Walker, C.J., concurring).[FN16]

> FN16. This rule does not appear to differ when a claim of repugnant verdict is asserted in a non-jury trial. *See, e.g., People v. Gassett,* No. 3404/2003, 2004 WL 1852854, at *8 (N.Y.Sup.Ct. May 27, 2004) ("[T]he same standard is used in jury and nonjury trials in determining whether a verdict is, in fact, repugnant."); *see also Harris v. Rivera,* 454 U.S. 339, 346 (1981) ("In bench trials, judges routinely hear inadmissible evidence that they are presumed to ignore when making decisions.... [S]urely we must presume that they follow their own instructions when they are acting as factfinders.").

Jenkins' repugnant verdict theory is two-fold. First, Jenkins claims that the verdict of guilt for sexual abuse in the first degree should be set aside because the verdict of not guilty for sodomy in the first degree negated an essential element of the sexual abuse charge, that is, sexual contact. Docket No. 10 at 20-21. However, these verdicts are perfectly consistent. Jenkins was convicted under New York Penal Law § 130.65(3), which provides that a person is guilty of sexual abuse in the first degree when he subjects another person to sexual contact and the other person is less than eleven years old. N.Y. Penal Law § 130.65(3). In addition, Jenkins was charged under the section of the former sodomy statute providing that a person is guilty of sodomy in the first degree when he engages in deviate sexual intercourse with another person who is less than eleven years old. N.Y. Penal Law § 130.50(3) (2000).

**\*9** A comparison of the elements of the crimes as examined by the judge establishes that the acquittal of the charge of sodomy in the first degree did not negate any of the elements of sexual abuse in the first degree. Based on the facts in evidence, the judge found that Jenkins engaged in sexual contact with K.G. but did not engage in deviate sexual intercourse, and such a verdict is not inherently contradictory. *See People v. Fontanez,* 679 N.Y.S.2d 222, 225 (4th Dep't 1998) (rejecting defendant's claim of repugnant verdict where he was convicted of sexual abuse in the first and second degrees but acquitted of sodomy in the first and second degrees); *see also People v. Kimbro,* 655 N.Y.S.2d 481, 482 (1st Dep't 1997); *People v. Moselle,* 542 N.Y.S.2d 425, 425 (4th Dep't 1989); *People v. Pilich,* 513 N.Y.S.2d 829, 830 (2d Dep't 1987).

Second, Jenkins claims that the verdict of not guilty on the charge of sodomy in the first degree "due to lack of evidence as to sexual conduct" negates an essential element of attempted sodomy in the first degree. Docket No. 10 at 21. A person is guilty of an attempt to commit sodomy when, with intent to commit sodomy, he engages in conduct which tends to effect the commission of deviate sexual intercourse. *See* N.Y. Penal Law § 110.00. Contrary to Jenkins' claim, the trial court found insufficient evidence of *deviate sexual intercourse* to

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

convict Jenkins of sodomy in the first degree. However, based on the facts adduced at trial, the court found sufficient evidence to find that Jenkins engaged in conduct to effect the commission of deviate sexual intercourse with the intent to engage in such intercourse. *See* subsection II(B) *supra.* The attempted sodomy conviction is fully consistent with the acquittal for sodomy in the first degree. *See, e.g., People v.. Martinez,* 608 N.Y.S.2d 261, 262 (2d Dep't 1994) (finding that guilty verdict of attempted sale of a controlled substance was not repugnant despite acquittal of the actual sale of the controlled substance); *see also People v. Ladson,* 619 N.Y.S.2d 133, 134 (2d Dep't 1994) (rejecting repugnant verdict claim and reasoning that "the court, as finder of facts, had the option of basing its verdict on the attempted commission of one of the charged felonies"); *People v. Farrell,* 593 N.Y.S.2d 333, 334 (2d Dep't 1993) (stating that guilty verdict for attempted second degree burglary was not repugnant to acquittal for second degree burglary since the elements of the crimes are not identical).

Since the verdicts were not repugnant, the failure of trial counsel to raise a repugnant verdict objection at trial did not prejudice Jenkins. Therefore, defense counsel was not ineffective under *Strickland. See Dukes v. McGinnis,* No. 99 Civ. 9731, 2000 WL 382059, at *12-14 (S.D.N.Y. April 17, 2000) (Peck, M.J.), *adopted,* No. 99-9731, Docket No. 15 (S.D.N.Y. May 19, 2000) (Wood, J.).

As to Jenkins' ineffective assistance claim for failure to preserve his claims of prosecutorial misconduct, the Due Process Clause of the Fourteenth Amendment guarantees defendants the right to a fair trial. U.S. Const. Amend. XIV, § 1. Prosecutorial misconduct violates this due process right when the misconduct alleged is so severe and is of sufficient significance to infect the trial, resulting in the denial of the petitioner's right to a fair trial. *Greer v. Miller,* 483 U.S. 756, 765 (1987) (citing *Donnelly v. DeChristoforo,* 416 U.S. 637, 643 (1974)); *Blissett v. LeFevre,* 924 F.2d 434, 440 (2d Cir.1991). In evaluating a claim of prosecutorial

misconduct, the alleged misconduct must be placed into context and the court should consider the severity of the alleged misconduct, the curative measures taken, and the likelihood of conviction absent any misconduct. *Blissett,* 924 F .2d at 440. The court should then determine if the petitioner has shown actual prejudice in light of the totality of the circumstances surrounding the trial court conviction. *Samuels v. Mann,* 13 F.3d 522, 526-27 (2d Cir.1993).

**\*10** Here, Jenkins contends that the prosecutor improperly made remarks during summation regarding the intellectual capacity of the victim and the victim's lack of sexual knowledge. Docket No. 10 at 6-7. A review of the prosecutor's conduct during the trial shows that there was no conduct that was so severe as to deprive Jenkins of a fair trial. "Under New York law, statements during summation are permissible if they constitute a 'fair comment on the evidence' at trial and reasonable inference therefrom, or a 'fair response to remarks made by the defense counsel during summation.' " *Roman v.. Filion,* No. 04 Civ. 8022, 2005 WL 1383167, at *18 (S.D.N.Y. June 10, 2005) (Peck, C.M.J.) (quoting *People v. Perez,* 794 N.Y.S.2d 439, 440 (2d Dep't 2005) and citing *People v. Halm,* 611 N.E.2d 281, 282 (N.Y.1993)), *adopted,* No. 04-8022, Docket No. 16 (S.D.N .Y. Dec. 20, 2005) (Wood, J.); *see also Tolliver v. Greiner,* No. 02 CV 0570, 2005 WL 2179298, at *13 (N.D.N.Y. Sept. 8, 2005) (Treece, M.J.), *adopted,* 2005 WL 2437021 (N.D.N.Y. Sept. 30, 2005) (Kahn, J.). By commenting on the victim's age, apparent lack of sexual knowledge, and intellect, the prosecutor's summation simply challenged defense counsel's theory as articulated in his summation that the victim fabricated the abuse.

Jenkins also alleges that the prosecutor improperly elicited testimony on direct examination from Investigator Mark Klosowski regarding Jenkins' arrest on charges unrelated to the abuse of K.G. Docket No. 10 at 8. Specifically, Investigator Klosowski testified that he interviewed Jenkins "on

7/16/99, and that's also when I arrested Mr. Jenkins for some other charges." T. 90-91. The trial court already was aware of Jenkins' criminal history, which was previously presented to the judge during various bail proceedings. RA. 42a-66a. As the fact-finder at trial, the judge undoubtedly discounted the reference to Jenkins' prior arrests. *See Harris,* 454 U.S. at 346. Therefore, the investigator's statements were not so prejudicial as to deprive Jenkins of a fair trial. Since the prosecutor did not engage in misconduct, the failure of trial counsel to object did not constitute ineffective assistance.

Accordingly, the foregoing allegations of ineffective assistance of trial counsel should be denied in their entirety.

### D. Procedural Default

Respondent alleges that Jenkins' claims of prosecutorial misconduct and repugnant verdict, asserted as the second and third grounds of his second amended petition, are procedurally barred. Docket No. 47, Mem. of Law at 9-12. A federal habeas court is precluded from reviewing a petition if the state court's rejection of the argument rested on "independent and adequate state grounds." *Coleman v. Thompson,* 501 U.S. 722, 736 (1991); *Jones v. Stinson,* 229 F.3d 112, 117 (2d Cir.2000). This occurs when the last state court rendering a judgment in the case clearly and expressly held that its judgment rested on a state procedural bar. *Harris v. Reed,* 489 U.S. 255, 262 (1989); *Jones,* 229 F .3d at 118.

**\*11** Here, the Appellate Division rejected Jenkins' prosecutorial misconduct claim, stating that "his claims of prosecutorial misconduct, based upon the elicitation of certain testimony and summation remarks, were not preserved by appropriate objection." *Jenkins,* 751 N.Y.S.2d at 651 (citing New York's contemporaneous objection rule codified in CPL § 470.05(2)). The Appellate Division also found Jenkins "did not preserve for appellate review, by motion to set aside or modify the verdict, his contention that the verdict was repugnant." *Id.* (citing CPL § 330.30 and *People v. Alfaro,* 489

N.E.2d 1280 (N.Y.1985)). New York's contemporaneous objection rule is an "adequate and independent" state ground for procedural default where defense counsel has failed to object to a prosecutor's misconduct. *See Glenn v. Bartlett,* 98 F.3d 721, 724-25 (2d Cir.1996); *Velasquez v. Leonardo,* 898 F.2d 7, 9 (2d Cir.1990). Moreover, the requirement that a defendant move to set aside or modify the verdict to challenge the verdict as repugnant in a non-jury case also constitutes an adequate and independent state procedural ground. *See, e.g., Estrada v. Senkowski,* No. 98 CIV. 7796, 1999 WL 1051107, at \*12-13 (S.D.N.Y. Nov. 19, 1999) (stating that New York's requirement that a defendant must challenge an alleged inconsistent verdict in a jury trial before the jury is discharged constitutes adequate and independent state procedural ground). Accordingly, Jenkins' repugnant verdict and prosecutorial misconduct claims are procedurally barred.

Two exceptions exist which permit review of a claim otherwise procedurally barred. First, review may occur if a petitioner "demonstrate[s] cause for the default and actual prejudice as a result of the alleged violation of federal law." *Coleman,* 501 U.S. at 750; *Restrepo v. Kelly,* 178 F.3d 634, 637-38 (2d Cir.1999). "Cause" requires a showing that "some objective factor external to the defense impeded counsel's efforts to raise the claim in state court," *Levine v. Comm'r of Corr. Servs.,* 44 F.3d 121, 127 (2d Cir.1995) (citation and internal quotations omitted), or that the basis for a claim was not reasonably available to counsel, *see Bossett v. Walker,* 41 F.3d 825, 829 (2d Cir.1994). Jenkins appears to allege that his trial counsel's failure to preserve the repugnant verdict and prosecutorial misconduct claims caused his procedural default. However, as discussed *supra,* Jenkins has failed to demonstrate his counsel was ineffective. *See* subsection (II)(C)(2)(b) *supra.* Given that the verdict was not repugnant and the prosecutor did not engage in misconduct, defense counsel's failure to pursue these meritless claims did not constitute ineffective assistance. Where, as here, no cause has been estab-

lished, a court need not determine whether a petitioner suffered actual prejudice. *Stepney v. Lopes,* 760 F.2d 40, 45 (2d Cir.1985). Second, a procedural default may be excused if a petitioner demonstrates that the failure to consider the claim would result in a "fundamental miscarriage of justice," a standard which requires a petitioner to show he is "actually innocent." *Lebron v. Mann,* 40 F.3d 561, 564 (2d Cir.1994). Jenkins makes no claim of actual innocence, nor would the record here support such a claim. Accordingly, neither exception applies.

**\*12** Therefore, the second amended petition on these grounds should be denied as procedurally barred.[FN17]

> [FN17]. In any event, even if Jenkins' repugnant verdict claim was not procedurally barred, this allegation is not cognizable on federal habeas review. *See United States v. Powell,* 469 U.S. 57, 58 (1984); *see also Harris,* 454 U.S. at 345 ("Inconsistency in a verdict is not a sufficient reason for setting it aside."); *Estrada,* 1999 WL 1051107, at \*13-14 ("[I]nconsistent jury verdicts are not a ground for habeas relief."); *Williams v. Artuz,* No. 98 CIV 7964, 2002 WL 989529, at \*8 (S.D.N.Y. May 15, 2002) ("A claim of inconsistent or repugnant verdicts presents no issue upon which federal habeas corpus relief could be granted.").

### III. Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED** that the petition for a writ of habeas corpus be **DENIED.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v.*

*Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Small v. Sec'y of Health and Humans Servs.,* 892 F.2d 15 (2d Cir.1989); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

**IT IS SO ORDERED.**

N.D.N.Y.,2007.
Jenkins v. Unger
Not Reported in F.Supp.2d, 2007 WL 911889 (N.D.N.Y.)

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2007 WL 911889 (N.D.N.Y.)
**(Cite as: 2007 WL 911889 (N.D.N.Y.))**

**H**

Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
David JENKINS, Petitioner,
v.
David M. UNGER, Superintendent, Respondent.

No. 9:03-CV-1172 (LEK/DRH).
March 22, 2007.

David Jenkins, Sonyea, NY, Petitioner Pro Se.

Hon. Andrew M. Cuomo, Attorney General for the State of New York, Maria Moran, Esq., Assistant Attorney General, of counsel, Syracuse, NY.

### DECISION AND ORDER

LAWRENCE E. KAHN, U.S. District Judge.

**\*1** This matter comes before the Court following a Report-Recommendation filed on February 15, 2007 by the Honorable David R. Homer, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b) and L.R. 72.4 of the Northern District of New York. Report-Rec. (Dkt. No. 50). After ten days from the service thereof, the Clerk has sent the entire file to the undersigned, including the objections by Petitioner David Jenkins ("Petitioner"), which were filed on March 1, 2007. Objections (Dkt. No. 51).

It is the duty of this Court to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b). "A [district] judge ... may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* This Court has considered the objections and has undertaken a de novo review of the record and has determined that the Report-Recommendation should be approved for the reasons stated therein.

Accordingly, it is hereby

**ORDERED,** that the Report-Recommendation (Dkt. No. 50) is **APPROVED** and **ADOPTED** in its **ENTIRETY;** and it is further

**ORDERED,** that Petitioner's Petition for a writ of habeas corpus (Dkt. No. 1) is **DENIED;** and it is further

**ORDERED,** that the Clerk serve a copy of this Order on all parties.

**IT IS SO ORDERED.**

**REPORT-RECOMMENDATION AND ORDER** FN1

> **FN1.** This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.4.

DAVID R. HOMER, U.S. Magistrate Judge.

Petitioner pro se David Jenkins ("Jenkins") is currently an inmate in the custody of the New York State Department of Correctional Services ("DOCS") at Groveland Correctional Facility. Jenkins was found guilty on August 30, 2000 of one count each of sexual abuse in the first degree and attempted sodomy in the first degree after a non-jury trial in St. Lawrence County. Jenkins was adjudicated a second felony offender and was sentenced to concurrent determinate terms of imprisonment, the maximum of which is nine years. Jenkins now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the grounds that (1) there was insufficient evidence to support his conviction, (2) the prosecutor engaged in misconduct, (3) the verdict was repugnant, and (4) he was denied the effective assistance of trial counsel. For the reasons which follow, it is recommended that the second amended petition be denied. FN2

> **FN2.** Jenkins' original petition was dis-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 911889 (N.D.N.Y.)
**(Cite as: 2007 WL 911889 (N.D.N.Y.))**

missed with leave to file an amended petition for failure to provide a coherent set of facts to support his claims. Docket No. 5. Jenkins thereafter filed his first amended petition, and memorandum of law in support thereof, alleging (1) the evidence was insufficient to support the verdict, (2) certain prosecutorial misconduct denied him a fair trial, (3) the verdict was repugnant and (4) he was denied effective assistance of counsel. Docket Nos. 6, 10. After a response was filed, the action was stayed so that Jenkins could exhaust additional ineffective assistance of counsel claims in state court. Docket No. 19. Upon removal of the stay, Jenkins filed a motion to amend his first amended petition to allege, in addition to his original four claims, additional ineffective assistance of counsel claims as well as allegations of (1) harsh and excessive sentence, (2) improper and prejudicial conduct not appearing on the record, (3) newly discovered evidence, and (4) mental disease or defect. Docket Nos. 32, 37. This Court denied Jenkins' motion to amend as to the latter four claims but permitted Jenkins to enlarge his original ineffective assistance allegations. Docket No. 41 at 9-10, 12. Accordingly, the claims in Jenkins' second amended petition subject to federal habeas review are as listed above.

## I. Background

Beginning on May 30, 1999, investigators from the New York State Police and the St. Lawrence Department of Social Services investigated the report of ten-year-old K.G.[FN3] that Jenkins had recently subjected her to sexual contact on at least one occasion. T. 77-78, 118-19.[FN4] Jenkins resided with K.G. and her family, which included her mother, Lisa Wells, her siblings, Aaron and Amanda, and Lisa's boyfriend, Edward "Shaggy" Seror. T. 14-15. Specifically, K.G. informed Seror that while she watched cartoons in Jenkins' bedroom one night when the family was asleep, Jenkins touched her

"where he shouldn't have touched me where I go to the bathroom." T. 60, 105. At trial, K.G. described the details of the sexual abuse. T. 50-59.

> FN3. Under New York law, "[t]he identity of any victim of a sex offense ... shall be confidential. No ... court file or other documents, in the custody or possession of any public officer or employee, which identifies such a victim shall be made available for public inspection." N.Y. Civ. Rights Law § 50-b. In light of this provision, the victim will be referred to herein as "K.G." so as to ensure her privacy. *See Lucidore v. New York State Div. of Parole,* 209 F.3d 107, 109 n. 4 (2d Cir.2000) (demonstrating that substantial compliance with this statute is obtained where the court refers to the victim by use of initials).

> FN4. "T." followed by a number refers to the pages of the trial transcript included with respondent's answer. Docket No. 47, Ex. 1.

**\*2** Based on the child's allegations, investigators located Jenkins and requested that he accompany them for questioning. T. 82-84. Jenkins was questioned by a New York State trooper and provided a written statement wherein he admitted to "cuddling" and "laying" with the children on his bed. RA. 88a-90a.[FN5] However, Jenkins denied molesting K.G. *See id.; see also* T. 141-42.

> FN5. "RA." followed by a number refers to the pages of the record on appeal included with respondent's answer. Docket No. 47, Ex. 3.

On December 16, 1999, Jenkins was indicted and subsequently arrested. RA. 21 a-24a. Upon consulting with his defense counsel, Jenkins waived his right to a jury trial. T. 2-4. After a bench trial, Jenkins was found not guilty of sodomy in the first degree and guilty of the charges referenced *supra.* T. 162-63. He was sentenced as indicated above.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 911889 (N.D.N.Y.)
**(Cite as: 2007 WL 911889 (N.D.N.Y.))**

ST. 6.[FN6] On December 12, 2002, the Appellate Division unanimously affirmed the convictions and sentence. *People v. Jenkins,* 751 N.Y.S.2d 648, 650-51 (3d Dep't 2002).[FN7] Application for leave to appeal to the New York Court of Appeals was denied on February 26, 2003. *People v. Jenkins,* 787 N.E.2d 1172 (N.Y.2003). Jenkins also filed a motion to vacate his sentence, which was denied on September 29, 2005. *See* Docket No. 47, Exs. 10-17. Application for leave to appeal that decision was denied on November 29, 2005. *See id.* This action followed.

> FN6. "ST." followed by a number refers to the pages of the transcript of Jenkins' sentencing included with respondent's answer. Docket No. 47, Ex. 2.

> FN7. Although the Appellate Division affirmed the terms of Jenkins' commitment, that court vacated the sentence and remitted the matter to County Court for resentencing due to a discrepancy between the sentencing minutes and the Sentence and Commitment Statement of Conviction form filed in County Court. *Jenkins,* 751 N.Y.S.2d at 651. On remand, the County Court reiterated that Jenkins was properly sentenced to determinate terms of seven and nine years but ordered a corrected commitment order filed with the Department of Corrections in accordance with the Appellate Division's decision. Docket No. 47, Ex. 9.

## II. Discussion
### A. Standard of Review under the AEDPA

To succeed on habeas review under the deferential standards of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a petitioner must demonstrate that a state court adjudicated the claim on the merits, as opposed to on a procedural or other ground, and that adjudication was (1) contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court, or (2) resulted in a decision based on

an unreasonable determination of the facts in light of the evidence presented to the state court. *See* 28 U.S.C. § 2254(d)(1)-(2); *see also Hines v. Miller,* 318 F.3d 157, 160 (2d Cir.2003) (citing *Sellan v. Kuhlman,* 261 F.3d 303, 312 (2d Cir.2001)).

### B. Insufficiency of Evidence

Jenkins contends that the evidence supporting his convictions for sexual abuse in the first degree and attempted sodomy in the first degree was legally insufficient. *See* Docket No. 42.

A petitioner who claims that the evidence was not sufficient to sustain a conviction bears a very heavy burden. *United States v. Pierce,* 224 F.3d 158, 164 (2d Cir.2000). The Second Circuit has maintained that the weight of the evidence and the credibility of the witnesses are determinations for the factfinder and are not grounds for reversal. *See United States v. Vasquez,* 267 F.3d 79, 91 (2d Cir.2001). "[T]he critical inquiry on review of the sufficiency of the evidence ... [is] to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 318 (1979). This inquiry asks a court to determine if, "after viewing the evidence in the light most favorable to the prosecution, ... *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis in original); *see also Fama v. Comm'r of Corr. Servs.,* 235 F.3d 804, 811 (2d Cir.2000). When considering the sufficiency of the evidence of a state conviction, the habeas court must examine the substantive state law elements of the criminal offense. *Fama,* 235 F.3d at 811; *see also Jackson,* 443 U.S. at 324 n. 16 .

**\*3** New York Penal Law § 130.65(3) provides that a person is guilty of sexual abuse in the first degree when he subjects another person who is less than eleven years old to sexual contact. "Sexual contact" is defined as

> any touching of the sexual or other intimate parts of a person not married to the actor for the pur-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

pose of gratifying sexual desire of either party. It includes the touching of the actor by the victim, as well as the touching of the victim by the actor, whether directly or through clothing.

N.Y. Penal Law § 130.00(3). In addition, the former sodomy statute provides that a person is guilty of sodomy in the first degree when he engages in deviate sexual intercourse with another person who is less than eleven years old. N.Y. Penal Law § 130.50(3) (2000).[FN8] "Deviate sexual intercourse" was defined as "sexual conduct between persons not married to each other consisting of contact between the penis and the anus, the mouth and penis, or the mouth and the vulva." N.Y. Penal Law § 130.00(2)(2000).[FN9] A person is guilty of attempt to commit a crime "when, with intent to commit a crime, he engages in conduct which tends to effect the commission of the crime." N.Y. Penal Law § 110.00.

> FN8. Effective November 1, 2003, section 130.50 of New York's Penal Law was amended to define the crime of "criminal sexual act in the first degree," which provides, in relevant part, that "[a] person is guilty of criminal sexual act in the first degree when he or she engages in oral sexual conduct or anal sexual conduct with another person ... [w]ho is less than eleven years old...." N.Y. Penal Law § 130.50(3).

> FN9. Effective November 1, 2003, section 130.00 of New York's Penal Law was amended, in pertinent part, to define "oral sexual conduct" and "anal sexual conduct." N.Y. Penal Law § 130.00(2).

The trial testimony reveals that Jenkins lived in the victim's house from April 10, 1999 until May 30, 1999. T. 15. K.G. testified that her date of birth is March 16, 1989, and that she therefore was ten years old during the time Jenkins resided with her family. See T. 28. Both the victim and Jenkins testified that K.G. and her siblings often watched television in Jenkins' bedroom, where they sat on the bed

with him. T. 40-43, 142-43. K.G. testified that one night while her family was asleep, she was laying on Jenkins' bed facing the television and Jenkins was behind her. T. 51-52. She heard Jenkins sit up in bed, and then she heard a box open and paper rattling. T. 52-53. Subsequently, K.G. heard what appeared to be the pop of an elastic waistband on shorts. T. 53. Jenkins then moved closer to her, pulled her pants and underwear down to her ankles, and placed his arms around her stomach. T. 53-54. Jenkins rubbed her breasts as well as her "private." T. 54-55. Thereafter, Jenkins pulled his shorts off and put his "private" next to her "crack." T. 55-56. K.G. testified that she tried to move away from Jenkins, but he "stiffed his arm tighter". T. 56. Jenkins remained behind K.G. and started to move his private up and down between the crack of her buttocks. T. 56-57. K.G. testified that Jenkins then said "ouch" and moved away from her. T. 57. K.G. sat up on the bed and saw a "clear thing, clear paper" around Jenkins' private, and observed "milky stuff on the inside of ... that paper." T. 57-58. At some point after this incident, K.G. told Edward Seror that Jenkins "touched me where he shouldn't have touched me where I go to the bathroom." T. 105.

The record thus establishes that K.G. was less than eleven years old and that Jenkins caused sexual contact between his penis and K.G .'s buttocks. This evidence sufficed to demonstrate the sexual contact and attempted deviate sexual intercourse requirements of the statutes. Presented with this record, the Appellate Division considered and rejected the arguments Jenkins raises here regarding insufficiency of the evidence. See Jenkins, 751 N.Y.S.2d at 650.

**\*4** The record clearly demonstrates that the evidence supporting Jenkins' convictions for sexual abuse in the first degree and attempted sodomy in the first degree was sufficient and that the state court's rejection of Jenkins' contention was not unreasonable. Therefore, the second amended petition on this ground should be denied.

### C. Ineffective Assistance of Counsel

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

### 1. Exhaustion

Jenkins contends that his trial counsel failed to elicit various testimony from social worker Melvin Barnes on direct examination. Docket No. 10 at 12. Jenkins further alleges that defense counsel failed reasonably to investigate the existence of telephone records substantiating his claim that K.G. placed a telephone call to him on May 30, 1999. Docket No. 48.[FN10] A review of the record reveals that Jenkins has not presented these allegations of ineffective assistance of counsel in the state courts, either in his direct appeal or in his motion to vacate.

> FN10. These claims were raised in Jenkins' memorandum of law in support of his first amended petition and in his traverse in support of his second amended petition, respectively. Docket Nos. 10, 48. The Second Circuit has commanded federal district courts to construe *pro se* submissions liberally and to interpret them "to raise the strongest arguments that they suggest." *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994); *see also Phillips v. Girdich,* 408 F.3d 124, 130 (2d Cir.2005); *Green v. United States,* 260 F.3d 78, 83 (2d Cir.2001); *Williams v. Kullman,* 722 F.2d 1048, 1050-51 (2d Cir.1983); *Bido v. Miller,* No. 00 CV 8462, 2005 WL 1241898, at *1 (S.D.N.Y. May 24, 2005) (citations omitted). Mindful of this directive, the Court will consider these ineffective assistance claims as independent grounds for federal habeas relief.

An application for a writ of habeas corpus may not be considered until a petitioner has exhausted all remedies available in state court. 28 U.S.C. § 2254(b). To satisfy the exhaustion requirement, a petitioner must "fairly present" any constitutional claims to the state courts. *Dorsey v. Kelly,* 112 F.3d 50, 52 (2d Cir.1997) (quoting *Picard v. Connor,* 404 U.S. 270, 275 (1971)). A claim is "fairly presented" if the state courts are apprised of "both the factual and the legal premises of the claim [the

petitioner] asserts in federal court" and are alerted to the constitutional nature of the claim. *Daye v. Attorney Gen. of N.Y.,* 696 F.2d 186, 191-92 (2d Cir.1982). Regarding an ineffective assistance of counsel claim, "[e]ach factual claim made in support ... must be fairly presented to a state court before a federal habeas court may rule upon it." *Panezo v. Portuondo,* No. 02-CV-1522, 2003 WL 23198781, at *10 (E.D.N.Y. Nov. 6, 2003) (citing *Rodriguez v. Hoke,* 928 F.2d 534, 538 (2d Cir.1991)).

Jenkins has failed to present fairly these theories of ineffective assistance to the state courts and, accordingly, these allegations remain unexhausted.[FN11] However, under the AEDPA, a federal district court has the authority to deny an unexhausted claim on the merits rather than require exhaustion. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). Where the unexhausted claim is "patently frivolous" or it is "perfectly clear that the petitioner does not raise even a colorable federal claim," the claim is subject to denial. *Russell,* 2006 WL 1555468, at *16 (quotations omitted). In the present petition, the above ineffective assistance of counsel claims fail either standard as they are both patently frivolous and entirely meritless.

> FN11. Although respondent does not argue that the Court cannot consider these claims due to Jenkins' failure to exhaust, the Court notes that the habeas corpus statute provides that a state's failure to raise exhaustion as a defense to a charge does not operate as a waiver of such defense. *See* 28 U.S.C. § 2254(b)(3) ("A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement."). As such, federal district courts may *sua sponte* address a petition-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

er's failure to exhaust a claim in the absence of the respondent's express waiver. *See Lurie v. Wittner,* 228 F.3d 113, 123 (2d Cir .2000); *Russell v. Ricks,* No. 02 CV 0940, 2006 WL 1555468, at *15 (N.D.N.Y. May 31, 2006) (Kahn, J. & Peebles, M.J.).

To establish ineffective assistance of counsel as guaranteed by the Sixth Amendment, a petitioner must demonstrate that counsel's performance was deficient and that this deficiency prejudiced the petitioner's defense. *United States v. DeJesus,* 219 F.3d 117, 121 (2d Cir.2000) (citing *Strickland v. Washington,* 466 U.S. 668, 687 (1984)). A petitioner must establish that counsel's errors were so serious that the petitioner was deprived of a fair trial and there was a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different. *Strickland,* 466 U.S. at 686.

**\*5** The proper measure of attorney performance is an objective standard of reasonableness in the totality of the circumstances under prevailing professional norms. *Id.* at 688; *Purdy v. United States,* 208 F.3d 41, 44 (2d Cir.2000). Strategic choices made after investigation of the relevant law and facts are normally not subject to challenge and the reviewing court must be "highly deferential" to counsel's performance. *Strickland,* 466 U.S. at 689.

Here, Jenkins contends that his counsel failed to elicit testimony from Barnes regarding his conversations with Amanda, K.G.'s seven-year-old sister, about other incidents of alleged abuse by Jenkins against K.G. Specifically, while K.G. indicated that Amanda informed her that she witnessed Jenkins touch K.G. while K.G. slept in her bed, Amanda denied witnessing such incidents when speaking with Barnes. *See* RA. 80a-87a; *see also* T.61-62. A review of the record indicates that such testimony was, at best, of minimal relevance to the incident of sexual abuse at issue at trial. T. 61-62, 122-26. Amanda's statements to Barnes were collateral to the incident of abuse that formed the basis of Jen-

kins' indictment and testified to by K.G. at trial. Moreover, the social worker's discussions with Amanda likely constituted inadmissible hearsay. Counsel's decision not to explore such testimony was sound trial strategy, which may not be second-guessed on habeas review. *See United States v. Helgesen,* 669 F.2d 69, 72 (2d Cir.1982).

Jenkins further cites to his attorney's failure to seek telephone records which would have supported his contention that K.G. had been threatened by Edward Seror and her mother after telephoning Jenkins to pick her up. *See* Docket No. 47, Ex. 12 at 4. However, Jenkins admitted that he was unable to assist his trial lawyer in providing the necessary information for use at trial because he could not remember the details of the telephone call due to his alleged memory loss. Docket No. 47, Ex. 11 at 4, 6. As such, the records would have been useless to Jenkins' defense, and he cannot now fault his attorney for his alleged failure to procure them.

These unexhausted claims of ineffective assistance of counsel, therefore, are patently frivolous, entirely meritless, and should be denied.

### 2. Merits
#### a. Claims Raised on Direct Appeal

Jenkins also contends, as he did on direct appeal, that his defense counsel improperly called Seror as a defense witness because Seror's testimony served only to corroborate K.G.'s allegations. *See* Docket No. 10 at 11; *see also* Docket No. 47, Ex. 4 at 38-42. Respondent argues that this contention is meritless. Docket No. 47, Mem. of Law at 13-14. The Appellate Division rejected Jenkins' claim that his trial counsel improperly called Seror as a defense witness, holding that:

> [I]t appears that the witness was called to show that he had a motive to fabricate the allegations, a tactic which was part of the overall defense strategy, namely, to portray the People's evidence as unreliable. Losing trial tactics or strategy ... do not rise to the level of ineffectiveness. Viewing the evidence, the law and the circumstances of

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

this case in their totality, we find that defendant received "meaningful representation."

**\*6** *Jenkins,* 751 N.Y.S.2d at 651 (internal quotations and citations omitted).

Significantly, state court findings on matters related to counsel's strategic choices are conclusive on the court reviewing the habeas petition if supported in the record. *See* 28 U.S.C. § 2254(d); *see also Sumner v. Mata,* 455 U.S. 591, 592 (1982). At trial, Seror testified that he had a prior disagreement with Jenkins regarding Jenkins spending time with the victim's mother, who was Seror's girlfriend. T. 101. Counsel evidently weighed the benefit of this testimony, which established a motive for Seror to fabricate the abuse allegations, with the possibility of eliciting additional testimony tending to favor the prosecution. As mentioned above, such strategic decisions may not be disturbed on habeas review. *Helgesen,* 669 F.2d at 72 (discussing the Second Circuit's "reluctance to second-guess matters of trial strategy simply because the chosen strategy has failed"). Counsel's decision to call Seror clearly was not unreasonable under *Strickland.* FN12 The Appellate Division's findings are plainly supported by the record and, as such, this allegation of ineffective assistance of counsel lacks merit.

> FN12. The Supreme Court has declared that "the rule set forth in *Strickland* qualifies as 'clearly established Federal law [.]' " *Williams v. Taylor,* 529 U.S. 362, 391 (2000).

Therefore, the second amended petition as to this ineffective assistance of counsel claim should be denied.

**b. Claims Raised in Motion to Vacate**

Jenkins further alleges, as he did in his motion to vacate pursuant to New York Criminal Procedure Law ("CPL") § 440.10, that his trial counsel failed to: (1) raise alleged threats made by Lisa Wells and Seror against potential witnesses; (2) to call neighbor Dale Gilbo as a witness; (3) have Seror de-

clared hostile and to question him regarding K.G.'s alleged May 30, 1999 telephone call to Jenkins; (4) raise a conspiracy defense; (5) impeach Wells regarding the layout of the apartment; (6) hire an expert to testify about misattribution; (7) elicited that Jenkins suffered from carpal tunnel syndrome and therefore could not perpetrate the alleged sexual acts on the victim; (8) assert that Wells and Seror were drug dealers; (9) preserve the claim of repugnant verdict for appellate review; and (10) preserve the claim of prosecutorial misconduct for appellate review. FN13 Respondent submits that these allegations are time-barred because they do not sufficiently relate back to Jenkins' first amended petition and, in any event, are meritless. Docket No. 47, Mem. of Law at 14-16. FN14

> FN13. These ten claims were raised for the first time in Jenkins' motion to amend his first amended petition. Docket No. 32. This Court granted Jenkins' motion to amend with respect to his supplemental ineffective assistance of counsel claim, and ordered the filing of Jenkins' proposed amended petition as the second amended petition in this action. Docket No. 41 at 9-10, 12. While the Court's order specified that Jenkins could enlarge his original ineffective assistance of counsel claim to include contentions nine and ten listed above, *see id.* at 9-10, the Court will examine all ten allegations herein in the interest of construing *pro se* submissions liberally. *See Burgos,* 14 F.3d at 790; *see also Phillips,* 408 F.3d at 230; *Green,* 260 F.3d at 83.

> FN14. The Court permitted respondent to address both the merits and the timeliness of Jenkins' ineffective assistance of counsel claim in his response to the newly amended petition. Docket No. 41 at 10. However, respondent curiously addresses only claims one through eight, and does not assert any argument as to allegations

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

nine and ten.

As a threshold matter, respondent submits that the ineffective assistance of counsel claims raised in Jenkins' 440.10 motion are time-barred because they are untimely and do not sufficiently relate back to the theories of ineffective assistance alleged in Jenkins' first amended petition. Docket No. 47, Mem. of Law at 14-16.[FN15] In his first amended petition, Jenkins alleged ineffective assistance of counsel only as to counsel's error in calling Seror as a defense witness, *see* Docket No. 10 at 11-12, and counsel's failure to elicit certain testimony from Barnes, *see* Docket No. 10 at 12. An amendment relates back to the date of the original pleading when the claim or defense asserted in the amended pleading "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." *Fama,* 235 F.3d at 815 (quoting Fed.R.Civ.P. 15(c)) (internal quotations omitted). In making this determination, the court must find that the original petition "gave the defendant fair notice of the newly alleged claims." *Id.* (citing *Wilson v. Fairchild Republic Co .,* 143 F.3d 733, 738 (2d Cir.1998)). As asserted by the Supreme Court, a habeas claim relates back to a claim filed within the limitations period under Fed.R.Civ.P. 15(c) "[s]o long as the original and amended petitions are tied to a common core of operative facts." *Mayle v. Felix,* 125 S.Ct. 2562, 2574-75 (2005).

> FN15. This Court previously determined that the statute of limitations expired with respect to any new claims on May 27, 2004. *See* Docket No. 41 at 3-4.

**\*7** Jenkins' allegations regarding his counsel's failure to preserve prosecutorial misconduct and repugnant verdict claims arising from the same common core of operative facts as his original habeas petition. Although these ineffective assistance claims are based on new theories of relief, they arise from the substantive allegations of prosecutorial misconduct and repugnant verdict raised in his first amended petition. *See Serrano v. Burge,*

No. 03CIV8639, 2005 WL 2063675, at \*4 (S.D.N.Y. Aug. 22, 2005) (Ellis, M.J.) (stating that petitioner's ineffective assistance claim in amended petition related to counsel's failure to raise substantive issues already alleged in original petition), *adopted,* 2005 WL 2170362 (S.D.N.Y. Sept. 8, 2005) (Berman, D.J.). However, since the majority of Jenkins' remaining ineffective assistance claims are wholly unrelated to the original allegations of his first amended petition, it is doubtful that respondent had fair notice of these theories. Nevertheless, the simplest course is to address Jenkins' proposed new claims of ineffective assistance of counsel on the merits. *See, e.g., Fama,* 235 F.3d at 816 ("To simplify this case, we will assume *arguendo* that, pursuant to Rule 15(c), this evidence does relate back to Fama's original petition, and hence the amendment is permissible."); *Williams v. Donnelly,* No. 00-CV-4445, 2005 WL 2290592, at \*29 (E.D.N.Y. Apr. 12, 2005) (Mann, M.J.) ("[T]he simplest and wisest course is to slice through the tangles in a different direction.") (citation omitted), *adopted,* No. 00-4445, Docket No. 26 (E.D.N.Y. Sept. 16, 2005) (Trager, J.).

The County Court rejected the above ineffective assistance of counsel claims on the merits, finding that:

> While it is true that some of the assertions made here are beyond those that appear directly in the record, and therefore may not have been reachable on direct appeal, they are also highly speculative. Primarily they take the form of criticizing unsuccessful trial tactics after an adverse result. As the appellate courts have repeatedly held, losing tactics are not per se indicative of the ineffective assistance of counsel.

> Defense counsel has asked for a hearing in order to develop the record and facilitate decision on the issues raised. Yet there are already substantial assertions of fact which are not contested. The questions presented here are questions of law. The court is not in need of taking proof in order to determine what happened or was said or done;

rather, the parties disagree about what those events or facts mean. On each of the grounds raised, the court finds that defendant has failed to come forward with any proof of more than his own assertions, and these are not sufficient to undermine the validity of his conviction.

Docket No. 47, Ex. 17.

This Court agrees that contentions one through eight are simply critiques of trial strategy motivated by hindsight. *See Mayo v. Henderson,* 13 F.3d 528, 533 (2d Cir.1994) (asserting that petitioner offered little more than "hindsight to second-guess [counsel's] strategy choices"). The alleged errors are insufficient to meet the demanding two-pronged standard of *Strickland.* Rather, counsel's decisions regarding whether to call or impeach witnesses, to elicit certain testimony or to have a witness declared hostile, and to hire an expert were reasonable strategic judgments. *See, e.g., United States v. Best,* 219 F.3d 192, 201-02 (2d Cir.2000) ("[C]ounsel's decision as to 'whether to call specific witnesses-even ones that might offer exculpatory evidence-is ordinarily not viewed as a lapse in professional representation.' ") (citations omitted); *Mills v. Scully,* 826 F .2d 1192, 1197 (2d Cir.1987) (finding that failure to elicit a witness' prior conflicting grand jury testimony on cross-examination was sound trial strategy); *United States v. Nersesian,* 824 F.2d 1294, 1320-22 (2d Cir.1987) (holding that decisions whether to call any witnesses on behalf of defendant, whom to call as witnesses, whether to engage in cross-examination, and to what extent to cross-examine are all strategic in nature); *Murden v. Artuz,* 253 F.Supp.2d 376, 389 (E.D.N.Y.2001) ("In general, whether or not to hire an expert is the type of strategic choice by counsel that may not be second-guessed on habeas corpus review."). Moreover, counsel's decision to reject the various defense theories advocated by Jenkins, in favor of attempting to establish an underlying motive to fabricate the abuse allegations, constituted a sound tactical effort. *See Wells v. Miller,* No. 02-CV-5778, 2003 WL 23185759, at *14 (E.D.N.Y. Oct. 23, 2003) (stating that counsel's decision not to pursue a defense "more vigorously was based on what was arguably his reasonable professional judgment"). Indeed, the defense theories cited by Jenkins may have compromised his credibility before the trier of fact. Further, an overall review of the record indicates that Jenkins' counsel properly represented him in all respects. Counsel was knowledgeable of the facts and circumstances of the case, made the proper objections, filed the proper motions, and effectively cross-examined the prosecution's witnesses.

**\*8** Beyond mere speculative allegations, Jenkins has failed to show that these purported errors of trial counsel either fell below an objectively reasonable standard of representation or prejudiced his defense. The Court cannot grant habeas relief based upon unsubstantiated conclusions, opinions or speculation. *See Wood v. Bartholomew,* 516 U.S. 1, 8 (1995) (asserting that federal courts should not grant "habeas relief on the basis of little more than speculation with slight support"); *Williams v. Burge,* No. 02-CV-0695, 2005 WL 2179423, at *16 (N.D.N.Y. Aug. 15, 2005) (Peebles, M.J.), *adopted,* No. 02-CV-0695, Docket No. 35 (N.D.N.Y. Dec. 7, 2005) (Hurd, J.); *see also Matura v. United States,* 875 F.Supp. 235, 237-38 (S.D.N.Y.1995). Accordingly, the County Court's decision rejecting these claims was not an unreasonable application of *Strickland.*

As to allegations nine and ten, Jenkins claims his trial counsel was ineffective by failing to preserve for appeal claims of a repugnant verdict and prosecutorial misconduct. Regarding the repugnant verdict claim, in *People v. Tucker,* the New York Court of Appeals articulated New York's rule regarding repugnant verdicts:

When there is a claim that repugnant ... verdicts have been rendered in response to a multiple-count indictment, a verdict as to a particular count shall be set aside only when it is inherently inconsistent when viewed in light of the elements of each crime as charged.... The critical concern is that an individual not be convicted for a crime

on which the jury has actually found that the defendant did not commit an essential element, whether it be one element or not at all. Allowing such a verdict to stand is not merely inconsistent with justice, but is repugnant to it.... [A] conviction will be reversed only in those instances where acquittal on one crime as charged to the jury is conclusive as to a necessary element of the other crime, as charged, for which the guilty verdict was rendered.

*People v. Tucker,* 431 N.E.2d 617, 617-19 (N.Y.1981) (citations omitted); *see also* N.Y. CPL § 300.30(5) ("Two counts are 'inconsistent' when guilt of the offense charged in one necessarily negates guilt of the offense charged in the other."). To determine whether the verdict is "inherently self-contradictory," a court must examine the essential elements of each count as charged. *People v. Trappier,* 660 N.E.2d 1131, 1133 (N.Y.1995) (quoting *Tucker); accord People v. Loughlin,* 559 N.E.2d 656, 657-58 (N.Y.1990); *see also Sweet v. Bennett,* 353 F.3d 135, 143 (2d Cir .2003) (Walker, C.J., concurring).[FN16]

> [FN16]. This rule does not appear to differ when a claim of repugnant verdict is asserted in a non-jury trial. *See, e.g., People v. Gassett,* No. 3404/2003, 2004 WL 1852854, at *8 (N.Y.Sup.Ct. May 27, 2004) ("[T]he same standard is used in jury and nonjury trials in determining whether a verdict is, in fact, repugnant."); *see also Harris v. Rivera,* 454 U.S. 339, 346 (1981) ("In bench trials, judges routinely hear inadmissible evidence that they are presumed to ignore when making decisions.... [S]urely we must presume that they follow their own instructions when they are acting as factfinders.").

Jenkins' repugnant verdict theory is two-fold. First, Jenkins claims that the verdict of guilt for sexual abuse in the first degree should be set aside because the verdict of not guilty for sodomy in the first degree negated an essential element of the

sexual abuse charge, that is, sexual contact. Docket No. 10 at 20-21. However, these verdicts are perfectly consistent. Jenkins was convicted under New York Penal Law § 130.65(3), which provides that a person is guilty of sexual abuse in the first degree when he subjects another person to sexual contact and the other person is less than eleven years old. N.Y. Penal Law § 130.65(3). In addition, Jenkins was charged under the section of the former sodomy statute providing that a person is guilty of sodomy in the first degree when he engages in deviate sexual intercourse with another person who is less than eleven years old. N.Y. Penal Law § 130.50(3) (2000).

**\*9** A comparison of the elements of the crimes as examined by the judge establishes that the acquittal of the charge of sodomy in the first degree did not negate any of the elements of sexual abuse in the first degree. Based on the facts in evidence, the judge found that Jenkins engaged in sexual contact with K.G. but did not engage in deviate sexual intercourse, and such a verdict is not inherently contradictory. *See People v. Fontanez,* 679 N.Y.S.2d 222, 225 (4th Dep't 1998) (rejecting defendant's claim of repugnant verdict where he was convicted of sexual abuse in the first and second degrees but acquitted of sodomy in the first and second degrees); *see also People v. Kimbro,* 655 N.Y.S.2d 481, 482 (1st Dep't 1997); *People v. Moselle,* 542 N.Y.S.2d 425, 425 (4th Dep't 1989); *People v. Pilich,* 513 N.Y.S.2d 829, 830 (2d Dep't 1987).

Second, Jenkins claims that the verdict of not guilty on the charge of sodomy in the first degree "due to lack of evidence as to sexual conduct" negates an essential element of attempted sodomy in the first degree. Docket No. 10 at 21. A person is guilty of an attempt to commit sodomy when, with intent to commit sodomy, he engages in conduct which tends to effect the commission of deviate sexual intercourse. *See* N.Y. Penal Law § 110.00. Contrary to Jenkins' claim, the trial court found insufficient evidence of *deviate sexual intercourse* to

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

convict Jenkins of sodomy in the first degree. However, based on the facts adduced at trial, the court found sufficient evidence to find that Jenkins engaged in conduct to effect the commission of deviate sexual intercourse with the intent to engage in such intercourse. *See* subsection II(B) *supra.* The attempted sodomy conviction is fully consistent with the acquittal for sodomy in the first degree. *See, e.g., People v.. Martinez,* 608 N.Y.S.2d 261, 262 (2d Dep't 1994) (finding that guilty verdict of attempted sale of a controlled substance was not repugnant despite acquittal of the actual sale of the controlled substance); *see also People v. Ladson,* 619 N.Y.S.2d 133, 134 (2d Dep't 1994) (rejecting repugnant verdict claim and reasoning that "the court, as finder of facts, had the option of basing its verdict on the attempted commission of one of the charged felonies"); *People v. Farrell,* 593 N.Y.S.2d 333, 334 (2d Dep't 1993) (stating that guilty verdict for attempted second degree burglary was not repugnant to acquittal for second degree burglary since the elements of the crimes are not identical).

Since the verdicts were not repugnant, the failure of trial counsel to raise a repugnant verdict objection at trial did not prejudice Jenkins. Therefore, defense counsel was not ineffective under *Strickland. See Dukes v. McGinnis,* No. 99 Civ. 9731, 2000 WL 382059, at *12-14 (S.D.N.Y. April 17, 2000) (Peck, M.J.), *adopted,* No. 99-9731, Docket No. 15 (S.D.N.Y. May 19, 2000) (Wood, J.).

As to Jenkins' ineffective assistance claim for failure to preserve his claims of prosecutorial misconduct, the Due Process Clause of the Fourteenth Amendment guarantees defendants the right to a fair trial. U.S. Const. Amend. XIV, § 1. Prosecutorial misconduct violates this due process right when the misconduct alleged is so severe and is of sufficient significance to infect the trial, resulting in the denial of the petitioner's right to a fair trial. *Greer v. Miller,* 483 U.S. 756, 765 (1987) (citing *Donnelly v. DeChristoforo,* 416 U.S. 637, 643 (1974)); *Blissett v. LeFevre,* 924 F.2d 434, 440 (2d Cir.1991). In evaluating a claim of prosecutorial

misconduct, the alleged misconduct must be placed into context and the court should consider the severity of the alleged misconduct, the curative measures taken, and the likelihood of conviction absent any misconduct. *Blissett,* 924 F .2d at 440. The court should then determine if the petitioner has shown actual prejudice in light of the totality of the circumstances surrounding the trial court conviction. *Samuels v. Mann,* 13 F.3d 522, 526-27 (2d Cir.1993).

**\*10** Here, Jenkins contends that the prosecutor improperly made remarks during summation regarding the intellectual capacity of the victim and the victim's lack of sexual knowledge. Docket No. 10 at 6-7. A review of the prosecutor's conduct during the trial shows that there was no conduct that was so severe as to deprive Jenkins of a fair trial. "Under New York law, statements during summation are permissible if they constitute a 'fair comment on the evidence' at trial and reasonable inference therefrom, or a 'fair response to remarks made by the defense counsel during summation.' " *Roman v.. Filion,* No. 04 Civ. 8022, 2005 WL 1383167, at *18 (S.D.N.Y. June 10, 2005) (Peck, C.M.J.) (quoting *People v. Perez,* 794 N.Y.S.2d 439, 440 (2d Dep't 2005) and citing *People v. Halm,* 611 N.E.2d 281, 282 (N.Y.1993)), *adopted,* No. 04-8022, Docket No. 16 (S.D.N .Y. Dec. 20, 2005) (Wood, J.); *see also Tolliver v. Greiner,* No. 02 CV 0570, 2005 WL 2179298, at *13 (N.D.N.Y. Sept. 8, 2005) (Treece, M.J.), *adopted,* 2005 WL 2437021 (N.D.N.Y. Sept. 30, 2005) (Kahn, J.). By commenting on the victim's age, apparent lack of sexual knowledge, and intellect, the prosecutor's summation simply challenged defense counsel's theory as articulated in his summation that the victim fabricated the abuse.

Jenkins also alleges that the prosecutor improperly elicited testimony on direct examination from Investigator Mark Klosowski regarding Jenkins' arrest on charges unrelated to the abuse of K.G. Docket No. 10 at 8. Specifically, Investigator Klosowski testified that he interviewed Jenkins "on

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

7/16/99, and that's also when I arrested Mr. Jenkins for some other charges." T. 90-91. The trial court already was aware of Jenkins' criminal history, which was previously presented to the judge during various bail proceedings. RA. 42a-66a. As the fact-finder at trial, the judge undoubtedly discounted the reference to Jenkins' prior arrests. *See Harris,* 454 U.S. at 346. Therefore, the investigator's statements were not so prejudicial as to deprive Jenkins of a fair trial. Since the prosecutor did not engage in misconduct, the failure of trial counsel to object did not constitute ineffective assistance.

Accordingly, the foregoing allegations of ineffective assistance of trial counsel should be denied in their entirety.

### D. Procedural Default

Respondent alleges that Jenkins' claims of prosecutorial misconduct and repugnant verdict, asserted as the second and third grounds of his second amended petition, are procedurally barred. Docket No. 47, Mem. of Law at 9-12. A federal habeas court is precluded from reviewing a petition if the state court's rejection of the argument rested on "independent and adequate state grounds." *Coleman v. Thompson,* 501 U.S. 722, 736 (1991); *Jones v. Stinson,* 229 F.3d 112, 117 (2d Cir.2000). This occurs when the last state court rendering a judgment in the case clearly and expressly held that its judgment rested on a state procedural bar. *Harris v. Reed,* 489 U.S. 255, 262 (1989); *Jones,* 229 F .3d at 118.

**\*11** Here, the Appellate Division rejected Jenkins' prosecutorial misconduct claim, stating that "his claims of prosecutorial misconduct, based upon the elicitation of certain testimony and summation remarks, were not preserved by appropriate objection." *Jenkins,* 751 N.Y.S.2d at 651 (citing New York's contemporaneous objection rule codified in CPL § 470.05(2)). The Appellate Division also found Jenkins "did not preserve for appellate review, by motion to set aside or modify the verdict, his contention that the verdict was repugnant." *Id.* (citing CPL § 330.30 and *People v. Alfaro,* 489

N.E.2d 1280 (N.Y.1985)). New York's contemporaneous objection rule is an "adequate and independent" state ground for procedural default where defense counsel has failed to object to a prosecutor's misconduct. *See Glenn v. Bartlett,* 98 F.3d 721, 724-25 (2d Cir.1996); *Velasquez v. Leonardo,* 898 F.2d 7, 9 (2d Cir.1990). Moreover, the requirement that a defendant move to set aside or modify the verdict to challenge the verdict as repugnant in a non-jury case also constitutes an adequate and independent state procedural ground. *See, e.g., Estrada v. Senkowski,* No. 98 CIV. 7796, 1999 WL 1051107, at *12-13 (S.D.N.Y. Nov. 19, 1999) (stating that New York's requirement that a defendant must challenge an alleged inconsistent verdict in a jury trial before the jury is discharged constitutes adequate and independent state procedural ground). Accordingly, Jenkins' repugnant verdict and prosecutorial misconduct claims are procedurally barred.

Two exceptions exist which permit review of a claim otherwise procedurally barred. First, review may occur if a petitioner "demonstrate[s] cause for the default and actual prejudice as a result of the alleged violation of federal law." *Coleman,* 501 U.S. at 750; *Restrepo v. Kelly,* 178 F.3d 634, 637-38 (2d Cir.1999). "Cause" requires a showing that "some objective factor external to the defense impeded counsel's efforts to raise the claim in state court," *Levine v. Comm'r of Corr. Servs.,* 44 F.3d 121, 127 (2d Cir.1995) (citation and internal quotations omitted), or that the basis for a claim was not reasonably available to counsel, *see Bossett v. Walker,* 41 F.3d 825, 829 (2d Cir.1994). Jenkins appears to allege that his trial counsel's failure to preserve the repugnant verdict and prosecutorial misconduct claims caused his procedural default. However, as discussed *supra,* Jenkins has failed to demonstrate his counsel was ineffective. *See* subsection (II)(C)(2)(b) *supra.* Given that the verdict was not repugnant and the prosecutor did not engage in misconduct, defense counsel's failure to pursue these meritless claims did not constitute ineffective assistance. Where, as here, no cause has been estab-

lished, a court need not determine whether a petitioner suffered actual prejudice. *Stepney v. Lopes,* 760 F.2d 40, 45 (2d Cir.1985). Second, a procedural default may be excused if a petitioner demonstrates that the failure to consider the claim would result in a "fundamental miscarriage of justice," a standard which requires a petitioner to show he is "actually innocent." *Lebron v. Mann,* 40 F.3d 561, 564 (2d Cir.1994). Jenkins makes no claim of actual innocence, nor would the record here support such a claim. Accordingly, neither exception applies.

**\*12** Therefore, the second amended petition on these grounds should be denied as procedurally barred.[FN17]

> FN17. In any event, even if Jenkins' repugnant verdict claim was not procedurally barred, this allegation is not cognizable on federal habeas review. *See United States v. Powell,* 469 U.S. 57, 58 (1984); *see also Harris,* 454 U.S. at 345 ("Inconsistency in a verdict is not a sufficient reason for setting it aside."); *Estrada,* 1999 WL 1051107, at \*13-14 ("[I]nconsistent jury verdicts are not a ground for habeas relief."); *Williams v. Artuz,* No. 98 CIV 7964, 2002 WL 989529, at \*8 (S.D.N.Y. May 15, 2002) ("A claim of inconsistent or repugnant verdicts presents no issue upon which federal habeas corpus relief could be granted.").

**III. Conclusion**

For the reasons stated above, it is hereby

**RECOMMENDED** that the petition for a writ of habeas corpus be **DENIED.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v.*

*Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Small v. Sec'y of Health and Humans Servs.,* 892 F.2d 15 (2d Cir.1989); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

**IT IS SO ORDERED.**

N.D.N.Y.,2007.
Jenkins v. Unger
Not Reported in F.Supp.2d, 2007 WL 911889 (N.D.N.Y.)

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 3825732 (S.D.N.Y.)
**(Cite as: 2010 WL 3825732 (S.D.N.Y.))**



Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,
S.D. New York.
Clayton MILLS, Petitioner,
v.
UNITED STATES of America, Respondent.

No. 09 Civ. 4090(JSR)(MHD).
May 20, 2010.

*REPORT AND RECOMMENDATION*
MICHAEL H. DOLINGER, United States Magistrate Judge.

**\*1 TO THE HONORABLE JED S. RAKOFF, U.S.D.J.:**

*Pro se* defendant Clayton Mills has filed a motion under 28 U.S.C. § 2255, seeking to vacate a judgment of conviction entered against him in this court following his February 1, 2007 guilty plea to one count of conspiring to distribute more than fifty grams of crack cocaine. On May 17, 2007, Mills was sentenced to the statutorily-mandated minimum prison term of ten years, plus five years of supervised release.

In his motion, Mills alleges that he was denied effective representation in connection with both his plea and his sentencing, as well as thereafter. In support of his claim he cites the following alleged missteps on the part of counsel: (1) failing to comply with Mills' alleged request to file an appeal (Pet. at 5), (2) advising Mills to accept a waiver-of-appeal provision and a "fixed Sentencing Guideline range" in the plea agreement (*id.* at 6), (3) failing to advise Mills, before he signed the plea agreement, that the Government's burden at trial would be proof of guilt beyond a reasonable doubt, (*id.* at 7–8), and (4) failing to seek a reduction of his sentence on the basis that the drugs in question

did not involve crack cocaine. (*Id.* at 9). In apparent recognition of the fact that his motion was filed after the statutory deadline found in 28 U.S.C. § 2255, Mills also argues that his attorney's failure to file an appeal tolled the statute of limitations. (*Id.* at 12).

The Government opposes defendant's motion as untimely and merit less. We agree. We therefore recommend that the motion denied.

*PRIOR PROCEEDINGS AMD RELEVANT FACTS*
A. *Plea Proceedings*

On February 1, 2007, Mills appeared before the District Court with his attorney, Sanford Talkin, Esq. (*See* Plea Hr'g Tr., Resp't Ex. E)). He waived indictment and pled guilty to a one-count superceding information charging him with conspiring to "distribute and possess with intent to distribute ... fifty grams and more of mixtures and substances containing a detectable amount of cocaine base, in a form commonly known as 'crack,' in violation of Title 21, United States Code, Sections 812, 841(a)(1), and 841(b)(1)(A)." (Information, S31 04 Cr. 48(JSR) ("Resp't Ex. B"); *see* Waiver of Indictment ("Resp't Ex. C")).

At the outset, the Court determined that Mills was competent, that he was satisfied with his appointed counsel, and that he had had a full opportunity to discuss the information with his attorney and had in fact done so. (*See* Plea Hr'g Tr. at 4–5, 6). The court then confirmed defendant's understanding of the various rights forfeited by pleading guilty, including, *inter alia,* the right to a trial at which "[he] would be presumed innocent and the government would be required to prove [his] guilt beyond reasonable doubt," and the right to appeal a conviction. (*Id.* at 8–9). The court also reviewed the maximum and mandatory minimum punishments associated with the charged offense, and confirmed that Mills had discussed the sentencing guidelines with his attorney. (*Id.* at 9–10).

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 3825732 (S.D.N.Y.)
**(Cite as: 2010 WL 3825732 (S.D.N.Y.))**

**\*2** Finally, the Court turned to a discussion of the plea agreement signed by defendant that same day. (*Id.* at 12; *see* Plea Agrm't, Resp't Ex. D). Mills confirmed that he had read the agreement, reviewed it with counsel, and signed it after understanding of its terms. (*See* Plea Hr'g Tr. at 11).

Among the salient terms of the plea agreement was the statement that

Based upon the calculations [derived from the United States Sentencing Guidelines (the "Guidelines") ], the Guidelines sentencing range is 87 to 108 months. However, because a mandatory minimum of ten years applies to this offense, the effective Guidelines sentence is 120 months (the 'Stipulated Guidelines Sentence') ....

(Plea Agrm't at 4). After citing the minimum sentence of 120 months mandated by statute, the agreement stipulated that "neither party will seek [ ] a departure or seek any adjustment" of the 120–month minimum. (*Id.* at 4; *see id.* at 5). The agreement explicitly recounted that the sentence imposed was ultimately within the sole control of the court, and that, by signing the agreement, Mills was forfeiting the right to withdraw his guilty plea in the event that the court decided to impose a sentence greater than 120 months or "employed a Guidelines analysis different from the one stipulated in the agreement." (*Id.* at 5–6). It also provided that any appeal of Mills' sentence not foreclosed by the quoted provision "will be limited to that portion of the sentencing calculation that is inconsistent with or not addressed by the Stipulated Guideline Sentence [of 120 months]." (*Id.* at 6). The prosecutor's office emphasized that it "cannot, and does not, make any representation as to what sentence the defendant will receive." (*Id.* at 6).

The plea agreement also included waiver-of-appeal language. (*Id.* at 5). It detailed the terms of defendant's forfeiture of his right to appeal as follows: "It is agreed [ ] that the defendant will not file a direct appeal, nor litigate under Title 28, United States Code, Section 2255 and/or Section

2241, any sentence at or below the Stipulated Guidelines Sentence set forth above (120 months)...." (*Id.* at 5). Finally, the agreement also contained a provision that "[b]y entering [this Plea Agreement], the defendant waives any and all right to withdraw his plea...." (*Id.* at 5)

Having ensured that Mills was acting knowingly and voluntarily in entering into the plea agreement, the Court also explicitly reiterated the terms related to his sentencing, confirming his understanding (1) that while the Guidelines range was 87 to 108 months, the Court could not impose a sentence below the mandated minimum of 120 months, and (2) that he was agreeing not to appeal or collaterally attack a sentence of 120 months. (Plea Hr'g Tr. at 10–11). Mills confirmed that having acknowledged his waiver of rights, he still wanted to plead guilty. (*Id.* at 14).

Throughout the entire allocution proceeding, Mills made clear that he understood all questions asked and all explanations provided by the court. (*Id.* at 2, 5–11, 13, 15). When asked to describe, in his own words, the conduct rendering him guilty of the charge to which he was pleading, he stated "I possessed and intended to distribute crack cocaine on that day." (*Id.* at 13). The Court inquired: "Did you understand that the conspiracy that you were a part of contemplated the distribution of more than 50 grams of crack cocaine," and Mills answered: "[m]ore than 50 grams of crack cocaine, yes, your honor." (*Id.* at 13). Satisfied with the knowing and voluntary nature of the plea, and its foundation upon an independent basis in fact, the Court accepted Mills' guilty plea. (*Id.* at 13).

B. *Sentencing*

**\*3** On May 17, 2007, Mills and his attorney appeared before the Court for sentencing. (Sentencing Hr'g Tr., Resp't Ex. F). Prior to the hearing, defendant's attorney had submitted a letter to the court voicing a single objection to the pre-sentence report ("PSR"), but stating that defendant did not object to the PSR's Guidelines sentencing calculatioN. (Respt.'s Ex. G at third & fourth pages).

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

At the hearing itself, the Court confirmed that Mills had read the PSR and discussed it with his counsel. (Resp't Ex. F at 1). Mills apologized to the Court for his conduct, and was sentenced, consistent with the plea agreement, to a term of 120 months in prison, to be followed by five years of supervised release in accordance with terms specified by the court. (*Id.* at 6–7). Finally, Mills again acknowledged his agreement not to appeal the sentence. (Sentencing Hr'g Tr. at 8).

C. *Post–Conviction Proceedings*

On March 7, 2008, the Clerk of this Court docketed an undated *pro se* motion submitted by Mills "for an order appointing counsel to assist defendant in filing a motion for reduction of sentence pursuant to 18 U.S.C. § 3582(c)(2)." *United States v. Clayton Mills,* 04 Cr. 0048(JSR), Dkt. # 596. On March 28, 2008, the District Court denied the motion because Mills had been sentenced to "the statutory mandatory minimum sentence ..." and "[w]here a statutory mandatory minimum sentence is applicable, the passage of a retroactive guideline amendment is irrelevant." (Order dated March 28, 2008). In the wake of this denial, defendant abstained from filing a motion to challenge his sentence.

Approximately eight months later, defendant sent a letter, dated November 30, 2008, to the United States Court of Appeals for the Second Circuit, asking whether an appeal was pending in his case. (Petr.'s Ltr., dated Nov. 30, 2008, attch'd as Ex. to Pet.). The Circuit Court received the letter on December 29, 2008, and on February 13, 2009, the Clerk of the Court replied that no notice of appeal had been filed. (Ltr. from Catherine O'Hogan Wolfe, Clerk, United States Court of Appeals for the Second Circuit, Feb. 13, 2009, "Clerk's Letter," attch'd as Ex. to Pet.).

Mills eventually filed his current section 2255 motion, which is dated March 18, 2009 and was received by the *Pro Se* Clerk on March 26, 2009.

D. *Defendant's Claims*

Mills asserts four grounds for relief from the judgment of conviction, all premised on a Sixth Amendment claim that he was deprived of constitutionally adequate representation. (*See* Pet.).

First, he asserts that he instructed Mr. Talkin to file a direct appeal, and that counsel "le[d][him] to believe that an appeal was being filed." (*Id.* at 4). Mills avers: "[I] was supposed to get a lower sentence, the sentence imposed was much higher which I felt was worth appealing." (*Id.* at 5). Mills claims that he first learned that no appeal had been filed "[o]ver a year and a half later," when the Circuit Clerk responded to his inquiry. (*Id.* at 5).

**\*4** Second, Mills asserts that Mr. Talkin was "constitutionally ineffective" because he advised Mills to agree to the "waiver-of-appeal" provision in the plea agreement. Defendant argues: "How could I know at the time of entry of the plea agreement, what the sentence would be or how it would be fashioned?" (*Id.* at 6). He also claims that Mr. Talkin's performance was deficient because he advised Mills to accept what defendant refers to as "a fixed guideline range." (*Id.* at 6). He adds, in delphic terms, that "counsel advised defendant Mills that he was going to get a much lesser sentence," and he complains that counsel did not argue for such "a lesser sentence." (*Id.* at 6).

Third, he alleges that Mr. Talkin advised him to plead guilty, without first informing him that the Government's burden at trial would be to prove his guilt beyond a reasonable doubt. (*Id.* at 7–8). He also reiterates his argument that Mr. Talkin told him that if he pled, he could get a lower sentence. (*Id.* at 8). Accordingly, he argues, his plea was not knowing and voluntary. (*Id.* at 8).

Fourth, Mills contends that his attorney failed to present the "valid" argument that under Appendix C, Amendment 487, of the Guidelines, the cocaine base involved in his crime was not "crack." (*Id.* at 9). He also seems to argue that under the "rules of lenity," he would be eligible for such leniency based on "the need to avoid unwarranted sen-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 3825732 (S.D.N.Y.)
**(Cite as: 2010 WL 3825732 (S.D.N.Y.))**

tencing disparity." (*Id.* at 9).

Finally, Mills defends the timeliness of his motion, claiming that his appeal is based on "newly discovered evidence," that is, his discovery on February 13, 2009 that Talkin had never filed an appeal on his behalf. (*Id.* at 12). Defendant contends that "[he] had no clue that he should double-check with a court of appeals to see if a direct appeal had been filed because he exercised good faith reliance on his attorney [to file the appeal]." (*Id.* at 12). He reasons that the existence of "circumstances beyond [his] control" should "toll [ ] the time limits for filing a timely § 2255 motion since no direct appeal was filed." (*Id.* at 12).

E. *The Government's Response*

The Government has opposed defendant's motion on two grounds. It seeks dismissal on the ground that the motion is time-barred by the one-year statute of limitations found in section 2255. In connection with that argument, it proffers, *inter alia,* a declaration from Mills' former attorney, Mr. Talkin, affirming that Mills never asked him to file an appeal on his behalf. (Mem. of Resp't ("Resp.") at 12; *see* Respt. Ex. A ¶ 3). Respondent also argues that Mills' ineffective-assistance claim in its various iterations is merit less. (*Id.*).

*ANALYSIS*

I. *Timeliness*

The Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 ("AEDPA"), amended the federal habeas statute in various respects. Among other things, the AEDPA imposed a one-year statute of limitations upon the filing of applications under section 2255. The statute now provides, in relevant part, that the one-year statute of limitations begins to run from the latest of "the date on which the judgment of conviction becomes final," 28 U .S.C. § 2255(f)(1), or "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(4).

**\*5** Respondent argues that the current motion is

untimely, since it was filed almost ten months after the statute of limitations had expired. (Resp. at 20). We agree.

Section 2255(f)(1) does not itself define finality for purposes of the statute of limitations, but Second Circuit has held that "for purposes of § 2255 motions, an unappealed federal criminal judgment becomes final when the time for filing a direct appeal expires." *Moshier v. United States,* 402 F.3d 116, 118 (2d Cir.2005); *see Burrell v. United States,* 467 F.3d 160, 164 (2d Cir.2006); *see also Sanchez–Castellano v. United States,* 358 F.3d 424, 428 (6th Cir.2004) (for purposes of § 2255 motions, "an unappealed federal criminal judgment becomes final ten days after it is entered"); *Mendivelso v. United States,* 507 F.Supp.2d 331, 335 (S.D.N.Y. Aug.17, 2007) ("The conviction is deemed final when the time for filing a notice of appeal expires.").

Under Rule 4(b)(1)(A)(i) of the Federal Rules of Appellate Procedure, Mills had ten business days after the entry of judgment in which to file a notice of appeal.[FN1] Since petitioner was sentenced on May 17, 2007, his conviction became final on June 1, 2007.[FN2] Accordingly, the deadline for filing a timely section 2255 motion was June 1, 2008.

FN1. At the time of Mills' conviction and sentencing, a notice of appeal was due ten days after the entry of judgment. Since that time, Rule 26 of the Federal Rules of Appellate Procedure has been amended to extend the deadline to fourteen days, effective December 1, 2009. *See Notes of Advisory Committee on 2009 amendments,* note to Rule 26, subdivisions (b)(1)(A) and (b)(3)(A).

FN2. According to Rule 26(a)(2) of the Federal Rules of Appellate Procedure, as amended December 1, 2002, the calculation of any period of time less than eleven days must exclude intervening Saturdays, Sundays, and legal holidays, unless other-

wise stated. Since May 18, 2007 was a Friday and May 28, 2007 was Memorial Day, Mills had until June 1, 2007 to file a notice of appeal.

Mills plainly failed to meet the deadline. As noted, his section 2255 motion was dated March 18, 2009. Under the prison-mailbox rule, a *pro se* inmate's pleading or motion is considered filed as of the date it is given to prison officials for forwarding to the court clerk. *Fernandez v. Artuz,* 402 F.3d 111, 114 (2d Cir.2005) (quoting *Adeline v. Stinson,* 206 F.3d 249, 251 n. 1 (2d Cir.2000)); *see Wims v. United States,* 225 F.3d 186, 188 n. 1 (2d Cir.2000). Since Mills dated his motion March 18, 2009 and presumably gave it to his jailers at that time, that is properly deemed his date of filing. *See, e.g., Knickerbocker v. Artuz,* 271 F.3d 35, 37 (2d Cir.2001); *Noble v. Kelly,* 246 F.3d 93, 97–98 (2d Cir.2001); *Adeline,* 206 F.3d at 251 & n. 1 (2d Cir.2000). *See generally Houston v. Lack,* 487 U.S. 266, 276, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988). Consequently, his current motion is nearly ten months late.

In seeking to avoid this result, Mills can be understood to invoke two theories: one based on a statutory tolling provision and the other on the doctrine of equitable tolling. Neither saves his motion.

In an apparent attempt to qualify for a delayed commencement of the running of the statute of limitations under 28 U.S.C. § 2255(f) (4), Mills contends that " 'newly discovered evidence' ... tolled the time limits for filing a timely § 2255 motion...." (Pet. at 12). Under section 2255(f)(4), the one-year statute of limitations begins to run from the time when a reasonably diligent prisoner in the defendant's circumstances would have discovered the facts that give rise to his section 2255 motion. *See, e.g., Wims,* 225 F.3d at 190. According to the Second Circuit, section 2255(f)(4) does not require the "maximum feasible diligence, only 'due,' or reasonable, diligence." *Id.* at 190 & n. 4; *see, e.g., Armstrong v. McAlpin,* 699 F.2d 79, 88–89 (2d Cir.1983) (requiring "reasonable" or "ordinary" diligence in the discovery of fraud for statute of limit-

ations purposes). Mills asserts that he explicitly requested that his attorney file a notice of appeal, that counsel "said that he would handle [defendant's direct appeal] by filing it," and that counsel then led Mills to believe, for over a year and a half, that an appeal had been filed. (Pet. at 4, 6). Defendant seems to be arguing that despite his best efforts, he only discovered his attorney's failure to file an appeal on February 13, 2009 and that the statute of limitations should be calculated by reference to the date when he uncovered "newly discovered evidence" of his attorney's lapse. (*Id.*)

**\*6** As for equitable tolling, Mills recounts having been misled by his attorney as to the filing of an appeal, an assertion that, if credited, could be interpreted by the Court as the kind of "extraordinary circumstance" that would justify such tolling. *See Doe v. Menefee,* 391 F.3d 147, 159 (2d Cir.2004). This doctrine permits a movant to avoid the one-year deadline imposed by section 2255 in "rare and exceptional circumstances." *Baldayaque v. United States,* 338 F.3d 145, 150–51 (2d Cir.2003). To qualify for such tolling, the movant must "establish that extraordinary circumstances prevented him from filing his petition on time, and that he acted with reasonable diligence throughout the period he seeks to toll." *Menefee,* 391 F.3d at 159 (*quoting Smith v. McGinnis,* 208 F.3d 13, 17 (2d Cir.2000) (internal quotations omitted)); *see Wallace v. Kato,* 549 U.S. 384, 396, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007)) ("Equitable tolling is a rare remedy to be applied in unusual circumstances."); *see also Zerilli–Edelalass v. New York City Transit Auth.,* 333 F.3d 74, 80–81 (2d Cir.2003); *Chapman v. ChoiceCare Long Island Term Disability Plan,* 288 F.3d 506, 512 (2d Cir.2002); *Alaimo v. Bd. of Educ.,* 650 F.Supp.2d 289, 295 (S.D.N.Y. July 6, 2009).

Defendant cannot succeed on either of these two theories. We first note that Mills' attempted invocation of section 2255(f)(4), even if colorable—which, for reasons to be noted, it is no—could save only one of his four attacks on his

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 3825732 (S.D.N.Y.)
**(Cite as: 2010 WL 3825732 (S.D.N.Y.))**

trial attorney. While Mills claims to have only be-latedly discovered that Mr. Talkin did not file an appeal as he allegedly promised, he was certainly aware, long before that discovery, of the other three alleged constitutional defects in his attorney's per-formance, all of which occurred before his plea or before his sentencing. Hence the rationale for in-voking the "newly discovered evidence" provision would not apply to those versions of his Sixth–Amendment claim.

In any event, Mills cannot rescue his motion from a time bar, either by invoking the statutory provision or by resort to equitable tolling. His claim that he was misled by his attorney until February 2009 is demonstrably false. Thus, he cannot show either reasonable diligence as required under both the statute and the equitable-tolling doctrine, or "extraordinary circumstances" as required for equit-able tolling.[FN3]

> [FN3]. Since Mills' invocation of the stat-utory tolling provision of 2254(f)(4) fails for lack of "due diligence" on the part of petitioner, we do not address the question of whether the claimed discovery of coun-sel's failure to file a notice of appeal could constitute "new evidence" under section 2255(f)(4).

Defendant's insistence that he was misled by his attorney about the filing of an appeal on his be-half is not credible for a number of reasons. First, Mr. Talkin reports, under penalty of perjury, that Mills never asked him to file an appeal and that he never promised to do so. (Talkin's Decl. ¶ 3). He states that his practice is to file a notice of appeal when requested by a client to do so, and that review of his correspondence with Mills uncovers no indic-ation of such a request. (*Id.* ¶¶ 3–4). Mr. Talkin's representation—which petitioner does not contra-dict on reply—is thoroughly plausible in view of the fact that Mills waived his right to appeal in his plea agreement. Indeed, the only issue that Mills claims he wanted to appeal was his sentence, but in the plea agreement he explicitly waived any right to

challenge the very sentence that he received-that is, 120 months of prison time. Moreover, he clearly acknowledged his understanding of that waiver at the time of his plea and later at his sentencing.

**\*7** Mills' claim that his counsel deceived him about the filing of an appeal is also belied by the fact that he filed a *pro se* motion on March 7, 2008, seeking appointment of counsel to represent him at the trial-court level in order to challenge his sen-tence on the very issue he allegedly believed was already on appeal in the Second Circuit. His asser-ted desire to pursue such a challenge in the District Court is, of course, antithetical to his claim that he was duped into believing that the issue was then be-ing litigated on appeal. Moreover, this 2008 motion is doubly telling because Mills would have had no need to request the appointment of counsel for the purpose of aiding him in this matter if he believed that Mr. Talkin was already pursuing such an ap-peal.

Absent any meaningful evidence that Mills ever asked his attorney whether an appeal had been filed, he also fails to demonstrate reasonable dili-gence. We note that the Circuit Court has recog-nized that a showing of reasonable diligence for the purpose of determining the date on which the stat-ute-of-limitations clock begins to run "is a fact-specific issue the resolution of which depends, among other things, on the details of [defendant's] post-sentence conversation with his lawyer and on the conditions of his confinement in the period after [his conviction becomes final]." *Wims,* 225 F.3d at 190–91. In *Wims,* the Court held that a five-month delay in the filing of a section 2255 motion "is not so clearly unreasonable that it plainly appears from the face of [defendant's] petition and supporting pa-pers that he is barred from habeas relief" and hence it reversed a *sua sponte* dismissal by the District Court. *Id.* at 191. In the present case, however, Mills filed his motion more than nine months after the statute of limitations had expired. *See De la Cruz v. United States,* 2006 WL 2129335, *3–4 (S.D.N.Y. July 31, 2006)* (reasonable diligence

lacking where petition delayed by seven months). Moreover, not only is the record devoid of any evidence showing that Mills asked his attorney about the filing of an appeal, but it contains a clear indicator—in the form of the March 2008 motion for appointment of counsel to litigate his sentence—that Mills was fully capable of pursuing his theories in court and was, necessarily, able to inquire of the Court of Appeals, as well as of Mr. Talkin, whether an appeal had been filed. *See Gonzalez–Ramos v. United States,* 2007 WL 1288634, \*10 (S.D.N.Y. May 7, 2007) (petitioner should have obtained docket sheet); *see also Montenegro v. United States,* 248 F.3d 585, 593 (7th Cir.2001). Nevertheless, Mills waited an additional nine months after the denial of his motion for counsel before inquiring about his purported appeal. Thus, he cannot demonstrate reasonable diligence.

Furthermore, in the absence of any evidence that defendant was misled by his attorney, he does not qualify for the application of the equitable-tolling doctrine. Equitable tolling is warranted only in the most compelling circumstances. *Wallace,* 549 U.S. at 396; *Baldwin County Welcome Ctr. v. Brown,* 466 U.S. 147, 152, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984) ("[P]rocedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants."). Our Circuit Court recognizes "only a limited number of circumstances that may merit equitable tolling, such as where an attorney's conduct is so outrageous and incompetent that it is truly extraordinary." *Doe,* 391 F.3d at 159 (internal citations omitted) (holding that confiscation of legal papers by prison officials intending to obstruct petition was an extraordinary circumstance). In addition, to invoke equitable tolling the movant must "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing." *Valverde v. Stinson,* 224 F.3d 129, 134 (2d Cir.2000).

**\*8** An attorney's active concealment of information crucial to a habeas petition could constitute an extraordinary circumstance for purposes of equitable tolling. *See, e.g., Fleming v. Evans,* 481 F.3d 1249, 1256 (10th Cir.2007) (counsel lied to petitioner about status of petition); *United States v. Martin,* 408 F.3d 1089, 1094–95 (8th Cir.2005) (counsel failed to file petition despite being asked to do so, and consistently lied to petitioner and his wife about filing deadline and status of case); *Spitsyn v. Moore,* 345 F.3d 796, 801 (9th Cir.2003) (counsel repeatedly unresponsive to petitioner's inquiries regarding status of petition, resulting in an untimely filing); *Seitzinger v. Reading Hosp. and Med. Ctr.,* 165 F.3d 236, 241 (3d Cir.1999) (counsel deceived petitioner). However, the "extraordinary circumstances" doctrine has a narrow application even in cases of alleged attorney misconduct. *Baldayague,* 338 F.3d at 152 ("[A]ttorney error *normally* will not constitute the extraordinary circumstances required to toll the AEDPA limitations' period ... [although] at some point, an attorney's behavior may be so outrageous or so incompetent as to render it extraordinary.") (emphasis in original). As noted, the record reflects no attorney misconduct. Moreover, even if we could credit Mills' assertions that he was actively misled by counsel and thus subject to "extraordinary circumstances" for the purpose of invoking equitable tolling, this would not trigger tolling, because Mills cannot be said to have exhibited reasonable diligence in resting on his oars for so long a time.

Since Mills is unable to demonstrate that he was reasonably diligent in pursuing his appeal or subject to extraordinary circumstances that would justify tolling on equitable grounds, his notion is untimely.

## II. *The Merits of the Sixth–Amendment Claims*

Even if the current application were timely, Mills could not prevail, since his claims are plainly merit less. A number of his claims were explicitly waived by his plea, and all are baseless.

Not Reported in F.Supp.2d, 2010 WL 3825732 (S.D.N.Y.)
**(Cite as: 2010 WL 3825732 (S.D.N.Y.))**

A. *Sixth–Amendment Standards*

Mills labels all of his claims as arising from the ineffectiveness of his trial attorney. Although at least one of his claims also appears in substance to challenge the validity of his plea as not having been a knowing waiver of his constitutional rights, we first briefly summarize the criteria by which to judge an ineffective-assistance theory.

The assessment of an ineffective-assistance-of-counsel claim involves a two-part inquiry. To demonstrate a Sixth Amendment violation, a defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *see United States v. Gaskin,* 364 F.3d 438, 468 (2d Cir.2004); *see also Mask v. McGinnis,* 233 F.3d 132, 140 (2d Cir.2000); *Brown v. Artuz,* 124 F.3d 73, 79 (2d Cir.1997). He must also prove that "the deficient performance prejudiced the defense," that is, that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland,* 466 U.S. at 687. This standard is summarized in *Brown* as follows:

**\*9** To satisfy the first, or 'performance,' prong, the defendant must show that counsel's performance was 'outside the wide range of professionally competent assistance,' ... and to satisfy the second, or 'prejudice,' prong, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

124 F.3d at 79–80 (quoting *Strickland,* 466 U.S. at 690, 694); *see, e.g., Henry v. Poole,* 409 F.3d 48, 62–64 (2d Cir.2005); *Cox v. Donnelly,* 387 F.3d 193, 197 (2d Cir.2004).

It bears emphasis that the *Strickland* standard is quite deferential and that a claim of constitutional dimension does not arise unless a lawyer's error is so egregious as to amount to a failure to provide reasonable professional representation. *See Henry,*

409 F.3d at 63. "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland,* 466 U.S. at 687–88; *see Palacios v. Burge,* 589 F.3d 556, 561 (2d Cir.2009); *see also United States v. Hasan,* 586 F.3d 161, 170 (2d Cir.2009); *Brown v. Greene,* 577 F.3d 107, 110 (2d Cir.2009); *Carrion v. Smith,* 549 F.3d 583, 588 (2d Cir.2008). The court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case", and must determine whether, in light of all the circumstances, counsel's "acts or omissions were outside the wide range of professionally competent assistance." *Strickland,* 466 U.S. at 690; *see, e.g., Loliscio v. Goord,* 263 F.3d 178, 192 (2d Cir.2001). In making this determination, "the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland,* 466 U.S. at 690; *see Burge,* 589 F.3d at 561.

The burden of proving prejudice is equally onerous. In addition to showing that counsel's representation was so deficient as to constitute a denial of even minimally competent representation, the defendant must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 693, 694; *see Palacios,* 589 F.3d at 561; *see also Puglisi v. United States,* 586 F.3d 209, 215 (2d Cir.2009); *Wilson v. Mazzuca,* 570 F.3d 490, 502 (2d Cir.2009); *Bell v. Miller,* 500 F.3d 149, 155 (2d Cir.2007); *Gaskin,* 364 F.3d at 468. "A reasonable probability is one sufficient to undermine confidence in the outcome of the trial or appeal." *Aparicio v. Artuz,* 269 F.3d 78, 95 (2d Cir.2001) (citing *Strickland,* 466 U.S. at 694). "The reasonable-probability standard is not the same as, and should not be confused with, a requirement that a defendant prove by a preponderance of the evidence that but for error [,] things would have been different." *United States v. Dominguez Benitez,* 542

Not Reported in F.Supp.2d, 2010 WL 3825732 (S.D.N.Y.)
**(Cite as: 2010 WL 3825732 (S.D.N.Y.))**

U.S. 74, 83 n. 9, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004) (citing *Kyles v. Whitley,* 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995)). Rather, a court should focus on whether "the probability of a different result is 'sufficient to undermine confidence in the outcome' of the proceeding." *Id.* at 83 (quoting *Strickland,* 466 U.S. at 694); *see Wilson,* 570 F.3d at 507.

B. *The Potential Waiver Effect of the Plea Agreement*

**\*10** The Government argues that Mills' motion is barred by the terms of his plea agreement. (Resp. at 16.) A guilty plea waives a defendant's right to contest his conviction based on non-jurisdictional defects in the prior proceeding. *See, e.g., United States v. Penev,* —— F.3d ——, 2010 WL 276633, \*1 (2d Cir. Jan.25, 2010) (quoting *Liebowitz v. United States,* 877 F.2d 207, 209 (2d Cir.1989)). Moreover, it is beyond dispute that "[t]he right to appeal may be waived as part of a plea agreement." *United States v. Chen,* 127 F.3d 286, 289 (2d Cir.1997) (citing *United States v. Yemitan,* 70 F.3d 746, 747 (2d Cir.1995)). "A defendant who knowingly and voluntarily enters into a plea agreement containing a waiver of appeal rights and obtains the benefits of such an agreement is bound by the waiver provision." *United States v. Difeaux,* 163 F.3d 725, 728 (2d Cir.1998) (citing *United States v. Salcido–Contreras,* 990 F.2d 51, 53 (2d Cir.1993); *see Garcia–Santos v. United States,* 273 F.3d 506, 508 (2d Cir.2001); *see also United States v. Gomez–Perez,* 215 F.3d 315, 318 (2d Cir.2000); *United States v. Tana,* 214 F.3d 365, 369 (2d Cir.2000); *United States v. Djelevic,* 161 F.3d 104, 106–07 (2d Cir.1998) (per curiam); *United States v. Maher,* 108 F.3d 1513, 1531 (2d Cir.1997); *Moreta v. United States,* 604 F.Supp.2d 610, 611 (S.D.N.Y. March 17, 2009).

To be enforceable, "[w]aivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States,* 397 U.S.

742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *see Bradshaw v. Stumpf,* 545 U.S. 175, 183, 125 S.Ct. 2398, 162 L.Ed.2d 143 (2005); *see also United States v. Ready,* 82 F.3d 551, 556 (2d Cir.1996). A waiver is considered knowing or "informed" if the defendant "fully understood the consequences of the waiver." *Ready,* 82 F.3d at 557 (citing *United States v. Rutan,* 956 F.2d 827, 830 (8th Cir.1992) (internal quotations omitted)); *see United States v. Pearson,* 570 F.3d 480, 485 (2d Cir.2009); *see also United States v. Rogue,* 421 F.3d 118, 122 (2d Cir.2005). Thus, "a waiver of the right to appeal should only be enforced by an appellate court if the record clearly demonstrates that the waiver was both knowing (in the sense that the defendant fully understood the potential consequences of his waiver) and voluntary." *Ready,* 82 F.3d at 557 (quoting *United States v. Schmidt,* 47 F.3d 188, 190 (7th Cir.1995) (internal quotations omitted)).

Even if a defendant voluntarily and knowingly agrees to waive his right to appeal or otherwise challenge his conviction, enforcement of such a waiver is not without exceptions. Of particular relevance here is the exception for plea agreements entered into without the effective assistance of counsel. "A plea agreement containing a waiver of the right to appeal is not enforceable where the defendant claims [and demonstrates] that the plea agreement was entered into without effective assistance of counsel." *United States v. Hernandez,* 242 F.3d 110, 113–14 (2d Cir.2001); *see Campusano v. United States,* 442 F.3d 770, 777 (2d Cir.2006) (waiver of the right to appeal does not function as a waiver of the right to effective assistance); *see also Djelevic,* 161 F.3d at 107; *United States v. Rosa,* 123 F.3d 94, 98 (2d Cir.1997) (defendant retains the right to appeal on the grounds of ineffective assistance, despite the existence of a plea agreement including a waiver of appeal); *cf. United States v. Cano,* 494 F.Supp.2d 243, 248 (S.D.N.Y. July 12, 2007) (ineffective-assistance claims pertaining to § 2255 waivers will only succeed "when the claim relates to the negotiation and entry of a plea or sentencing agreement"). Thus, a claim of ineffective

assistance in connection with the decision to enter a plea must be assessed on its merits as a predicate to determining whether the defendant has effectively waived whatever rights he surrendered by way of his plea.

### C. *Defendant Knowingly Waived his Right to Appeal or Otherwise Challenge his Conviction*

**\*11** After reviewing the record, including the transcripts of Mills' allocution and sentencing, we conclude that he knowingly waived his right to challenge his conviction.

As described above, he informed the Court at his plea hearing that he had read the plea agreement; reviewed it with counsel, with whom he was satisfied thus far; and signed it with an understanding of its terms. Upon specific questioning by the Court, Mills confirmed his understanding of the trial rights that he was surrendering by pleading guilty, including, *inter alia,* the right to a trial at which the Government would have to prove his guilt beyond a reasonable doubt. He also indicated his comprehension of the particular terms that he now challenges—the terms providing for a mandatory minimum sentence of 120 months and those stipulating waiver of the right to directly or collaterally challenge a sentence of 120 months. Indeed, to the extent that Mills suggests that, because of his attorney's failings, he was ignorant of some of the rights that he was surrendering—notably the right to require proof of guilt beyond a reasonable doubt—or that he was misled as to his sentencing exposure, the record of the allocution demolishes those claims of ignorance.

Courts give great deference to statements made by a defendant during a plea hearing. *See, e.g., United States v. Monzon,* 359 F.3d 110, 116 (2d Cir.2004). Moreover, in such circumstances, "[t]he Second Circuit has clearly articulated that it is within a district court's discretion to deny a § 2255 petition without a testimonial hearing if allegations of facts outside the record can be fully investigated without requiring the personal presence of the prisoner." *Moreta,* 604 F.Supp. at 611 (quoting *Chang*

*v. United States,* 250 F.3d 79, 85 (2d Cir.2001) (internal quotations omitted); *see, e.g., Compusano,* 442 F.3d at 776. In any event, the record before us aside, the Court conducting the plea hearing found, based on its exchange with defendant and its observation of him, that he understood his rights and entered his plea "knowingly and voluntarily." (Plea Hr'g Tr. at 14).

It follows, then, that—absent proof of a pertinent violation of Mills' Sixth–Amendment rights—he waived any right to challenge his conviction or sentence, whether by appeal or otherwise. *See, Difeaux,* 163 F.3d at 728; *Salcido–Contreras,* 990 F.2d at 53; *see Garcia–Santos,* 273 F.3d at 508–09 (petitioner had effectively waived right to attack his conviction by a section 2255 motion claiming ineffective assistance of counsel).

### D. *Petitioner's Ineffective–Assistance Claim*

Mills attacks his former attorney on a variety of grounds. Waiver aside, all are plainly baseless. We address each one separately.

### 1. *Counsel's Purported Failure to File an Appeal*

Mills claims that he specifically requested his attorney to file a notice of appeal and that his attorney promised to do so but failed to act or to advise his client that no appeal had been filed. If this were true, Mr. Talkin's conduct would be *per se* unreasonable, and Mills would be entitled to file his appeal. *See, e.g., Roe v. Flores–Ortega,* 528 U.S. 470, 477, 483–84, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000) (citing *inter alia Rodriguez v. United States,* 395 U.S. 327, 89 S.Ct. 1715, 23 L.Ed.2d 340 (1969), and *Peguero v. United States,* 526 U.S. 23, 28, 119 S.Ct. 961, 143 L.Ed.2d 18 (1999)); *Campusano,* 442 F.3d at 773–75. Even where, as here, a client has waived his right to appeal, counsel's obligation to file a notice of appeal (or at least to timely advise his client that he would not do so) is not necessarily relieved by virtue of such a waiver. *See, e.g., Campusano,* 442 F.3d at 771–72, 775 (citing *United States v. Garrett,* 402 F.3d 1262, 1267 (10th Cir.2005)).

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

**\*12** For reasons already noted, however, the record does not support defendant's allegation that Mr. Talkin failed to comply with a request by Mills that he file an appeal. Given the explicit waiver of appeal in the plea agreement and Mills' acknowledgment of that waiver in his allocution, the benefit to Mills of receiving only the statutory minimum sentence, the absence of any appealable issues, Mills' long delay in raising this issue, and his effort midway through his long period of quiescence to obtain counsel to challenge his sentence in the trial court, we conclude that Mr. Talkin's denial that his client asked him to file an appeal is entirely credible. *See, e.g., Colon v. United States,* 2010 WL 1644260, \*5–6 (S.D.N.Y. April 21, 2010).

In an excess of caution, and in view of Mills' status as a *pro se* litigant, we also address an alternative argument that Mills might be viewed as making—that counsel failed to consult with him about the filing of an appeal, a circumstance that could be deemed consistent with the current record. Such a failing may, in some circumstances, trigger a constitutional claim. *See Flores–Ortega,* 528 U.S. at 480.

According to the Supreme Court, "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either [ ] a rational defendant would want to appeal ... or [ ] this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id* . at 480. However, in this case, for reasons already discussed, a "rational defendant" would not have wanted to attempt an appeal, and we find that Mills did not indicate to his attorney that he was inclined to pursue an appeal. Of obvious significance in assessing this issue is the fact of petitioner's guilty plea. As the High Court observed in *Flores–Ortega,* "whether the conviction follows a trial or a guilty plea [is highly relevant] both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." *Id.* at 480. Nevertheless, even in

cases where the defendant pleads guilty, a reviewing court must consider all relevant factors to "properly determine whether a rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal." *Id.* at 480. This includes such factors as "whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights." *Id.* at 480.

As we have observed, Mills pled guilty, waived his appellate rights, and received the stipulated sentence. In short, counsel did not act unreasonably in not consulting him about the possibility of an appeal. Moreover, the *Flores–Ortega* Court went on to observe that, absent an instruction by the defendant to file a notice of appeal, he cannot prevail on a Sixth Amendment claim of this sort without showing a specific form of prejudice—that is, by showing that he would have elected to appeal had he been consulted by counsel. *Id.* at 484. Mills fails to demonstrate such prejudice either. More plausibly, the record suggests that he became disenchanted with his sentence at some later time.

2. *The Attorney's Advice on the Burden of Proof and the Waiver of Appeal*

**\*13** Mills goes on to fault his attorney for failing to inform him of the Government's burden of proof at trial and for persuading him to waive his right to appeal when he could not "have known at the time of entry of the plea agreement, what the sentence would be, or how it would be fashioned" (Pet. at 6). Through these allegations Mills appears to be arguing that neither his guilty plea nor his waiver of appeal were entered into knowingly, as he was ignorant of crucial facts at the time these decisions were made. These claims are groundless.

Mills does not suggest that he would not have pleaded guilty if his attorney had told him that the Government would have to prove his guilt beyond a reasonable doubt. In any case, the District Court so advised him during his allocation (Plea Hr'g Tr. at 8), and he acknowledged this fact and still insisted

that he wanted to plead guilty. (*Id.* at 14). In short, the alleged attorney error did not prejudice him.

As for defendant's assertion that counsel acted unreasonably in urging him to accept a waiver of appeal when the precise length of his sentence was uncertain, it too is well wide of the mark. Before entering his plea, Mills was on notice that he would receive a prison term that was at least 120 months—the sentence actually imposed. The plea agreement specified that the minimum sentence that Mills could receive would be 120 months, the statutory minimum. Moreover, the court advised him explicitly that, notwithstanding the otherwise applicable Guideline range of 87 to 108 months, the court "could not sentence [him] that low, because the mandatory minimum is 10 years; so [the court] would still have to sentence [him] at 120 months." (Plea Hr'g Tr. at 10). Additionally, petitioner explicitly acknowledged understanding that "if [the court] do[es] wind up sentencing [him] to 120 months [ ] under [his] agreement with the government [he] ha[s] agreed not to appeal or collaterally attack [his] sentence." (*Id.* at 11).

In short, even if defendant did not know what his sentence would be when he signed his plea agreement with the Government, he was aware that it would be at least 120 months. Moreover, the agreement did not waive his right to appeal if the sentence exceeded that length. In any event, he received that minimum sentence. Hence, regardless of any pre-sentence uncertainty as to what prison term he would receive, his waiver of appeal rights regarding his sentence did not, and could not, prejudice him.

3. *Counsel's Alleged Prediction of a Lesser Sentence and Acquiescence in the Mandatory Minimum Sentence*

Mills next claims that he "was supposed to get a lower sentence" than the 120–month mandatory minimum imposed by the Court, an assertion based on his allegation that his "counsel advised [him] that he was going to get a much lesser sentence." (*Id.* at 6). We read this claim as premised either on

the supposed inaccuracy of counsel's alleged prediction or on counsel's failure to argue for a lesser sentence. However construed, this argument is merit less.

**\*14** Mills fully understood, and acknowledged repeatedly during his plea hearing, that he would be sentenced to at least the mandatory minimum of 120 months, regardless of the Guidelines range of 87 to 108 months. (*See* Plea Hr'g Tr. at 6, 9, 10, 11); *see also Regalado,* 518 F.3d at 150 n. 3 (rejecting defendant's Sixth Amendment claim with respect to his offense-level calculation based on drug quantity because, during his allocution, defendant admitted to having distributed the quantity "necessary to trigger a ten-year mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(A)."). In view of the clearly stated and acknowledged applicability of the mandatory minimum sentence, we view his allegation that his attorney predicted a shorter sentence—and thereby, by implication, induced Mills to plead guilty—as fantasy. As for his attorney's failure to argue for a lower sentence, as noted, Mills was sentenced to the mandatory minimum, and he offers no basis for suggesting that he might have been eligible for safety-valve treatment. Accordingly, his attorney had no colorable basis to argue for a lesser sentence even if he had not been barred from doing so by the plea agreement, and hence his failure to do so does not amount to ineffective assistance. *See Regalado,* 518 F.3d at 150 n. 3 (citing *Arena,* 180 F.3d at 396).[FN4]

> FN4. Mills does argue, as his last point, that counsel could have argued for a lower sentence on the premise that the drugs in question were not crack but rather another form of cocaine base. For reasons to be noted, this argument is baseless. *See* pp. 36–39.

4. *Counsel's Failure to Raise the Cocaine Base/ Crack Distinction*

Finally, defendant argues that counsel was constitutionally ineffective for failing to seek a lesser sentence based on "the need to avoid unwarranted

sentencing disparity." (*Id.* at 9). Mills' argument is based on Appendix C, Amendment 487, of the Guidelines, "which defined 'cocaine base' as 'crack' and distinguished 'crack' from other forms of cocaine." FN5 (Resp. at 2). It seems that Mills believes that his attorney should have argued that the cocaine base referred in his case was not "crack".

> FN5. Section 2D1.1 of the Guidelines is the operative section for drug offenses involving "cocaine base" and "cocaine." Subsection 2D1.1(c), Note (D), clarifies that " '[c]rack' is the street name for a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rocklike form." Appendix C, Amendment 487, of the Guidelines, explains that "forms of cocaine base other than crack ... will be treated as cocaine." *See United States v. Diaz,* 176 F.3d 52, 119 (2d Cir.1999). Amendment 487 clarified that the term "cocaine base," as used in the Guidelines, refers to "crack." It seems that petitioner believes that his counsel should have argued that the term "cocaine base" as used in the charging document did not refer to "crack," thus allowing a different and more lenient Guideline analysis. *See United States v. Jackson,* 59 F.3d 1421, 1423 (2d Cir.1995) (citing *United States v. Palacio,* 4 F.3d 150, 155 (2d Cir.1993) (explaining that after Amendment 487 "a different method of calibration will exist for defendants who deal in cocaine base that is not crack.").

Mills claims that "there existed a valid basis for challenge under the [Guidelines, Appendix C, Amendment 487] [that] all cocaine base is 'not' crack." (Pet. at 9). Based on that contention, he argues that under "the rules of lenity, where there is ambiguity in a criminal statute, doubts are resolved in favor of the defendant and any question regard-

ing the advisory nature of the guidelines was put to rest by recent decisions of the U.S. Supreme Court ..." FN6 (*Id.*).

> FN6. Petitioner does not cite any specific Supreme Court case in support of his argument. We infer that he is referring to *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) (holding that the Sentencing Reform Act of 1984, as amended, 18 U.S.C. § 3551 *et seq.,* 28 U.S.C. § 991 *et seq.,* made the Guidelines effectively advisory rather than mandatory).

Defendant's argument that his attorney should have challenged the sentence is baseless since the proposed challenge was waived by his plea. In any event, there was never a dispute that the form of cocaine that Mills was charged with conspiring to distribute was "crack". The Information charged Mills with conspiracy to distribute "mixtures and substances containing a detectable amount of cocaine base, in a form commonly known as 'crack' " (Resp't Ex. B ¶ 1), and he pled guilty to this charge. (Plea Hr'g Tr. at 13). He cannot now argue ineffective assistance when he expressly confirmed during his allocution that he had possessed "crack" cocaine in a sufficient amount to trigger a 120–month mandatory minimum sentence. *See United States v. Diaz,* 176 F.3d 52, 119 (2d Cir.1999) (holding that court did not err in finding that the cocaine attributed to defendant was "crack" because, *inter alia,* defendant did not object at sentencing when the court referred to the drugs as "crack").

**\*15** Moreover, the plea agreement clearly identified "cocaine base ('crack')" as the substance that Mills was charged with conspiring to distribute. (Plea Agrm't at 1). The agreement also referred to the substance involved in the charged offense as "crack cocaine" when identifying the base offense from which Mills' sentence would be calculated. ( *Id.* at 2 (citing 32 U.S.S.G. § 2D1.1(c)(4)). Even if he could argue that he was not aware of, or did not understand, the legal terminology of the charges, he

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

cannot deny that, at the plea allocution, the Court specifically asked if he understood that he was charged with conspiring to distribute "more than 50 grams of crack cocaine," and he promptly answered "[m]ore than 50 grams of crack cocaine, yes, your Honor." (Plea Hr'g Tr. at 13).

In sum, there is no question that Mills was aware that the charge against him related to the controlled substance known as "crack" and not any other type of cocaine base. Therefore, he cannot claim that counsel was ineffective for not arguing for a reduction in sentence pursuant to Appendix C, Amendment 487 of the Guidelines.

*CONCLUSION*

For the reasons noted, we recommend that Mills' motion be denied as untimely and merit less.

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. Fed.R.Civ.P. 72(b)(2) (2009); *see also* Fed.R.Civ.P. 6(a), 6(d); 28 U.S.C. § 636(b)(1). Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies to be delivered to the chambers of the Honorable Sidney H. Stein, Room 1010, and to the chambers of the undersigned, Room 1670, 500 Pearl Street, New York, New York 10007. Failure to file timely objections may constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *Small v. Sec'y of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989); *Thomas v. Arn,* 474 U.S. 140, 150–55, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), *reh'g denied,* 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986).

S.D.N.Y.,2010.
Mills v. U.S.
Not Reported in F.Supp.2d, 2010 WL 3825732 (S.D.N.Y.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.